APPENDICES

RESULTS

HIGHLIGHTS

TABLE OF CONTENTS

Office of Inspector General | United States Postal Service

**Audit Report**

# Processing Readiness of Election and Political Mail During the 2020 General Elections

Report Number 20-225-R20 | August 31, 2020



OFFICE OF
INSPECTOR
GENERAL
UNITED STATES POSTAL SERVICE

TABLE OF CONTENTS   HIGHLIGHTS   RESULTS   APPENDICES

↩ BACK to COVER

# Table of Contents

Cover

Highlights...........................................................................................................1

Objective...........................................................................................................1

Findings............................................................................................................1

Stakeholder-Related Election Mail Issues.........................................................2

Readiness for Timely Processing.......................................................................3

Recommendations.............................................................................................4

Transmittal Letter..............................................................................................5

Results..............................................................................................................6

Introduction/Objective.......................................................................................6

Background.......................................................................................................6

Finding #1: Stakeholder-Related Election Mail Issues......................................7

Use of Barcodes...............................................................................................8

Ballot Envelope Design.....................................................................................8

Mailing Too Close to Election Date....................................................................9

Postmarks.......................................................................................................10

Addresses.......................................................................................................11

Postal Service Actions to Improve Timely Delivery of Election and
Political Mail....................................................................................................11

Recommendation #1........................................................................................13

Finding #2: Readiness for Timely Processing..................................................13

Daily All-Clear Certification..............................................................................14

Election and Political Mail Audit Checklist.......................................................16

Operational Clean Sweep Search Checklist....................................................16

Election and Political Mail Log.........................................................................16

Postal Postmarking Process............................................................................17

Best Business Practices..................................................................................17

Recommendation #2........................................................................................18

Recommendation #3........................................................................................18

Recommendation #4........................................................................................18

Recommendation #5........................................................................................18

Management's Comments................................................................................18

Evaluation of Management's Comments...........................................................19

Appendices.....................................................................................................20

Appendix A: Additional Information..................................................................21

Scope and Methodology..................................................................................21

Prior Audit Coverage.......................................................................................22

Appendix B: Postmark Requirements by State.................................................23

Appendix C: Management's Comments............................................................25

Contact Information..........................................................................................31

↰ BACK to COVER

# Highlights

## Objective

Our objective was to evaluate the U.S. Postal Service's readiness for timely processing of Election and Political Mail for the 2020 general elections.

Election Mail is any mailpiece that an authorized election official creates for voters participating in the election process and includes ballots and voter registration materials. Political Mail is any mailpiece created by a registered political candidate, a campaign committee, or a committee of a political party for political campaign purposes.

Election and Political Mail can be sent as either First-Class Mail, which takes 2 to 5 days to be delivered, or Marketing Mail, which takes 3 to 10 days to be delivered, depending on the preference of the customer. However, ballots returned by voters are required to be sent as First-Class Mail. While Marketing Mail has longer processing and delivery timeframes, it costs less than First-Class Mail.

The Postal Service plays a vital role in the American democratic process and this role continues to grow as the volume of Election and Political Mail increases. In addition to the next general election, which will be held November 3, 2020, there will be federal elections for all 435 seats in the U.S. House of Representatives and 35 of the 100 seats in the U.S. Senate. There will also be 13 state and territorial elections for governor and numerous other state and local elections. Due to the COVID-19 pandemic, there is an expected increase in the number of Americans who will choose to vote by mail and avoid in-person voting.

Our prior audits related to the Postal Service's processing of Election and Political mail include: *Processing Readiness for Election and Political Mail for the 2018*

*Midterm Elections* (Report Number NO-AR-18-007, dated June 5, 2018), *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Report Number 19XG010NO000-R20, dated November 4, 2019), and *Timeliness of Ballot Mail in the Milwaukee Processing and Distribution Center Service Area* (Report Number 20-235-R20, dated July 7, 2020).

In the prior audits, we found the Postal Service needed to improve communication between headquarters, mail processing facilities, and election officials; train staff on Election and Political Mail processes; keep internal Election and Political Mail websites up-to-date; and appropriately align resources to process peak Election and Political Mail volume.

This audit was conducted during special and primary elections held in May and June 2020 and included reviewing operations at Processing and Distribution Centers (P&DC) that were processing mail for a special or primary election in each of the seven Postal Service areas. The facilities reviewed were Santa Clarita, Portland, Indianapolis, Baltimore, Charleston, Brooklyn, and Oklahoma City P&DCs.

We did not evaluate recent operational changes made by the Postal Service or the significant increases in delayed mail at delivery units experienced this summer. In response to a congressional request received on August 7, 2020, we have an ongoing project which will evaluate these operational changes and their impact on mail service. On August 18, 2020, the Postmaster General announced he was suspending initiatives regarding Postal Service operational changes until after the general election is concluded.

## Findings

While the Postal Service has made progress in preparing for the 2020 general election, there are concerns surrounding integrating stakeholder processes with Postal Service processes to help ensure the timely delivery of Election and Political Mail. These potential concerns include:

- Ballots mailed without barcode mail tracking technology;

- Ballot mailpiece designs that result in improper processing;

> **"The Postal Service plays a vital role in the American democratic process and this role continues to grow as the volume of Election and Political Mail increases."**

- Election and Political Mail likely to be mailed too close to the election, resulting in insufficient time for the Postal Service to process and deliver the mailpieces;

- Postmark requirements for ballots; and

- Voter addresses that are out of date.

Resolving these issues will require higher level partnerships and cooperation between the Postal Service and various state officials, including secretaries of state and state election boards. Timely delivery of Election and Political Mail is necessary to ensure the integrity of the U.S. election process.

## Stakeholder-Related Election Mail Issues

The Postal Service has frequently communicated to state election officials the importance of ballot mailpiece tracking and design, the required timeframes for processing and delivering mail, and the importance of updating voter addresses. They have designated area and district Political and Election Mail coordinators to conduct outreach to state and local election officials and published a toolkit for election officials to facilitate voting by mail. Further, the Postal Service has altered their normal processes to accommodate for the timely processing of Election and Political Mail, such as requiring postmarks on all ballots, prioritizing the pickup, processing, and delivery of Election and Political Mail, and diverting resources as necessary. However, as mentioned in the *Timeliness of Ballot Mail in the Milwaukee P&DC Service Area* audit, issues surrounding these items continue to occur.

- The Postal Service, mailers, and election boards are not able to track ballot envelopes that do not have barcodes. According to Postal Service management, some election boards have chosen to continue using excess stock of ballot envelopes without barcodes and some lack the funding for integrating the use of barcodes in their mailing process. Based on data analyzed from the 2018 general election season, about 31.1 million ballots were cast by mail, but only 4.1 million (13 percent) Election Mail mailpieces used mail tracking technology.

- Some election boards continue using ballot envelope designs which can cause mail processing machines to return ballots to voters. This can occur

when the ballot envelope contains more than two addresses, as well as when addresses are located on both sides of the envelope.

- Mailers, election boards, and voters are likely to mail Election and Political Mail too close to an election. This could result in insufficient time for the Postal Service to process and deliver the mailpieces within prescribed delivery standards, and still meet state deadlines for receiving ballots from voters. The Postal Service suggests election offices send ballots as First-Class Mail, and while First-Class Mail only takes 2 to 5 days to be delivered, the Postal Service recommends election offices send ballots to voters at least 15 days prior to an election. This is to ensure time for the ballot to reach the voter and for the voter to complete and return the ballot. However, 48 states and the District of Columbia have absentee ballot request deadlines less than 15 days in advance of an election. According to Postal Service management, during the primary election season, election boards mailed over 1 million ballots to voters within 7 days of an election. This put these ballots at high risk by not allowing sufficient time for delivery to voters and their subsequent delivery back to the election boards.

- Postmarking provides an official date stamp for ballots; however, ballot postmarking policies vary by state. Although 29 states do not currently require postmarks on absentee ballots, the states that do require them have different timeframes for when ballots must be postmarked or received to be counted. In anticipation of an increase in voting by mail during the November 2020 general election, some states have recently updated their postmark requirements.

- States have different requirements and timeframes for updating their voter registries. Some states only update voter address information every two years and run the risk of using outdated addresses for their registered residents who have moved. This can cause absentee ballots intended for voters to be returned to election officials as undeliverable.

