UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| Mondaire Jones, Alessandra Biaggi, Chris Burdick, Stephanie Keegan, Seth Rosen, Shannon Spencer, Kathy Rothschild, Diana M. Woody, Perry Sainati, Robert Golub, Mary Winton Green, Marsie Wallach, Matthew Wallach, Mac Wallach, Carol Sussman, and Rebecca Rieckhoff, *individually, and on behalf of all others similarly situated*, | |
|---|---|
| Plaintiffs, | No 20 Civ. 6516 (VM) |
| v. | |
| United States Postal Service, Louis DeJoy, as Postmaster General of the United States Postal Service, and Donald J. Trump, as President of the United States, | |
| Defendants. | |

**DECLARATION OF DENNIS W STASA**

I, Dennis W. Stasa, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. § 1746, hereby declare as follows:

1. I am currently employed by the United States Postal Service as Senior Plant Manager, San Antonio Processing & Distribution Center (P&DC, or Plant), in San Antonio, Texas. I have occupied this position since 2012. In this role, I am ultimately responsible for the entire operation of the San Antonio P&DC. I directly manage several USPS managers within the P&DC. Those managers, in turn, directly manage lower-level supervisors, who, in turn, supervise front-line, craft employees. I have worked for the Postal Service since 1986.

2. This declaration is based on my personal knowledge, as well as information conveyed to me by other knowledgeable Postal Service personnel in the course of my official duties and responsibilities.

3. By way of background, the San Antonio P&DC is a distribution center for mail. It receives mail from around the USPS network, sorts that mail, and distributes sorted mail back out to facilities for delivery, or other processing plants. The Plant is a 24-hour/day, 7-day/week operation. We have roughly 600 employees who process mail in the facility. We regularly process approximately 4 million to 5 million pieces of mail each day. This includes various categories of mail, including letters, flats and packages. Much of the processing uses automated machines, and some processing requires manual handling of the mail.

4. I have reviewed the declaration of Jose Carlos Barrios, submitted in the captioned litigation. Prior to his written declaration, Mr. Barrios had not raised to me the concerns

that he notes in his declaration, nor had I heard of his concerns from any other employees.

5. Mr. Barrios' declaration refers extensively to San Antonio P&DC's removal of sorting machines in 2020. The sorting machines to which Barrios refers are Delivery Barcode Sorters, referred to as DBCS machines. The DBCS machines read bar codes on certain mail pieces, and sort them.

6. Based primarily on facility-level data reflecting mail volumes, the Postal Service regularly determines that unnecessary and redundant sorting equipment may be removed, because the remaining machines in a particular facility have more than enough capacity to handle the mail. During my years as a Senior Plant Manager, my recollection is that the San Antonio plant has gone from roughly 41 letter mail sorting machines, to 23 letter mail sorting machines (and down to three mail cancelling machines), because of a decline in the volume of the type of mail that those machines sort. Instructions to remove machines may come from analyses conducted within the Plant; or from regional levels (known as the Area), or national levels, within the USPS, all based on data analyses. If instructions come from Area or national levels, I still confirm whether the San Antonio Plant can effectively process the mail with the remaining machines.

7. The declaration from Mr. Barrios refers to DBCS machines that the San Antonio Plant removed in early 2020. DBCS machines generally sort letter mail, the volume of which has been declining for several years. Accordingly, certain DBCS sorting equipment was scheduled to be removed, as unnecessary for the San Antonio Plant. The removals were: four DBCS machines; one Delivery Barcode Sorter Input/Output Sub-System (DIOSS) machine, and one Combined Input/Output Subsystem (CIOSS) machine, both of which

are machines on the DBCS platform, with certain additional functions. In addition to the DBCS-platform machines, the Plant also removed an Advanced Facer Cancelling System machine (AFCS 200), which faces mail and applies a cancelation mark to processed mail pieces. My understanding is that one of the San Antonio Plant administrators provided routine advance notice to Mr. Barrios, as a union representative, of theses removals. Even without these referenced machines, the Plant is currently operating 22 DBCS (including DIOSS) machines, 1 CIOSS machine, and 3 AFCS 200 machines. The machines in the San Antonio Plant provide ample capacity to sort letter mail, and based on my knowledge and experience, I am confident that the Plant will be able to handle the anticipated volume of election mail this October and November.

8. All of the machines that were scheduled to be removed are still physically located in the Plant. One machine was reduced in capacity and used to send stacker modules to the Plant in Austin, which needed them to support extending one of its own sorting machines. These machines are not necessary to process the volume of letter mail in the San Antonio P&DC. Moreover, removal/disuse of unnecessary machines is more efficient: The Plant saves resources of machine maintenance, allows for additional space to process increase in parcels, and is able to reassign personnel to other areas, such as parcel sorting. Since these machines were taken out of use, the San Antonio P&DC has not had a letter machine capacity issue (based on daily incoming/outgoing letter volumes) with sorting of mail volumes with our remaining operational machines.

