UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mondaire Jones, et al., *individually, and on behalf of all others similarly situated,*<br>                     Plaintiffs,<br>v.<br>United States Postal Service, et al.,<br>                     Defendants. | Docket No. 20-cv-6516-VM<br><br>**REPLY DECLARATION OF JOSE CARLOS BARRIOS** |

COUNTY OF BEXAR        )
                                            ) ss.:
STATE OF TEXAS         )

I, JOSE CARLOS BARRIOS, being duly sworn, depose and say:

1. I have reviewed the declaration of Dennis Stasa (ECF No. 26), and I make this declaration to respond to several assertions therein.

2. Mr. Stasa states that prior to my written declaration I had not raised concerns to him about the delays. This is literally true, but misleading.

3. I have repeatedly raised the concerns highlighted in my initial declaration exactly as I understand I am supposed to: I followed the chain of command and reached out to the MDO Ellen Reynolds and the Senior MDO Kim Calderon.

4. My understanding is that I am *not* supposed to just walk up and speak with Mr. Stasa on a daily basis. At times I have had to set an appointment to see him or in some instances, I have just texted him.

5. However, in all cases, I followed up on these concerns highlighted in my declaration with supervisors that report to him and thus those supervisors should have provided him the Union's issues we had with the mail.

1

6. The fact that Mr. Stasa was apparently unaware of concerns raised with supervisors is very worrying to me, and suggests Mr. Stasa is not generally aware of issues in our plant.

7. I do agree with Mr. Stasa that the Delivery Barcode Sorters (DBCS) read barcoded mail pieces and sort them. And I agree that the decision to remove certain machines is above his pay grade and these decisions come from Washington. And he is correct that the mail volume has been declining for several years.

8. The problem is that not having the extra machines in place would only hamper us with an ability to assist when emergencies do occur.

9. For example, last year the Houston Plant suffered some structural damages to their building and consequently we were prepared as a Plant to assist them along with 6 other sites to process their mail. Not having these machines will only amplify issues if we ever get to that point again.

10. Mr. Stasa is correct that the machines that were removed have been cannibalized and parts used in other cities as well as our Plant.

11. The major issue is that Mr. Stasa told me on 8/19/2020 that the process of eliminating machines has been put on hold and that the machines that were disassembled would not be reassembled. This means that if we ever get another storm that hits another city, for example (as happened last year) we will simply not have the means to process both our plant's mail and support the other plant without massive delays. This feels like having our feet cut out from under us.

12. Mr. Stasa states he shared with Rep. Castro that the delays of PARS mail was not related to the removing of DBCS machines, and I agree with him.

However, he does not explain why mail had been delayed for months, why it only was sent to Austin *just* before Rep. Castro visited, or why delays continue to pile up.

13. One full-time career employee stated to me that delays in the manual section have occurred for months, and she has herself addressed this issue to MDO Reynolds and her immediate supervisor. Yet, nothing has been done and, beyond that, Mr. Stasa seems to claim he is unaware of these issues and delay.

14. I disagree with Mr. Stasa's characterization about what I described as a "gag order." To clarify what I meant, it is my view that his direct instructions to me amounted to a gag order (not that he literally used the term). His instructions were that, "due to the Hatch Act," I wouldn't be able to speak with the Congressman at all. I believe that Mr. Stasa was very much wrong on this – and I didn't believe I needed to dialogue with him on this matter – because I was not going to engage in any political discussions with Rep. Castro.

15. Prior to the visit from Rep. Castro, a supervisor, Francisco Garcia, informed mail-handler Todd Mumford to go to the manual section and report to Kim Calderon. Calderon and Jack Lapp both were in the manual section that morning placing placards, and directed Mumford to take the delayed mail to the North Dock, to be sent to Austin, TX to process.

16. Records of this should exist in the scan information from the OIG in San Antonio.

17. It is – of course – ordinary that some mail in San Antonio gets transferred (PARS mail) to Austin. However, having delayed mail for months, that has sat for weeks on the mail floor shuffled to Austin to hide it makes no sense at all.

18. Finally, I find it somewhat shocking that Mr. Stasa claims to be unaware of "any complaints related to the processing of election mail" and I also find his statement "I certainly did not receive complaints that election mail was left on the plant floor, undelivered, nor that the plant misprocessed election mail, nor am I aware of any other evidence that these things happened," surprising.

19. As I said in my initial declaration, there was a substantial problem in the March primary. Everybody working on the mail floor around that election was aware things went wrong. The people who work in the manual section, as well as all the supervisors, all know of these issues.

20. To describe that problem a little more in depth, the biggest issue is that there was no real sense of urgency until the day before election day. Every year, during the Christmas rush, for example, we do serious manual sorting to separate red and green letters (because of the colors). Similarly, during election season, we treat political and election mail as the primary mail, and we typically engage in extraordinary efforts to sort election mail.

21. This year, however, rather than engaging in the ordinary urgency, the urgency only began the day before the election. While we would ordinarily do significant manual sorting in all of the weeks leading up to the election – and mail clerks would on their own initiative pull election mail out from the ordinary mail stream, this year, management told us not to take any of that kind of initiative. In fact, they told those clerks doing it to stop.

22. Thus, ultimately, while we made significant efforts in the last two days of the election, there was simply some significant volume of election mail – perhaps

somewhere between two or three trays (each of which would hold about 400 ballots) – that slipped through the cracks and did not get delivered in time.

23. With the changes in processing and management I've seen since March, I anticipate the problem will be worse in November.

24. Given Mr. Stasa's claim he is unaware of the issues that arose in March, I question whether his other claims about the state of our Plant are accurate.

**[SIGNATURE ON FOLLOWING PAGE]**

As permitted in 28 U.S.C § 1746, I, Jose Carlos Barrios, declare that, under penalty of perjury that the foregoing is true and correct.

Executed On: September 10, 2020

_____
Jose Carlos Barrios