

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

September 25, 2020

**VIA ECF**

Hon. Victor Marrero, United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    *Jones* et al. *v. United States Postal Service* et al., No. 20 Civ. 6516 (VM)

Dear Judge Marrero:

    This Office represents the defendants in the above-referenced case. We write respectfully pursuant to the Court's September 25, 2020 Order, ECF No. 57 (the "Order"), reflecting its Decision and Order dated September 21, 2020 (ECF No. 49), and the parties' agreed proposed order filed earlier today (ECF No. 54-1).[1] In accordance with the Order, Defendants submit herewith:

(1) A "cost estimate for treating all Election Mail as First-Class Mail beginning on October 15, 2020" (Order ¶ 2; set forth below);

(2) A "list of all USPS recommended practices concerning the treatment of Election Mail that are not binding policies" (Order ¶ 5; set forth below); and

(3) The weekly service performance update provided by the United States Postal Service ("USPS") to Congress on September 24, 2020 (pertaining to First-Class Mail, Marketing Mail, and Periodicals), as well as a USPS press release issued on September 24, 2020, discussing that update (*see* Exhibits 1 and 2, attached hereto); a report reflecting the weekly national scores and service variance for Presort First-Class Mail (Overnight, 2-Day and 3-5 Day) and Single-Piece First-Class Mail (2-Day and 3-5 Day), for the same period of time covered by the September 24, 2020 Congressional update[2] (attached hereto as Exhibit 3) (Order ¶¶ 6(a)-(b) & n.1). As

---

[1] The information contained in this letter has been provided to this Office by the United States Postal Service, to be provided to the Court to comply with Defendants' obligations under the Order.

[2] The first column in each category shows the overall service standard score; the Percent within +1 day, +2 day, and +3 day columns show how those scores perform one day later, two days later, and three days later (service variance). Please note that by including service variance data, USPS is in full compliance with paragraph 6(b) of the Order.

reflected in the Order, the parties have agreed that on September 25, 2020, USPS need not provide the variance reports described in Paragraph 6(b), nor the information described in Paragraph 6(c), of the Order.  *See* Order ¶ 6 n.1.  The parties have also agreed that moving forward, USPS will provide the Court and Plaintiffs with the information described in paragraphs 6(a)-(c) of the Order every Friday.  *See id.* ¶ 6.

Last, pursuant to the Court's instruction to Defendants to respond by letter to Plaintiffs' filing of a Proposed Second Amended Complaint (ECF No. 53), Defendants state that they do not object to the filing of that amended pleading.

***

### *Cost Estimate for Treating All Election Mail as First-Class Mail Beginning on October 15, 2020*

As an initial matter, as set forth in the Order, and as also reflected in the Clarifying Operational Instructions issued by USPS on September 21, 2020 ("September 21 USPS Instructions," attached hereto as Exhibit 4), and in the September 25, 2020 USPS Memorandum titled "Additional Resources for Election Mail Beginning October 1" ("USPS Additional Resources Memo," attached hereto as Exhibit 5), USPS has already committed to treat Election Mail (regardless of the paid class) as First-Class Mail in numerous significant (and expanded) respects, for the upcoming November 2020 Election.[3]  Specifically, USPS will prioritize identifiable Election Mail that is entered as Marketing Mail, regardless of the paid class, including advancing Election Mail entered as Marketing Mail ahead of all other Marketing Mail and processing it expeditiously to the extent feasible so that it is generally delivered in line with the First-Class Mail delivery standards; expanding processing windows on letter and flat sorting equipment to ensure that all Election Mail received prior to the First-Class Mail Critical Entry Time[4] is processed that same day; and prioritizing Election Mail, including ballots entered with Green Tag 191, when loading trucks.  *See* PI Order ¶ 1; September 21 USPS Instructions at 4; USPS Additional Resources Memo at 1.  Furthermore, beginning October 1, 2020, and continuing through the November election season, "to the extent possible," USPS will process and advance "Election Mail received after the Critical Entry Time . . . as if it arrived prior to the Critical Entry Time, unless doing so would disrupt on-time service for Election Mail received

---

[3] As set forth in the Order, that Order's terms do not require USPS to change its policies that generally do not include the transportation of Election Mail entered as Marketing Mail by air; or to extend other features of First-Class Mail, distinct from delivery speed, to Election Mail entered as Marketing Mail.  *See* Order ¶ 1(b).