When mailers, states, and election boards do not follow recommended best practices to prepare, process, and track Election and Political Mail sent to voters, there is an increased risk the mail may not be delivered timely.

## Readiness for Timely Processing

Since our prior audits, the Postal Service has improved internal communication between headquarters and mail processing facilities, and developed online Election and Political Mail training. However, the amount of identifiable Election and Political Mail delivered on-time nationwide was 94.5 percent from April 2020 through June 2020, a decrease of 1.7 percentage points compared to the same time period in 2018.

The seven P&DCs we reviewed that were processing Election and Political Mail for special or primary elections did not always comply with Election and Political Mail readiness procedures. Specifically:

- While all seven facilities performed some level of certification that they were clear of Election and Political Mail in their facility at the end of the day, five of the facilities did not fully comply during the two weeks leading up to the election. Specifically, facilities either did not complete, properly complete, or timely complete the daily certification. Further, even though the Oklahoma and Baltimore P&DCs certified they were clear of Election and Political Mail daily, we identified approximately 200 ballots at the Oklahoma City P&DC and 68,000 Political Mail mailpieces at the Baltimore P&DC that had not been processed.

- Six of the seven facilities did not always complete daily self-audits of Election and Political Mail readiness. The self-audit verifies readiness to receive and process Election and Political Mail and includes items such as verifying daily all-clear checks, evaluating the setup of a staging area, and logging the arrival of Election and Political Mail.

- None of the seven facilities used the Postal Service's Operational Clean Sweep Search Checklist. This checklist provides a list of specific areas to check when searching for Election and Political Mail within the mail processing facility.

- Six of the seven facilities used their own variation of the Election and Political Mail logs, which were missing key information such as mail class and the

date/time it was cleared from the operation. The logs help track Election and Political Mail as it moves through the Postal Service's network.

These issues occurred due to a lack of management oversight and unclear guidance regarding who is responsible for completing all-clear certifications, checklists, and logs; who ensures issues are resolved; and how often these items should be completed and maintained. Not completing and using these tools could result in processing delays and lower service performance. An analysis of data determined the total number of identifiable Election and Political Mail mailpieces not delivered on time from April 2020 through June 2020 for the seven P&DCs was about 1.6 million (8 percent) of 20.2 million mailpieces.

In addition, we noted that while postmarks are not required on all mailings and are intended to be a revenue protection mechanism to prevent the reuse of postage, the Postal Service has directed personnel to postmark all ballots to assist state election boards. However, we found that ballots are not always being postmarked as required and it is a challenge for the Postal Service to ensure full compliance. Some ballots did not receive a postmark due to: (1) envelopes sticking together when processed on a machine; (2) manual mail processing; or (3) personnel unaware that all return ballots, even those in prepaid reply envelopes, need to receive a postmark. Without a postmark or return ballots mailed by voters, a ballot could be rejected and a vote not counted. The Postal Service reissued guidance on July 29, 2020 and held a webinar reiterating to employees that all ballots sent by voters must have a postmark. The Postal Service is also currently evaluating the proper postmarking procedures for situations where a ballot is received at a delivery unit with no postmark, but there is evidence that it was processed by the Postal Service on or before election day. Therefore, we are not making a recommendation regarding this issue.

### Best Practices

We identified several best practices employed at various locations to improve readiness for processing Election and Political Mail. These practices include:

- Political and Election Mail coordinators obtaining an estimate of Election and Political Mail volume and drop off dates in advance from mailers which helped inform facilities of potential staffing requirements.

- Facilities obtaining sample ballot envelopes to test in mail processing machines.

- Facilities using work floor monitors to display important Election and Political Mail information, such as upcoming election dates and deadlines.

- States, such as Colorado, paying independent contractors to track ballots and provide alerts during each step of the voting process – from ballot printing to acceptance by election officials.

- Election officials creating colored absentee ballot return envelopes to make identifying return ballots easier for the Postal Service, election offices, and voters.

## Recommendations

We recommended management:

- Leverage established partnerships with state and local election officials to work toward creating a separate, simplified mail product exclusively for Election Mail that would support uniform mail processing, including mandatory mailpiece tracking and proper mailpiece design. Until this new product is developed, continue to prioritize the processing of Election Mail consistent with past practices.

- Ensure mail processing facilities perform an accurate daily certification that they are clear of Election and Political Mail using the Operational Clean Sweep Search Checklist.

- Clearly define roles, responsibilities, and oversight to ensure that the Political and Election Mail Audit Checklist is completed; and define timeframes for completion during election season.

- Ensure mail processing facilities use and maintain the standardized Election and Political Mail log for each operation.

- Implement best practices identified during our audit and continue educating election officials on identified best practices to increase nationwide Election and Political Mail readiness.

# Transmittal Letter



OFFICE OF INSPECTOR GENERAL
UNITED STATES POSTAL SERVICE

August 31, 2020

**MEMORANDUM FOR:**   DAVID E. WILLIAMS
CHIEF LOGISTICS AND PROCESSING
OPERATIONS OFFICER

E-Signed by Inspector General
VERIFY authenticity with eSign Desktop

**FROM:**   Darrell E. Benjamin, Jr.
Deputy Assistant Inspector General
for Mission Operations

**SUBJECT:**   Audit Report – Processing Readiness of Election and
Political Mail During the 2020 General Elections
(Report Number 20-225-R20)

This report presents the results of our audit of the Processing Readiness of Election and
Political Mail During the 2020 General Elections.

We appreciate the cooperation and courtesies provided by your staff. If you have any
questions or need additional information, please contact Todd J. Watson, Director,
Network Processing, or me at 703-248-2100.

Attachment

cc:   Postmaster General
Corporate Audit Response Management

# Results

## Introduction/Objective

This report presents the results of our self-initiated audit of the U.S. Postal Service's Processing Readiness of Election and Political Mail During the 2020 General Elections (Project Number 20-225). Our objective was to evaluate the U.S. Postal Service's readiness for timely processing of Election and Political Mail for the 2020 general elections.

## Background

The 2020 U.S. general elections are scheduled to be held on Tuesday, November 3, 2020. In addition to the presidential election, federal elections will also be held for all 435 seats in the U.S. House of Representatives and 35 of the 100 seats in the U.S. Senate. There will also be 13 state and territorial elections for governor and numerous other state and local elections.

Due to the COVID-19 pandemic, there is an expected increase in the number of Americans who will choose to vote by mail[1] and avoid in-person voting. Every state allows some form of absentee ballot[2] voting[3]; however, only five states allow elections to be conducted entirely by mail.[4] Currently, there are over 152 million registered U.S. voters. If every registered voter received and returned a ballot by mail in the November 2020 general election, it would represent less than 1.4 percent of the Postal Service's average monthly volume.[5] The Postal Service plays a vital role in the American democratic process and this role will continue to grow as the volume of Election and Political Mail increases.

> **"Our objective was to evaluate the U.S. Postal Service's readiness for timely processing of Election and Political Mail for the 2020 general elections."**

Election Mail is any mailpiece that an authorized election official creates for voters participating in the election process and includes ballots and voter registration materials. Political Mail is any mailpiece created by a registered political candidate, a campaign committee, or a committee of a political party for political campaign purposes.

Election and Political Mail can be sent as either First-Class Mail, which takes 2 to 5 days to be delivered, or Marketing Mail, which takes 3 to 10 days to be delivered, depending on the preference of the customer. However, ballots returned by voters are required to be sent as First-Class Mail. While Marketing Mail has longer processing and delivery timeframes, it costs less than First-Class Mail.

Our prior audits related to Postal Service's processing of Election and Political mail include: *Processing Readiness for Election and Political Mail for the 2018 Midterm Elections* (Report Number NO-AR-18-007, dated June 5, 2018), *Special Performance of Election and Political Mail During the 2018 Midterm and Special Elections* (Report Number 19XG010NO000-R20, dated November 4, 2019), and *Timeliness of Ballot Mail in the Milwaukee Processing and Distribution Center Service Area* (Report Number 20-235-R20, dated July 7, 2020).

In the prior audits, we found the Postal Service needed to improve communication between headquarters, mail processing facilities, and election officials; train staff on Election and Political Mail processes; keep internal Election and Political Mail websites up-to-date; and appropriately align resources to process peak Election and Political Mail volume. We also noted potential concerns nationally with deadlines set by the states to request absentee ballots, ballot postmarks, ballots mailed without mail tracking technology, and the ratio of Political and Election Mail coordinators to election offices in certain locations. The Postal Service has implemented corrective actions for these recommendations.