9. On August 19, 2020, U.S. Congressional Representative Joaquin Castro toured the San Antonio P&DC. As the Senior Plant Manager, I was the Postal Service's liaison to Rep. Castro during his visit.

10. When Rep. Castro arrived, I, along with Becky Hernandez, Strategic Communications Specialist for the Postal Service, met with him for roughly five to ten minutes in a conference room. During the meeting, Rep. Castro asked about delayed mail, and I told him that the plant had some delayed manual mail, which included both some packages as well as some mail referred to as manual and "PARS mail," which I explained to Rep. Castro.

11. By way of background, "PARS mail" refers to mail intercepted by the Postal Automated Redirection System (PARS) processed on a CIOSS. This system intercepts mail identified as undeliverable-as-addressed during processing, by matching a change-of-address record in the national database with the name and delivery address on the mail piece. After the new address is applied to the piece, the mail is sent to the appropriate operation for sortation. Processing PARS mail creates a downstream flow to manual letters that requires some specific training to sort by hand.

12. I also shared with Rep. Castro that the delays of the packages and PARS mail were not related to the removal of any mail sorting machines. In fact, the DBCS machines do not process either of these mail types and the one CIOSS is sufficient to process daily volumes. Rather, the package and PARS mail delays were due to staff availability and other issues. During the pandemic, the Plant has had unexpected employee call-offs, which led to these delays.

13. During this meeting, I also discussed with Rep. Castro the equipment reduction that had taken place in the Plant in 2020, and explained that the machines were taken out of service based on Area instructions and our local engineering's group determining that they were not needed. I also assured Rep. Castro that with our existing machines, the

Plant will be able to handle the election mail, like ballots for the upcoming November election.

14. I asked Rep. Castro what he would like to see in the Plant. He responded that he wished to see the four disassembled letter sorting machines. I clarified that we had six total recently disassembled DBCS-platform machines (including the DIOSS and CIOSS machines).

15. I gave him a tour of the plant, and we viewed the disassembled DBCS sorting machines that Rep. Castro wished to see. We also viewed the disassembled AFCS200. I also showed him the CIOSS area, which is for use with PARS mail.

16. I did not, in any way, mislead Rep. Castro that any disassembled machines were currently operational.

17. At the local labor union's request, its representative, Mr. Barrios, accompanied the tour that I provided to Rep. Castro as an observer (which is uncommon on plant tours). As a member of Congress, Rep. Castro was certainly able to speak to Mr. Barrios about any topic he wished; and Mr. Barrios, as a constituent, was able to seek a meeting with Rep. Castro. I did not issue to Mr. Barrios a "gag order", I asked Mr. Barrios to set up a meeting with the congressman at another time as we had a short window for the tour based on the congressman's schedule.

18. I did not "hide" delayed mail in advance of Rep. Castro's visit by sending it to Austin. As noted above, the Plant had delayed PARS and manual mail from July 2020, due to staffing shortages, which I discussed with Rep. Castro. Prior to Rep. Castro's visit, we started to work this manual PARS mail, which requires time-consuming processing. I asked the P&DC in Austin, Texas, for assistance with this mail. Seeking, and providing,

this type of assistance between Plants is a routine, regularly occurring event. The San Antonio Plant has transferred PARS mail to the Austin plant routinely in the past; and the San Antonio Plant routinely handles delayed mail that we receive from other plants that seek our help. This delayed PARS and manual mail issue has since been resolved.

19. The San Antonio P&DC has, for many years, followed what I understand to be standard Postal Service protocols to process election mail. The Plant has not changed this protocol during the last two elections, and continues to follow this standard protocol today. According to what I understand to be standard USPS practices, Plant personnel work diligently to prioritize, process and delivery of election mail to election officials, up to and including the night of elections. Plant management has not given (or been given) any instruction to duplicate processing of election mail, or otherwise process it in an inefficient manner.

20. During the last two elections (a county-wide election, and "Super Tuesday"), I am not aware of any complaints related to the processing of election mail. I certainly did not receive complaints that election mail was left on the plant floor, undelivered, nor that the plant misprocessed election mail, nor am I aware of any other evidence that these things happened.

21. Based on my knowledge of our machines' processing capacity, even accounting for a possible substantial spike, the San Antonio P&DC has ample capacity to handle anticipated election mail in the upcoming election based upon projected letter mail volumes.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed in San Antonio, Texas, on this \_\_8\_\_ day of September, 2020

_____
Dennis W. Stasa