[4] The Critical Entry Time for destinating mail (meaning mail that is ready to be transmitted to delivery units) is the time by which mail needs to be received at a center, either from a customer or another USPS facility, to be treated as arriving that day for processing at the center.  For First-Class Mail, the Critical Entry Time is 8:00 AM.  First-Class Mail received by that Critical Entry Time at the correct destinating facility is processed that day and transported to delivery units for delivery by letter carriers the next day.

prior to the Critical Entry Time." USPS Additional Resources Memo at 1.[5]

Pursuant to the Court's Order, however, USPS provided the following cost estimates to this Office, to be provided to the Court and Plaintiffs. USPS notes that there are two plausible ways to estimate the burden imposed on USPS by providing First-Class Mail service to Election Mail entered at Marketing Mail rates. The "revenue forgone" method and the "additional cost" method are described in turn below.

Both methods rely on internal projections that USPS will deliver just under 140 million pieces of Election Mail entered as Marketing Mail from October 15 through November 3, 2020. Both methods take account of the amount of each of the different types of election volume entered. This "mail mix" is important because different shapes of mail incur different costs and pay different rates, and rates are also different for Election Mail entered at nonprofit rates versus commercial rates. The specific "mail mix" assumptions are represented in the attached spreadsheet (Exhibit 6).

The "revenue forgone" method estimates how much revenue USPS would lose by only charging Election Mail Marketing Mail rates, compared with the First-Class Mail rates that would be charged to any other mailer provided First-Class Mail service. All types of mail (*i.e.*, both Marketing Mail and First-Class Mail) are intended not only to cover their direct costs, but also to generate additional revenue to help cover the institutional costs that USPS incurs to operate its delivery network and maintain universal service. Mailers who choose First-Class Mail service over Marketing Mail service are required to pay a higher share of institutional costs than those who are satisfied with Marketing Mail service. Therefore, the "revenue forgone" method calculates the difference between the price charged a piece of Marketing Mail versus the price charged for a comparable piece of First-Class Mail, multiplies that unit revenue difference by the expected volume of that type of election mail, and sums these lost revenue amounts over all types of election mail to derive a total estimate of "revenue forgone." As shown on Exhibit 6, that amount is approximately $69.4 Million. This method reflects the potential financial harm to USPS of affording First-Class Mail service to Election Mail entered at Marketing Mail rates.

The "additional cost" method relies on the direct cost outlay for the resources specifically consumed to upgrade election mail entered at Marketing Mail rates to First-Class Mail service. Unlike the "revenue forgone" method, this method does not take into account contribution to institutional costs. Using the same types of mail and the same expected volumes used in the "revenue forgone" estimate, this method calculates the difference between the direct cost of each type of Marketing Mail versus the corresponding piece of First-Class Mail, multiplies that unit cost difference by the expected volume of that type of election mail, and sums these additional expense amounts over all types of election mail to derive a total estimate of "additional costs." As shown on Exhibit 6, that amount is approximately $39.1 million.

---

[5] As detailed further below in the discussion of USPS recommended practices and policies concerning the treatment of Election Mail, USPS will also employ extraordinary ballot acceleration measures between October 26 and November 24, 2020 (*see, e.g.*, USPS Additional Resources Memo at 2), but those measures do not relate directly to this discussion of the costs associated with applying First-Class Mail delivery standards to all Election Mail.

USPS notes that these are high level estimates based on the data currently available. USPS does not have separate cost data for Election Mail at this time, so the inputs are based on the publicly available data for First-Class Mail and Marketing Mail products generally as a reasonable proxy.

***

### *List of USPS Recommended Practices Concerning the Treatment of Election Mail*

Except as listed herein, many of the Headquarters recommended practices vis-à-vis the collection, processing, distribution, and delivery of Election Mail have been reduced to writing and are now considered USPS policies.

Election Mail practices or resources that are not necessarily covered in written policies include:

- During the upcoming election cycle, the USPS Election Mail Taskforce was expanded to include leadership of all four of the major unions of USPS, as well as the leaders of our management associations, to provide strong coordination throughout USPS with regard to Election Mail.

- On August 21, 2020, the USPS Board of Governors established a bipartisan Election Mail Committee to actively oversee USPS's processes in support of mail-in voting.

- In connection with the November 2020 Election, USPS will utilize ballot monitors in each mail processing facility who are familiar with processing operations and the procedures that should be followed for cancelling, or postmarking, ballots, in order to facilitate the policy that as many ballots being returned by voters as possible are cancelled.

- In connection with the November 2020 Election, USPS has established a Postmark Team to identify and correct potential process deficiencies and has increased its employee training efforts.

- During the election cycles, USPS assigns experienced and qualified personnel to serve in temporary positions as Election Mail Coordinators. Many districts also have members of their staff provide part-time coordinator support.