---

1   Vote by mail occurs when voters receive or return their ballots through the mail.
2   An absentee ballot is a ballot that has been sent to a voter who will use it to vote outside of a polling place or election official's office.
3   All states will mail absentee ballots to certain voters who request vote. In most states, any qualified voter may vote absentee without offering an excuse, but other states require an excuse to request an absentee ballot.
4   In Colorado, Hawaii, Oregon, Washington, and Utah, a ballot is automatically mailed to every eligible voter (no request or application is necessary).
5   Through Fiscal Year 2020, Quarter 3, on average the Postal Service processed over 22 billion mailpieces monthly.

Processing Readiness of Election and Political Mail During the 2020 General Elections
Report Number 20-225-R20

This audit was conducted during special and primary elections held in May and June 2020 and included reviewing operations at Processing and Distribution Centers (P&DCs) that were processing mail for a special or primary election in each of the seven Postal Service areas (see Table 1). During our audit, we noted some states changed their vote by mail requirements in response to the COVID-19 pandemic. For example, some states changed their ballot postmarking requirements and/or absentee ballot request deadlines. Any state election process or requirement change made after August 2020 is not reflected in this report. See Appendix A for additional details.

**Table 1. Mail Processing Facilities Reviewed and Corresponding Election**

| Area | Facility (P&DC) | Primary or Special Election | 2020 Election Date |
|---|---|---|---|
| Pacific | Santa Clarita, CA | Special | May 12 |
| Western | Portland, OR | Primary | May 19 |
| Capital Metro | Baltimore, MD | Primary | June 2 |
| Great Lakes | Indianapolis, IN | Primary | June 2 |
| Eastern | Charleston, WV | Primary | June 9 |
| Northeast | Brooklyn, NY | Primary | June 23 |
| Southern | Oklahoma City, OK[6] | Primary | June 30 |

Source: U.S. Postal Service Office of Inspector General (OIG) analysis.

We did not evaluate recent operational changes made by the Postal Service or the significant increases in delayed mail at delivery units experienced this summer. In response to a congressional request received on August 7, 2020,

we have an ongoing project[7] which will evaluate these operational changes and their impact on mail service. On August 18,2020, the Postmaster General (PMG) announced he was suspending initiatives regarding Postal Service operational changes[8] until after the general election is concluded. The PMG also announced an expansion of the election mail task force to include leaders from postal unions and management associations to enhance partnerships with state and local election officials.

## Finding #1: Stakeholder-Related Election Mail Issues

While the Postal Service has made progress in preparing for the 2020 general election, there are concerns surrounding integrating stakeholder processes with the Postal Service's processes to help ensure the timely delivery of Election and Political Mail.

These potential concerns include:

- Ballots mailed without barcode[9] mail tracking technology;
- Ballot mailpiece designs that result in improper processing;
- Election and Political Mail likely to be mailed too close to the election, resulting in insufficient time for the Postal Service to process and deliver the mailpieces;
- Postmark requirements for ballots; and
- Voter addresses that are out of date.

Resolving these issues will require higher level partnerships and cooperation between the Postal Service and various state officials, including secretaries of state and state election boards. Timely delivery of Election and Political Mail is necessary to ensure the integrity of the U.S. election process.

6   Due to the COVID-19 pandemic, the team conducted virtual site visits for all facilities except Oklahoma City P&DC.
7   *Evaluation of Operational Changes on Mail Delivery Service*, Project Number 20-292.
8   Mail processing equipment and blue collection boxes will remain where they are, no mail processing facilities will close, and overtime will continue to be approved, as needed.
9   A Postal Service barcode is used to sort and track letters and flats. The Postal Service is promoting use of the barcodes because it expands the ability to track individual mailpieces and provides customers with greater visibility into the mailstream.

## Use of Barcodes

The Postal Service, mailers, and election boards are not able to track ballot envelopes that do not have barcodes. While there is no requirement for ballots to have barcodes, the Postal Service has recommended election offices use them. Barcodes can be used by both the Postal Service and the mailer, or election office, to track ballots sent to and returned by voters. Without the use of barcodes it is extremely challenging and, in many cases not possible, to determine whether or not a ballot was sent through the Postal Service, returned by a voter, and/or if there was a delay in the Postal Service's processes. Based on data analyzed from the 2018 general election season, less than 4.1 million[10] (13 percent) of the 31.1 million[11] vote by mail ballots used barcodes.

According to Postal Service management, some election boards have chosen to continue using excess stock of ballot envelopes that do not have barcodes and some lack the funding for integrating the use of barcodes in their mailing processes. One state's election office we spoke with stated there would be challenges incorporating barcodes into their system and that it could not be completed before the 2020 general election.

## Ballot Envelope Design

States include different security features on ballot return envelopes to help protect voting by mail and validate voter identity. These features can include barcodes to identify the voter, voter and witness signatures, voter address, notary seal, and driver's license or social security number. However, if these features are not properly located on the envelope, mail processing machines may missort the mailpiece and return the ballot to the voter. This can occur when the ballot envelope contains more than two addresses or when addresses are located on both sides of the envelope (see Figure 1). The Postal Service also received return ballots from voters that didn't have the election office address included on the envelope. This also caused the ballot to be returned to the voter (see Figure 2).

## Figure 1. Example of Ballot Return Envelope with Barcode, Voter and Witness Signature, and Voter Address on the Back



Source: OIG, August 2020.

10  This data was pulled from Informed Visibility (IV) during October and November 2018, and includes all Election Mail mailpieces, not just ballots.

11  This data was obtained from the U.S. Election Assistance Commission report, *Election Administration and Voting Survey, 2018 Comprehensive Report, A Report to the 116th Congress*, dated June 2019, and includes only ballots.

within seven days of the election) that do not provide sufficient time for election offices to generate ballots and for the Postal Service to process and deliver the ballots to voters before the election (see Table 2). Additionally, 14 other states have deadlines (8 to 14 days before election) that put ballots at high risk of not being delivered to voters before an election.[14]

**Table 2. States with Ballot Request Deadlines Seven Days or Less Before Election Day**

| No Deadline | Number of Days Before Election Day | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | 1 day | 2 days | 3 days | 4 days | 5 days | 6 days | 7 days |
| MS | CT | | ME | GA | AL | WV | AR |
| NH | DE | | OH | LA | IL | | CA |
| ND | MN | | | MA | NM | | DC |
| | MT | | | MI | WI | | HI |
| | SD | | | SC | | | KS |
| | VT | | | | | | KY |
| | WY | | | | | | MD |
| | | | | | | | NJ |
| | | | | | | | NY |
| | | | | | | | NC |
| | | | | | | | OK |
| | | | | | | | PA |
| | | | | | | | TN |

Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

**Figure 2. Example of Ballot Return Envelope with No Address**



Source: USPS, August 2020.

## Mailing Too Close to Election Date

Mailers, election boards, and voters are likely to mail Election and Political Mail too close to an election. This could result in insufficient time for the Postal Service to process and deliver the mailpieces within prescribed delivery standards[12] and still meet state deadlines for receiving ballots from voters. Any time Election and Political Mail mailpieces are mailed before an election with less time than the corresponding service standard, they are at risk of not being delivered before an election.

The Postal Service suggests election offices send ballots as First-Class Mail. While First-Class Mail only takes 2 to 5 days to be delivered[13], the Postal Service recommends election offices send ballots to voters at least 15 days prior to an election to ensure time for the ballot to reach the voter and for the voter to complete and return the ballot. However, 34 states and the District of Columbia have absentee ballot request deadlines (those with no deadline or a deadline

12  Election and Political Mail can be sent as First-Class Mail, which takes 2 to 5 days to be delivered, or as Marketing Mail, which takes 3 to 10 days to be delivered.
13  First-Class Mail sent within the continental U.S. takes 2 to 3 days.
14  The two states that allow sufficient time for the voter to receive, complete, and mail the ballot back before the day of the election are Oregon and Rhode Island – both require the voter to request a ballot 21 days in advance of election day.

↖ BACK to COVER

*"According to Postal Service management, during the primary election season from June 2, 2020, through August 13, 2020, election boards mailed over 1 million ballots out to voters late."*

According to Postal Service management, during the primary election season from June 2, 2020, through August 13, 2020, election boards mailed over 1 million ballots out to voters late (within seven days of an election).[15] This put these ballots at high risk by not allowing sufficient time for delivery to voters and their subsequent delivery back to the election boards. Specifically:

- Kentucky and New York election boards accounted for 60 percent (over 628,000 ballots) of the ballots sent out late to voters.