### *List of USPS Written Policies Relating to the Treatment of Election Mail Through the November 2020 Election Season*

Although not strictly responsive to the Court's request for (and Defendants' agreement to provide) a list of "all USPS recommended practices concerning the treatment of Election Mail that are not binding policies," for the Court's awareness, USPS has issued new written policies that formalize what were previously recommended unwritten or informal practices. The USPS

provides the below list of written policies governing Election Mail through the November 2020 Election. These policies are set forth in the September 21 USPS Instructions and the USPS Additional Resources Memo, attached as Exhibits 4 and 5 hereto, as well as in other USPS documentation.

- USPS will prioritize Election Mail that is entered as Marketing Mail regardless of the paid class. Election Mail entered as Marketing Mail should be advanced ahead of all other Marketing Mail and processed expeditiously to the extent feasible so that it is generally delivered in line with the First-Class Mail delivery standards. To the extent necessary, USPS will expand processing windows on letter and flat sorting equipment to ensure that all Election Mail received prior to the First-Class Mail Critical Entry Time is processed that same day. To the extent possible, Election Mail received after the Critical Entry Time should be processed and advanced as if it arrived prior to the Critical Entry Time, unless doing so would disrupt on-time service for Election Mail received prior to the Critical Entry Time. USPS will also prioritize Election Mail, including ballots entered with Green Tag 191, when loading trucks.

- To further support the timely delivery of Election Mail, and consistent with USPS's practices in past election cycles, the use of extraordinary measures beyond USPS's normal course of operations is authorized and expected to be executed by local management between October 25 and November 24, 2020, to accelerate the delivery of ballots, when USPS is able to identify the mailpiece as a ballot. These extraordinary measures include, but are not limited to, expedited handling, extra deliveries, and special pickups as used in past elections, to connect blank ballots entered by election officials to voters or completed ballots returned by voters entered close to or on Election Day to their intended destination (*e.g.*, Priority Mail Express, Sunday deliveries, special deliveries, running collected ballots to Boards of Elections on Election Day, etc.).

- District Managers, Postmasters, Division Directors, and Plant Managers are authorized and instructed to use additional resources committed by USPS, effective October 1, 2020 (as described in the USPS Additional Resources Memo), to ensure that all Election Mail is prioritized and delivered on time.

- USPS uses standardized log sheets to track Election Mail through processing.

- USPS will conduct daily "all clears" to ensure that all Election Mail is accounted for in the system and mail scheduled or "committed" to go out is processed accordingly.

- The USPS uses its official Election Mail log, Green Tag 191 (which can be used only for ballots being sent to voters), and the "Election Mail" box on postage statement forms to assist its employees in recognizing and prioritizing election mail.

- It is USPS policy to "cancel" or "postmark" all identifiable ballots returned by voters, regardless of the method of payment of postage used. For the November 2020 Election Season, among other additional processing resources also authorized and instructed to be used to ensure that Election Mail stays current and moving through USPS's network,

    USPS shall conduct early cancellations the week before Election Day to ensure all collected ballots are processed timely.

- Extra delivery and collection trips are authorized and instructed to be used to ensure, to the best of USPS's ability, that completed ballots entered on Election Day reach the appropriate election official by the state's designated deadline on Election Day. This includes, but is not limited to, early collections the week before Election Day to ensure all collected ballots are processed timely, and delivery of ballots found in collections on Election Day to election boards within states requiring ballots be returned by a designated time on Election Day.

- Extra transportation resources are authorized and instructed to be used to ensure that Election Mail reaches its intended destination in a timely manner. This includes, but is not limited to, extra trips from all points of processing and delivery (*e.g.*, retail units and plants), as necessary to connect Election Mail to its intended destination or the next stage in USPS processing.

- Use of overtime necessary to expeditiously move Election Mail should be approved. With respect to the additional resources discussed in the USPS Additional Resources Memo, overtime is authorized and instructed to be used to support these additional resources and the completion of the additional work, as needed.

***

        Respectfully,

        AUDREY STRAUSS
        Acting United States Attorney for the
        Southern District of New York
        *Attorney for Defendants*

By:  /s/ Rebecca S. Tinio_____
        REBECCA S. TINIO
        STEVEN J. KOCHEVAR
        Assistant United States Attorneys
        86 Chambers Street, Third Floor
        New York, New York 10007
        Tel.: (212) 637-2774/2715
        E-mail: rebecca.tinio@usdoj.gov
                steven.kochevar@usdoj.gov