- In 11 states, over 44,000 ballots were sent from the election boards to voters the day of or day before the state's primary election.

- In Pennsylvania, 500 ballots were sent from the election board to voters the day after the election.

- In 17 states, over 589,000 ballots were sent from the election boards to voters after the state's ballot mailing deadline.

In a recent prior audit[16], we also noted ballots going out to voters being mailed the day of an election. As a result, the ballots were not delivered until after election

day and voters were not able to successfully participate in the election. We also observed similar issues involving Political Mail[17] during our site visit to the Oklahoma City P&DC. We noted a mailer dropping off Political Mail at 5:30 p.m. on the state's primary election date.

The Postal Service took corrective action to partially address this ongoing issue and created a standardized cautionary notice form[18] for both Election and Political Mail. Now the Postal Service requires[19] mailers to sign these forms acknowledging the Election or Political Mail may not be delivered before the election when it is mailed too close to election day.

## Postmarks

Postmarks[20] provide an official date stamp for ballots, but ballot postmarking policies vary widely by state (see Figure 3). In anticipation of an increase in voting by mail during the November 2020 general election, some states have also recently updated their postmark requirements.

- Twenty-nine states do not require postmarks on absentee ballots. In these states, ballots must be received by election officials on election day to count and ballots received after election day are not counted, regardless of the postmark date.

- The remaining 21 states and the District of Columbia require postmarks but have different timeframes for when ballots must be postmarked and received to count.[21]

For more details on postmark requirements, see Appendix B.

15  For purposes of this review, the Postal Service considered a ballot to be late if it was sent by the election board to the voter within seven days of election day.
16  *Timeliness of Ballot Mail in the Milwaukee P&DC Service Area* (Report Number 20-235-R20, dated July 7, 2020).
17  This was campaign mail from a political candidate, not ballots.
18  The cautionary notice form is to be used when mail is presented after the recommended final entry date, and includes information such as class of mail, date of mailing, pieces in mailing, and permit holder/number.
19  The cautionary notice form is required to be completed at locations where mailers drop off mailings. This includes both Business Mail Entry Units (BMEU) and associate offices.
20  A postmark is an official Postal Service imprint applied in black ink on the address side of a stamped mailpiece.
21  Two states (Alabama and Utah) require postmarks on all mailed ballots, even if the mailed ballots are received prior to election day.

↰ BACK to COVER

TABLE OF CONTENTS    HIGHLIGHTS    RESULTS    APPENDICES

**Figure 3. State Postmark Requirements**



Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

■ Required
■ Not Required

### Addresses

Incorrect voter addresses can cause absentee ballots intended for voters to be returned to election officials as undeliverable. States have different requirements and timeframes for updating their voter registries. People move frequently in the U.S. and often do not contact election officials to inform them of their new address.

States confirm and update voter addresses by sending periodic address confirmation mailings, verifying addresses against the Department of Motor Vehicle's database, or running checks against the Postal Service's National Change of Address (NCOA) files to see if a voter's information has changed. While the Postal Service makes the NCOA database available to all states, only 36 states have chosen to use it. In addition, some states only update

voter address information every two years, and run the risk of using outdated addresses for their registered residents who have moved within that time period.

When mailers, states, and election boards do not follow recommended best practices to prepare, process, and track Election and Political Mail sent to voters, there is an increased risk the mail may not be delivered timely.

### Postal Service Actions to Improve Timely Delivery of Election and Political Mail

The Postal Service has frequently communicated to state election officials the importance of ballot mailpiece tracking and design, the required timeframes for processing and delivering mail, and the importance of updating voter addresses.

The Postal Service has designated area and district Political and Election Mail coordinators to conduct outreach to state and local election officials. Some of their responsibilities include educating Election Mail stakeholders on Postal Service best practices and having direct, two-way interaction with state and local officials. The Postal Service also publishes a toolkit[22] for election officials to facilitate voting by mail. The toolkit describes the process for tracking ballots through the mailstream, information on how to contact a mailpiece design analyst, and ensuring voter addresses are up-to-date, accurate, and complete. The Postal Service also issued letters on May 29, 2020 and July 29, 2020, reminding election officials about mailing standards and deadlines. According to Postal Service management, they have had over 39,000 meetings or correspondences with the 50 states, and the District of Columbia, on matters surrounding Election and Political Mail.

Additionally, the Postal Service has altered its normal processes to accommodate for the timely processing of Election and Political Mail and help meet the needs of elections. Specifically:

- The Postal Service is requiring all ballots mailed back from voters to have a postmark including prepaid envelopes that are not normally postmarked.

- The Postal Service often prioritizes Election and Political Mail mailed as Marketing Mail and treats it as First-Class Mail. In addition, the Postal Service has expedited ballots that are mailed too close to election day via Priority Mail Express.[23] In New York, an election board dropped off about 62,000 ballots one day before the primary election. Since New York requires all return ballots to be postmarked by election day, the Postal Service sent all ballots out by express mail to give voters the opportunity to vote.

- The Postal Service does not delay delivery of ballots addressed to an election office due to insufficient postage.

- Prior to election day, the Postal Service adds direct transportation trips to election offices to ensure all outgoing ballots are picked up and processed

timely. For example, for the District of Columbia's June 2, 2020 primary election, the Postal Service agreed to make three pickups (1:30 p.m., 5:00 p.m., and 10:00 p.m.) on May 28 and May 29, 2020 to clear all outgoing ballots.

- On election day, the Postal Service often diverts staff to manually identify and separate absentee ballots to speed up their delivery to election officials and help ensure votes are counted. During our review of the Oklahoma City P&DC, we observed management and employees manually sorting through trays of mail to identify ballots to ensure they were delivered on time. Further, they tasked some employees with driving to county election boards across the state to ensure ballots were delivered on time.

> **"On election day, the Postal Service often diverts staff to manually identify and separate absentee ballots to speed up their delivery to election officials and help ensure votes are counted."**

Integrating stakeholder processes with the Postal Service's processes is critical to the upcoming election to ensure the timely processing and delivery of ballots. The integration of these processes is dependent on strong relationships between the Postal Service and the approximately 8,880 election boards, as well as the secretaries of state and state election directors. As we have made recommendations in a prior audit[24] to address the process integration concerns, and corrective actions are ongoing, we are not making further recommendations regarding these issues. However, there is a need to develop a mail product that more comprehensively addresses the requirements associated with voting by mail and simplifies compliance with those requirements for future election cycles.

22  2020 Official Election Mail – Kit 600.
23  Priority Mail Express is the fastest mail service offered by the Postal Service, and includes overnight delivery.
24  *Timeliness of Ballot Mail in the Milwaukee P&DC Service Area* (Report Number 20-235-R20, dated July 7, 2020).

Processing Readiness of Election and Political Mail During the 2020 General Elections
Report Number 20-225-R20

## Finding #2: Readiness for Timely Processing

Since our prior audits, the Postal Service has improved internal communication between headquarters and mail processing facilities, and developed online Election and Political Mail training.

However, the amount of identifiable[25] Election and Political Mail delivered on time nationwide was about 94.5 percent[26] from April 2020 through June 2020, a decrease of 1.7 percentage points when compared to the same period in 2018. See Table 3 for a breakdown of Election and Political Mail scores by mail class.

### Recommendation #1

We recommend the **Chief Logistics and Processing Operations Officer** leverage established partnerships with state and local election officials to work toward creating a separate, simplified mail product exclusively for Election Mail that would support uniform mail processing, including mandatory mailpiece tracking and proper mailpiece design. Until this new product is developed, continue to prioritize the processing of Election Mail consistent with past practices.

**Table 3. Election and Political Mail Counts and Amount Delivered On Time**

**April through June 2018**

| Mail Class | Election Mail | | Political Mail | |
|---|---|---|---|---|
| | Count | On Time | Count | On Time |
| First-Class Mail | 3,681,695 | 97.8% | 4,271,464 | 94.6% |
| Marketing Mail | 35,987,820 | 95.4% | 197,406,056 | 96.4% |

**April through June 2020**

| Mail Class | Election Mail | | Political Mail | |
|---|---|---|---|---|
| | Count | On Time | Count | On Time |
| First-Class Mail | 26,914,852 | 96.1% | 4,133,514 | 89.4% |
| Marketing Mail | 32,973,899 | 97.1% | 168,848,594 | 93.7% |

Source: IV and OIG analysis.

25  It is likely that these figures do not fully represent the total amount of Election and Political Mail, as these mailpieces can only be identified, measured, and tracked by the Postal Service if they have a barcode.
26  This is a composite score calculated from the cumulative total of both Election and Political Mail, as well as First-Class and Marketing Mail.

We found that the seven P&DCs we reviewed that were processing Election and Political Mail for special or primary elections did not always comply with Election and Political Mail readiness procedures. Specifically, it is the Election and Political Mail coordinator's responsibility to certify that processing facilities and customer service units under their jurisdiction are clear of all committed Election and Political Mail during the specified election timeframe (two weeks before and two weeks after the election).[27] The Postal Service has controls and tools in place, such as daily self-audits, clearance checklists, and Election and Political Mail logs, to ensure compliance to their Election and Political Mail readiness procedures, and to assist with its daily all-clear certifications. However, due to unclear guidance the daily all-clear certifications, as well as the checklists and logs, were not always completed as required.

### Daily All-Clear Certification

While all seven facilities performed some level of certification that they were clear of Election and Political Mail in their facility at the end of the day, five of the facilities did not fully comply during the two weeks leading up to the election. Specifically, facilities either did not complete, properly complete, or timely complete the daily certification. (see Table 4).

> *"While all seven facilities performed some level of certification that they were clear of Election and Political Mail in their facility at the end of the day, five of the facilities did not fully comply during the two weeks leading up to the election."*

### Table 4. Daily All-Clear Certification Compliance for the 15 Days Reviewed

| Facility (P&DC) | Days Not Certified | Days Certified Non-Compliant[28] | Days Not Certified Timely |
| --- | --- | --- | --- |
| Santa Clarita | 0 | 0 | 2 |
| Portland | 0 | 0 | 1 |
| Baltimore | 0 | 0 | 0 |
| Indianapolis | 1 | 0 | 0 |
| Charleston | 0 | 0 | 0 |
| Brooklyn | 0 | 3 | 0 |
| Oklahoma City | 0 | 0 | 1 |

Source: OIG interviews and analysis of documentation received from the facility.

Further, even though the facilities validated that they were clear of all committed Election and Political Mail, we found instances where both types of mail had not been processed. During our site visit at the Oklahoma City P&DC, management indicated they were clear of Election and Political Mail during the morning of the Oklahoma Primary election on June 30, 2020. However, we found two trays of Election Mail ballots (or approximately 200 mailpieces), postmarked on June 29, 2020, on the workroom floor (See Figure 4). As soon as Oklahoma City P&DC management was made aware of the ballots, they immediately had them sent out to the election boards, ensuring they were received on-time.

27  Training, 2020 Election Cycle, provided by Election and Political Mail Program Manager, dated January 15, 2020.
28  Non-compliant means Election and Political Mail scheduled to be delivered the next day remained at the facility.

Processing Readiness of Election and Political Mail During the 2020 General Elections
Report Number 20-225-R20

↰ BACK to COVER

In addition, even though the Baltimore P&DC certified that they were clear of Election and Political Mail daily, our audit determined that Political Mail[29] received on May 12, 2020, sat unprocessed for five days, resulting in about 68,000 Political Mail mailpieces not delivered on-time. As soon as Baltimore P&DC management discovered the Political Mail, they immediately processed it for delivery.

As previously mentioned, ensuring a facility is clear of Election and Political Mail can be supported by the timely and accurate completion of the Election and Political Mail Audit Checklist, the Operational Clean Sweep Search Checklist, and Election and Political Mail Logs. However, the facilities we reviewed did not always complete, or complete accurately, these checklists and logs. Please see Table 5 for a summary of compliance with these readiness procedures.

## Figure 4: Ballots Found on Election Day After All-Clear




Source: OIG photographs taken at Oklahoma P&DC on June 30, 2020 at 6:20 a.m.

## Table 5. Summary of Compliance with Readiness Procedures

| Facility (P&DC) | Election/Political Audit Checklist – Number of Days Completed out of 15[30] | Used Operational Clean Sweep Search Checklist | Election/Political Mail Log | |
|---|---|---|---|---|
| | | | Used Standard Log | Completed Accurately |
| Santa Clarita | 15 | No | No | No |
| Portland | 3 | No | Yes | No |
| Baltimore | 2 | No | No | No |
| Indianapolis | 1 | No | No | No |
| Charleston | 14 | No | No | No |
| Brooklyn | 6 | No | No | No |
| Oklahoma City | 2 | No | No | No |

Source: OIG interviews and analysis of documentation received from the facility.

29  This was First-Class campaign mail from a political candidate, not ballots.
30  For purposes of this review, we looked at Election and Political Mail Checklists for the two weeks prior to election day, and election day.

Processing Readiness of Election and Political Mail During the 2020 General Elections
Report Number 20-225-R20

## Election and Political Mail Audit Checklist

Six of the seven facilities reviewed did not always complete a daily self-audit checklist of Election and Political Mail readiness for all operations in the mailstream. According to Postal Service guidance[31], the self-audit must be completed daily and several times during the processing window by the BMEU and Mail Processing. The self-audit checklist verifies readiness to receive and process Election and Political Mail and includes items such as verifying daily all-clear checks, evaluating the setup of a staging area, and logging the arrival of Election and Political Mail.

During interviews with Postal Service management, the requirements of who is responsible for completing the audit checklist, and the timeframe of completion was unclear. Some facilities completed the audit checklist daily (including two weeks prior to election day), while others completed it the day before, day of, and day after the election, or completed it at various times throughout the election season.

In addition, the Santa Clarita, Indianapolis, Baltimore, Charleston, and Brooklyn P&DCs self-audit checklists were not completed in their entirety for various reasons; including not answering all the self-audit questions, marking "Not Applicable (N/A)" on questions that should be answered as "Yes" or "No", or marking "No" to a question and not providing an action plan to correct the deficiency.

> **"Six of the seven facilities reviewed did not always complete a daily self-audit checklist of Election and Political Mail readiness for all operations in the mailstream."**

## Operational Clean Sweep Search Checklist

None of the seven facilities reviewed used the Operational Clean Sweep Search Checklist.[32] This checklist is to be used in performing a daily Election and Political Mail search and provides a list of minimal areas to check within the mail processing facility such as BMEU, Inbound dock, Opening Units, and Outbound dock.

## Election and Political Mail Log

Six of the seven facilities reviewed used their own variation of the Election and Political Mail log. Additionally, none of the seven facilities accurately filled in information required by the standard Election and Political Mail logs. As a result, key information such as mail class, dispatch location from/to, and the date/time it was cleared from the operation, was not documented. According to Postal Service guidance[33], the logs are used to record and track all Election and Political Mail as it moves through the Postal Service's network and requires thorough and precise documentation. The logs are compared between each operation to ensure all entered mail is processed and delivered timely.

All of these issues occurred due to a lack of management oversight and unclear guidance regarding who is responsible for completing all-clear certifications, checklists, and logs, and ensuring issues are resolved, and how often items should be completed and maintained.

Not completing and using these tools could result in processing delays and lower service performance for Election and Political Mail. The total number of identifiable Election and Political Mail mailpieces not delivered on time from April 2020 through June 2020 for the seven P&DCs was about 1.6 million of 20.2 million mailpieces, or about 8 percent.

31  Processing Operations Management Order (POMO) POMO 007-19, *Political and Election Mail Policies and Procedures*, dated August 15, 2019.
32  While the Charleston P&DC did not use the Operational Clean Sweep Search Checklist, they did create their own facility-specific checklist that they used during their daily searches.
33  POMO 007-19, *Political and Election Mail Policies and Procedures*, dated August 15, 2019.

Processing Readiness of Election and Political Mail During the 2020 General Elections
Report Number 20-225-R20

## Postal Postmarking Process

Postmarks are not required on all mailings[34] and are intended to be a revenue protection mechanism to prevent the reuse of postage; however, the Postal Service has directed[35] personnel to postmark all ballots to assist state election boards. While we understand that no postmarking process is infallible, we did identify issues that occurred in the Northeast Area during the time of our audit that require attention. Specifically, in one county in New York — a state that requires a postmark — about 4,200 ballots did not receive a postmark. In this case, as well as others, ballots may not receive a postmark due to: (1) envelopes sticking together when processed on a machine; (2) manual mail processing; or (3) personnel unaware that all return ballots, even those in prepaid reply envelopes, need to receive a postmark. Further, in the Albany District, a delivery unit was unsure of what to do when they received ballots from a mail processing facility without a proper postmark date. Without a postmark on return ballots mailed by voters, a ballot could be rejected and a vote not counted.

The Postal Service reissued guidance on July 29, 2020 and held a webinar reiterating to employees that all ballots sent by voters must have a postmark. The Postal Service is also currently evaluating the proper postmarking procedures for situations where a ballot is received at a delivery unit with no postmark, but there is evidence that it was processed by the Postal Service on or before election day. Therefore, we are not making a recommendation regarding this issue.

## Best Business Practices

We identified several best practices employed by the Postal Service and election offices at various locations to improve timely processing of Election and Political Mail. These practices include:

*"The Postal Service has directed personnel to postmark all ballots to assist state election boards."*

■ Mail processing facilities in the Western and Pacific areas obtaining an estimate of Election and Political Mail volume and mailing dates in advance from mailers to help plan for potential staffing requirements. For example, Portland P&DC management were notified ahead of time by election officials of the mailpiece/pallet count of a planned Election Mail drop. This helped to ensure the facility was prepared for increased mail volume, including appropriate staffing. Election officials also notified voters via social media of the voter registration deadline and 545,000 ballots delivered to the Postal Service facility that were ready for processing (see Figure 5).

**Figure 5. Social Media Notification from Oregon Election Officials**



Source: Portland P&DC management photograph taken May 2020.

■ Mail processing facilities in the Capital Metro, Eastern, Great Lakes, and Pacific areas obtaining sample ballot envelopes ahead of elections, which

---

34  Postmarks are not required on mailings bearing a permit, meter, or precanceled stamp for postage, nor to pieces with an indicia (i.e. marking on a mailpiece showing that postage has been prepaid by the sender).
35  David E. Williams (April 23, 2018), Postmarks on Ballots [Memorandum], United States Postal Service.

Processing Readiness of Election and Political Mail During the 2020 General Elections
Report Number 20-225-R20

17

allowed plant management to test them in mail processing machines. This enabled mailpiece design analysts to identify potential issues and inform printers of concerns prior to Election and Political mailings being printed.

The Portland and Brooklyn P&DCs using work floor monitors to display important Election and Political Mail information, such as upcoming election dates and deadlines.

The state of Colorado using an independent contractor to track ballots and alert voters during each step of the voting process – from ballot printing to acceptance by election officials. These services require close coordination with state election offices, county election offices, printers, and the Postal Service. However, once this integration occurs, it can provide real-time, comprehensive data for better forecasting and planning.

Oklahoma election officials creating green absentee ballot return envelopes they plan to use in the November 2020 general elections. This will make identifying return ballots easier for the Postal Service, election officials, and voters.

> *"This will make identifying return ballots easier for the Postal Service, election officials, and voters."*

### Recommendation #2

We recommend the **Chief Logistics and Processing Operations Officer** ensure mail processing facilities perform an accurate daily certification that they are clear of Election and Political Mail using the Operational Clean Sweep Search Checklist.

### Recommendation #3

We recommend the **Chief Logistics and Processing Operations Officer** clearly define roles, responsibilities, and oversight to ensure that the Political and Election Mail Audit Checklist is completed; and define timeframes for completion during election season.

### Recommendation #4

We recommend the **Chief Logistics and Processing Operations Officer** ensure mail processing facilities use and maintain the standardized Election and Political Mail log for each operation.

### Recommendation #5

We recommend the **Chief Logistics and Processing Operations Officer** implement best practices identified during our audit and continue educating election officials on identified best practices to increase nationwide Election and Political Mail readiness.

## Management's Comments

Management generally agreed with the findings and recommendations 2 through 4. Management partially agreed with recommendations 1 and 5. See Appendix C for management's comments in their entirety.

Regarding finding 1, management stated that each item listed, with the exception of postmarking, are outside the authority and control of the Postal Service. Election officials in each state or jurisdiction are responsible for deciding whether to put tracking barcodes on ballot envelopes, proper mailpiece design, mailing dates, and maintaining updated voter addresses. Management added the Postal Service will do everything it can to deliver ballots on time and will commit additional resources in the weeks before the election.

Regarding finding 2, management stated they agree that the audited facilities did not fully comply with instructions for completing required checklists, logs, and audits.

Regarding recommendation 1, management stated they agree to continue ensuring that Election Mail, regardless of mail class, moves through the network expeditiously. Management added they will advance the processing of Election Mail Marketing Mail by utilizing available visibility tools. However, management disagreed with the recommendation to create a separate Election Mail product for the 2020 general election. Management stated the Postal Service does not have sufficient time to develop a new product and complete necessary regulatory reviews prior to the 2020 general election. Management added that undertaking

such a significant change this close to the election would also likely cause unnecessary confusion. In subsequent correspondence with management, they agreed to evaluate adding a dedicated mail product for Election Mail after the 2020 general election. Management stated this action would involve the regulatory environment, so the actual adoption and implementation of the product is unknown at this time. Management stated that they would provide an update on the adoption and implementation status by September 30, 2021.

Regarding recommendation 2, management stated they will update the instructions for the daily all clear certifications to ensure the Operational Clean Sweep Search Checklist is used to validate the all clear check. The target implementation date is September 4, 2020.

Regarding recommendation 3, management stated they will assign defined roles, responsibilities, and oversight for the Political and Election Mail Audit Checklist and distribute it to the field, along with timeframes for completing the checklist during election season. The target implementation date is September 4, 2020.

Regarding recommendation 4, management stated they will redistribute the Election and Political Mail log and require all mail processing facility employees to use it. The target implementation date is September 4, 2020.

Regarding recommendation 5, management stated they partially agree with the recommendation. They agree that Political and Election Mail coordinators should work to obtain an estimate of volumes and drop-off dates in advance of an election. Management added they will also ask coordinators to obtain sample ballots to test ahead of the general election, but noted that election officials may not be able to correct issues found in a test if it's too close to the general election. Management also agreed they should use facility monitors to display Election and Political Mail information; however, they did not agree to implement best practices in areas outside of the Postal Service's control, such as election offices where independent contractors track ballots or colored ballot return envelopes for easy identification. Management stated the Postal Service will continue to educate election officials about its existing recommendations and best practices for both

tracking and increasing the visibility of ballots in the network. In subsequent correspondence with management, they stated they would implement these best practices and provided a target implementation date of September 4, 2020.

## Evaluation of Management's Comments

The OIG considers management's comments responsive to the recommendations and corrective actions should resolve the issues identified in the report.

Regarding recommendation 1, the OIG acknowledges that there is insufficient time before the next general election on November 3, 2020, for the Postal Service to create a separate Election Mail product. In subsequent correspondence with management, they agreed to evaluate adding a dedicated mail product for Election Mail after the 2020 general election. Therefore, we consider the Postal Service's planned actions to be responsive to the recommendation and will monitor the progress of implementing this separate Election Mail product.

Regarding recommendation 5, the OIG acknowledges that the Postal Service does not have the ability to implement best practices outside of its control. However, the Postal Service does have the ability to educate state and local election officials of these best practices during its extensive outreach. Management did agree that Political and Election Mail coordinators should work to obtain estimated volumes and mailing dates in advance of an election and obtain sample ballots to test ahead of the general election, and that facility monitors should be used to display Election and Political Mail information. Therefore, we consider the Postal Service's planned actions to be responsive to the recommendation.

All recommendations require OIG concurrence before closure. Consequently, the OIG requests written confirmation when corrective actions are completed. All recommendations should not be closed in the Postal Service's follow-up tracking system until the OIG provides written confirmation that the recommendations can be closed.

# Appendices

Click on the appendix title below to navigate to the section content.

Appendix A: Additional Information ..................................................... 21

Scope and Methodology ..................................................................... 21

Prior Audit Coverage .......................................................................... 22

Appendix B: Postmark Requirements by State ................................. 23

Appendix C: Management's Comments ............................................. 25

# Appendix A: Additional Information

## Scope and Methodology

The scope of our audit was Election and Political Mail processing for the 2020 primary, special, and general elections. To accomplish our objective, we:

- Analyzed Postal Service data on Election and Political Mail service performance from April to June 2020, comparing to the same period in 2018.

- Reviewed the Postal Service's Election and Political Mail processing strategy, policies, procedures, and related documents and tools, including guidance provided on the Postal Service's Election and Political Mail website.

- Judgmentally selected and reviewed seven P&DCs, one from each Postal Service area, to assess actions taken in preparation of elections; best practices; compliance with Election and Political Mail policies; and opportunities for improvement. We selected the facilities based on their service performance scores from October 2018 to March 2020 and if elections were occurring within their service areas.

- Interviewed Postal Service Headquarters and area officials, and members of the

*" Judgmentally selected and reviewed seven P&DCs, one from each Postal Service area."*

Political Mail Strike/Strategy Team[36] and Political Mail Steering Committee[37], regarding actions taken in response to prior audits, challenges, lessons learned, and best practices in the processing of Election and Political Mail.

- Interviewed state election officials from Indiana, Oklahoma, and West Virginia regarding results, challenges, and lessons learned from vote by mail during the primary election.

We conducted this performance audit from April through August 2020 in accordance with generally accepted government auditing standards and included such tests of internal controls as we considered necessary under the circumstances. Those standards require that we plan and perform the audit to obtain sufficient, appropriate evidence to provide a reasonable basis for our finding and conclusions based on our audit objective. We believe that the evidence obtained provides a reasonable basis for our finding and conclusions based on our audit objective. We discussed our observations and conclusions with management on August 18, 2020, and included their comments where appropriate.

We assessed the reliability of computer-processed data from IV by interviewing agency officials knowledgeable about the data, and comparing the data with other related data. We determined that the data were sufficiently reliable for the purposes of this report.

36  The Political Mail Strike/Strategy Team works closely with Postal Service operations and major mailers, and communicates and shares information with customers at the federal, state, and local levels.
37  The Political Mail Steering Committee is a cross-functional team that began in 2012 to address concerns from members of Congress, state election officials, mailers, and customers about network rationalization and its perceived impact on Election and Political Mail.

## Prior Audit Coverage

| Report Title | Objective | Report Number | Final Report Date | Monetary Impact |
|---|---|---|---|---|
| *Management Alert - Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area* | Determine the cause of delayed ballot mail in the Milwaukee, WI P&DC service area for the spring election and presidential preference primary of April 7, 2020. | 20-235-R20 | 7/7/2020 | None |
| *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections* | Evaluate the Postal Service's performance in processing Election and Political Mail for the 2018 midterm and special elections. | 19XG010NO000-R20 | 11/4/2019 | None |
| *Processing Readiness for Election and Political Mail for the 2018 Midterm Elections* | Evaluate the Postal Service's readiness for timely processing of Election and Political Mail for the 2018 Midterm Elections. | NO-AR-18-007 | 6/5/2018 | None |

# Appendix B: Postmark Requirements by State

Postmarking provides an official date stamp for ballots, but ballot postmarking policies vary widely by each state. One state, Louisiana, does not require a postmark but does require mailed ballots to be received the day before the election. Another 28 states require mailed ballots to be received by close of election day with no postmark requirement. Finally, 21 states and the District of Columbia have various postmark deadlines that allow mailed ballots to be received on election day or 1 to 21 days after the election and still be counted (see Figure 6 and corresponding Table 6). Of these, Alabama, Iowa, North Dakota, Ohio, and Utah require ballots to be postmarked the day before the election, while the others require the ballots to be postmarked by election day.

**Figure 6. State Postmark and Deadline Requirements for Returning Ballots**



Legend:
- **Must be Received Before Election Day** (blue)
- **Post-Election Deadline** (purple)
- **Must be Received By Election Day** (green)
- **Postmark Required** (icon)

Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

## Table 6. States with Postmark Requirement and When Ballot Must be Received

| Election Day | Days After Election Day | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 5 | 6 | 7 | 10 | 14 | 17 | 21 |
| AL[38] | TX | NJ | KS, MA, NC, VA | MS | IA, ND, WV | DC, MN, NV, NY | AK, MD, OH | IL, UT | CA | WA |

Source: OIG analysis of USPS legal policy and legislative advice on *U.S. Elections Voting Requirements*, dated August 3, 2020.

38  Ballots mailed in Alabama must be postmarked prior to Election Day, and received by mail no later than noon on election day.

Processing Readiness of Election and Political Mail During the 2020 General Elections
Report Number 20-225-R20

# Appendix C: Management's Comments



**UNITED STATES**
**POSTAL SERVICE**

DAVID E. WILLIAMS
CHIEF LOGISTICS AND PROCESSING OPERATIONS OFFICER
EXECUTIVE VICE PRESIDENT

August 27, 2020

LAZERICK POLAND
DIRECTOR AUDIT OPERATIONS

SUBJECT:   Project Number 20-225-DRAFT
Processing Readiness of Election and Political Mail During the 2020
General Election

Thank you for the opportunity to review and comment on the Office of Inspector General
(OIG) audit, *Processing Readiness of Election and Political Mail During the 2020 General
Election*. The audit found that the timely delivery of Election and Political Mail is necessary
to ensure the integrity of the U.S. election process, and that there is an increased risk that
Election and Political Mail sent to voters mail may not be delivered timely when mailers,
states, and election boards do not follow the Postal Service's recommended best practices
to prepare, process, and track such mail. The audit also made recommendations to improve
compliance with certain checklist, audit, and log procedures for Election and Political Mail.

Management largely agrees with the audit's findings and recommendations, and we
reiterate our commitment to efficiently process the nation's Political and Election Mail and to
timely deliver such mail. We understand, and continue to take great pride in, our important
role in the electoral process. As the audit suggests, the success and integrity of the election
depends on close coordination within the organization and partnerships and cooperation
between the Postal Service and state election officials, and also requires ensuring that
voters have a general understanding of how the mail works. To that end, we will continue
reiterating our basic message throughout the election season: that voters who choose to
participate in the upcoming elections by mail (1) request their ballots as early as possible,
but at least fifteen days before Election Day, and (2) mail their completed ballots at least
seven days before the election. We will continue to leverage partnerships and conduct
outreach so that voters receive this basic message.

However, we disagree with OIG's recommendation that the Postal Service should create a
new Election Mail product for the 2020 General Election. The Postal Service also does not
agree that it should be responsible for those recommendations or findings that fall under the
ultimate control of election officials, and, therefore, are outside of the Postal Service's
authority.

**Finding # 1: Stakeholder-Related Election Mail Issues**

Management largely agrees with the intent of the audit's findings on Stakeholder-Related
Election Mail Issues. However, each of the listed findings, with the exception of postmarking,
is outside the authority and control of the Postal Service. Election officials in each state or

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-0061
WWW.USPS.COM

↰ BACK to COVER

- 2 -

jurisdiction are ultimately responsible for mailpiece design, mailing dates, maintaining updated voter addresses, and deciding whether to include an Intelligent Mail barcode or other tracking technology. On each of these matters, the Postal Service makes strong recommendations for choosing to adopt our recommendations lies with the election officials, not the Postal Service.

The Postal Service has clearly and repeatedly made recommendations to election officials to include the Intelligent Mail Barcode on all Election Mail envelopes, including ballot envelopes, and to consult with a Mailpiece Design Analyst before printing Election Mail envelopes. These recommendations were made in the 2020 Official Election Mail Kit (Kit 600), which was distributed to 11,500 election officials in March; the General Counsel's letter in May to local and state election officials and state party officials, highlighting key aspects of Election Mail delivery processes; and during our outreach meetings. A Mailpiece Design Analyst has also been assigned to each state to help work with election officials to design proper pieces to aid processing. Despite the Postal Service's extensive outreach efforts, election officials have the final decision regarding whether to use barcode mail tracking technology on their ballots, and regarding the final design for ballot envelopes—including using designs that have been deemed "Not Recommended" or "Disapproved" by a Mailpiece Design Analyst.

The Postal Service shares OIG's concern that mailers, election boards, and voters are likely to mail Election and Political Mail too close to an election. The Postal Service will do everything it can to deliver ballots on time, and will commit additional resources to that effort in the weeks before the election, but we are urging the public to plan ahead and act early. The July letters from our election General Counsel were intended to ensure that election officials and voters are mindful of how the mail works, since state election deadlines often do not consider our delivery standards. This awareness is particularly important given the anticipated increase in mail-in voting during the COVID-19 pandemic, especially in those jurisdictions that are less experienced with handling high volumes of mail-in ballots and that are trying to implement new election rules and requirements.

As noted above, our key recommendations are that voters who choose to use the mail to participate in the election should (1) request their ballot at least fifteen days before the election, to ensure that they have enough time to receive the ballot, complete it, and then mail it back to the elections office, and (2) place their completed ballot in the mail at least seven days prior to the election. While we will continue to stress these recommendations, the Postal Service does not control when election officials or voters enter mail into the mailstream.

The Postal Service also understands that each state has its own election laws, including whether or not a mail-in ballot must be postmarked by a certain date to be counted. In recognition of the importance that the election laws in some states place on postmarks, it has been the Postal Service's policy to postmark all ballots, regardless of the postage-payment method. The Postal Service has supported this policy by convening a Postmark Team that has worked to identify and correct potential process deficiencies, and has updated Processing Operations Management Orders, Stand Up Talks, and Standard Work Instructions. Additionally, the Postal Service has assigned Ballot Monitors in every processing facility to monitor the postmarking process and ensure all processes are being adhered to properly with a goal to minimize any missed postmarks on ballots. Further, to

- 3 -

increase the operational likelihood that a mailpiece will receive a legible postmark, we advise election officials to use automation-compatible, letter sized envelopes for mail-in ballots. Voters should also be aware of posted collection times on collection boxes and the Postal Service's retail facilities. Ballots deposited after the last posted collection time will not be picked up, or postmarked, until the following business day. If voters choose to mail their completed ballot back to election officials, we recommend they do so at a blue collection box, their residential mailbox, or at one of the Postal Service's retail facilities.

Finally, while the Postal Service understands the importance of quality, up-to-date voter address lists, maintenance of such lists is completely controlled by election officials.

Finding #2:  Readiness for Timely Processing

Management agrees with the finding on Readiness for Timely Processing.  As noted below, we agree that the audited facilities did not fully comply with instructions for completing required checklists, logs, and audits.  The Postal Service will update and reissue instructions for these items, and certify full compliance in completing required checklists, logs, and audits. We will also ensure the official log sheet is used in lieu of local modifications.

In addition, as noted above, the Postal Service has undertaken actions to improve the operational likelihood that ballot mail will receive a postmark.  The Postal Service will update the OIG when a decision is made on how to handle mail found in a delivery unit that has not been postmarked.

Recommendation 1

OIG recommends the Chief Logistics and Processing Operations Officer leverage established partnerships with state and local election officials to work toward creating a separate, simplified mail product exclusively for Election Mail that would support uniform mail processing, including mandatory mailpiece tracking and proper mailpiece design. Until this new product is developed, continue to prioritize the processing of election mail consistent with past practices.

Management Response

Management partially agrees with the intent of this recommendation.  Management agrees to continue ensuring that all Election Mail, of whatever class it is entered, moves expeditiously through our network, consistent with our past practices.  We do this by primarily by advancing Election Mail Marketing Mail volume through the processing system quickly and by utilizing the available visibility tools.  As noted in the audit, near Election Day the Postal Service will also separately undertake herculean efforts outside of our normal procedures to make sure ballots meet state deadlines, even where they are mailed close to or on Election Day.  We will continue these efforts in this election, and will devote additional standby resources to ensure the timely delivery of Election Mail as needed.

To be clear, although Election Mail Marketing Mail volume often receives a speed of delivery similar to First-Class Mail, the Postal Service does not literally treat Marketing Mail as First-Class Mail.  As an example, First-Class Mail, unlike Marketing Mail, is sealed against inspection and includes automatic forwarding.  The Postal Service cannot unilaterally

reclassify Marketing Mail volume as First-Class Mail. As stated in the 2019 Management Response to NO-AR-19, *Service Performance of Election and Political Mail During the 2018 Midterm and Special Elections Audit*, the Postal Service handles Election and Political Mail "in accordance with the level of service for which postage has been paid." However, in terms of delivery speed itself, we continue to recognize the importance and time-sensitivity of Election Mail, and do advance Election Mail Marketing Mail volume through the system expeditiously such that the delivery timeframes often match those of Election Mail entered as First-Class Mail. We will continue this practice.

We disagree with the recommendation to create a separate Election Mail product for the 2020 General Election. We understand that the purpose of this investigation is to recommend actions that can be implemented for the 2020 General Election. The Postal Service does not have sufficient time to develop a new product and complete the necessary regulatory reviews prior to the 2020 General Election. Even if the Postal Service could complete the required regulatory reviews prior to November 3, 2020, such review could not be completed before election officials finalize their mailpieces and begin sending them to voters. Undertaking such a significant change this close to the election would also likely cause unnecessary confusion.

<u>Target Implementation Date</u>

Completed.

<u>Recommendation 2</u>

OIG recommends the Chief Logistics and Processing Operations Officer ensure mail processing facilities perform an accurate daily certification that they are clear of Election and Political Mail using the Operational Clean Sweep Search Checklist.

<u>Management Response/Action Plan</u>

Management agrees with this recommendation. We will update the instructions for the All Clear checks to ensure that the Operational Clean Sweep Search Checklist is used to validate the All Clear check before submission.

<u>Target Implementation Date</u>

September 4, 2020

<u>Responsible Official</u>

███████████ Director Election Mail

<u>Recommendation 3</u>

OIG recommends the Chief Logistics and Processing Operations Officer clearly define roles, responsibilities, and oversight to ensure that the Political and Election Mail Audit Checklist is completed; and define timeframes for completion during election season.

- 4 -

- 5 -

Management Response/Action Plan

Management agrees with this recommendation.  Defined roles, responsibilities, and oversight for the Political and Election Mail Audit Checklist will be assigned and distributed to the Field, including timeframes for completion during the election season.

Target Implementation Date

September 4, 2020

Responsible Official

██████████ Director Election Mail

Recommendation 4

OIG recommends the Chief Logistics and Processing Operations Officer ensure mail processing facilities use and maintain the standardized Election and Political Mail log for each operation.

Management Response/Action Plan

Management agrees with this recommendation. While some processing centers have modified the Election and Political Mail log for their local teams over the past several years, the Postal Service will redistribute the original log and require all processing centers to use the official version.

Target Implementation Date

September 4, 2020

Responsible Official

██████████ Director Election Mail

Recommendation 5

OIG recommends the Chief Logistics and Processing Operations Officer implement best practices identified during our audit and continue educating election officials on identified best practices to increase nationwide Election and Political Mail readiness.

Management Response/Action Plan

Management partially agrees with this recommendation. The Postal Service has engaged in extensive outreach with state and local election officials to educate them on the Postal Service's recommendations and best practices and will continue these outreach efforts through the 2020 General Election.  Management agrees that Political and Election Mail Coordinators should work to obtain an estimate of volumes and drop off dates in advance. Additionally, we will also ask Coordinators to obtain sample ballots to test ahead of the

- 6 -

General Election. However, it should be noted that the Postal Service and election officials may not be able to remedy all issues found in a test close to the General Election. Management also agrees that Informed Facility monitors should be used to display Election and Political Mail information, including key dates.

However, management does not agree to implement the best practices in areas outside of the Postal Service's control. Specifically, Management does not agree on the recommended best practices of using independent contractors to track ballots or using colored absentee ballot return envelopes to make identifying ballots easier. Instead, the Postal Service will continue to educate election officials about its existing recommendations and best practices for both tracking and increasing the visibility of ballots in our network. The Postal Service recommends that election officials include the Intelligent Mail barcode on all Election Mail, which can provide election officials near-real time tracking information and other intelligence through Informed Visibility Mail Tracking & Reporting data. The Postal Service also recommends the use of the Official Election Mail logo and Tag 191 to identify ballots.

David E. Williams
Chief Logistics and Processing Operations Officer
and Executive Vice President

cc:    *Manager, Corporate Audit Response Management*

↩ BACK to COVER

APPENDICES

RESULTS

HIGHLIGHTS

TABLE OF CONTENTS



OFFICE OF
INSPECTOR
GENERAL
UNITED STATES POSTAL SERVICE

Contact us via our Hotline and FOIA forms.
Follow us on social networks.
Stay informed.

1735 North Lynn Street
Arlington, VA 22209-2020
(703) 248-2100

For media inquiries, contact Agapi Doulaveris
Telephone: 703-248-2286
adoulaveris@uspsoig.gov



