UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MONDAIRE JONES, *et al.*,

Plaintiffs,

\- against -

UNITED STATES POSTAL SERVICE, *et al.*,

Defendants.

No. 20 Civ. 6516 (VM)

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
CLARIFICATION OR MODIFICATION OR, IN THE ALTERNATIVE, TO STAY**

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
Attorney for the United States
86 Chambers Street, Third Floor
New York, New York 10007
Tel:     (212) 637-2774/2715
*Attorney for Defendants*

Rebecca S. Tinio
Steven J. Kochevar
*Assistant United States Attorneys*
        – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................1

    I.      RECENT GUIDANCE ISSUED BY THE UNITED STATES POSTAL
           SERVICE...........................................................................................................1

    II.     THE PRESENT CASE AND MOTION..............................................................3

ARGUMENT ..............................................................................................................................4

    I.      THE COURT SHOULD CLARIFY PARAGRAPHS 3 AND 7(F) OF
           THE ORDER OR, TO THE EXTENT NECESSARY, MODIFY THEM. ............4

    A.     Legal Standards..................................................................................................4

    B.     The Court Should Clarify Paragraphs 3 and 7(f) of the Order. ..............................5

    C.     To the Extent the Court Determines That the Above Requests Seek Relief
           That Extends Beyond Clarification, the Court Should Modify the Order
           Because Extraordinary Circumstances Exist and the Order May Cause
           Extreme and Undue Hardships. ...........................................................................8

    II.     IN THE ALTERNATIVE, THE COURT SHOULD EXTEND THE
           STAY OF PARAGRAPHS 3 AND 7(F) OF THE ORDER, PENDING A
           DETERMINATION BY THE OFFICE OF THE SOLICITOR GENERAL
           OF WHETHER TO FILE AN APPEAL. ...............................................................9

    A.     Legal Standards..................................................................................................9

    B.     If It Does Not Clarify or Modify Them, the Court Should Extend the Stay
           of Paragraphs 3 and 7(f) of the Order ...................................................................9

## TABLE OF AUTHORITIES

Page(s)

Cases

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ............................................................................... 10, 11
*In re World Trade Ctr. Disaster Site Litig.*,
   503 F.3d 167 (2d Cir. 2007) ................................................................................ 9
*LaRouche v. Kezer*,
   20 F.3d 68 (2d Cir. 1994) .................................................................................... 9
*Matter of Emergency Beacon Corp.*,
   666 F.2d 754 (2d Cir. 1981) ................................................................................ 5
*N.A. Sales Co., Inc. v. Chapman Indus. Corp.*,
   736 F.2d 854 (2d Cir. 1984) ............................................................................ 4, 5
*Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*,
   25 F. Supp. 2d 372 (S.D.N.Y. 1998) .................................................................... 5
*Regal Knitwear Co. v. NLRB*,
   324 U.S. 9 (1945) ................................................................................................ 5

Rules

Fed. R. Civ. P. 60(b) ................................................................................................ 5
Fed. R. Civ. P. 65(d)(1) ............................................................................................ 4

**PRELIMINARY STATEMENT**

The United States Postal Service (the "Postal Service") is committed to timely delivering

the nation's Election Mail, and to complying with the Court's directives and intent as set forth in

its recent decision on plaintiffs' motion for a preliminary injunction. As described further herein,

the Postal Service has already taken numerous steps to do so. The present motion arises from

considerations of how best to accomplish these aims while avoiding the unintended consequence

of abruptly and fundamentally altering the Postal Service's operations in a way that could

ultimately hinder its delivery of the mail. Specifically, absent clarification or modification,

Paragraphs 3 and 7(f) of the Court's September 25, 2020 Order, ECF No. 57, (the "Order") could

be construed in ways that require the approval of overtime unrelated to Election Mail, impose

impracticable administrative and financial burdens on the Postal Service, and create confusion

amongst its employees and managers. Accordingly, the Government seeks clarification or, if

necessary, modification of Paragraphs 3 and 7(f) of the Order or, in the alternative, an extension

of the stay of these provisions, pending a determination by the Office of the Solicitor General on

a possible appeal.

**BACKGROUND**

I.  **Recent Guidance Issued by the United States Postal Service**

On September 17, 2020, the United States District Court for the Eastern District of

Washington entered a preliminary injunction in a case similarly challenging certain policies and

practices of the Postal Service. That court directed the Postal Service to take certain operational

steps, some of which overlap in part with this Court's PI Decision. See Order Granting Plaintiffs'

Motion for Preliminary Injunction, *Washington v. Trump*, No. 20-cv-3127 (SAB) (E.D. Wash.),

ECF No. 81. The Postal Service has taken steps to comply with this preliminary injunction,

including by distributing on September 21, 2020, guidance entitled "Clarifying Operations

1

Instructions" to its managerial staff. *See* Declaration of Steven J. Kochevar ¶ 1; Ex. A (the

"Instructions").

Among other things, the Instructions (1) emphasize that the Postal Service's "number one

priority . . . between now and Election Day is the secure and on-time delivery of the nation's

election mail"; (2) memorialize the Postal Service's commitment to, effective October 1, 2020,

and continuing through the November 2020 Election, "make additional resources available in all

areas of operations, including collection, processing, . . . additional staffing, additional

transportation, and expanded mail processing windows and delivery trips, among others," in

order "to satisfy increased demand and unforeseen circumstances" associated with the processing

and delivery of Election Mail; (3) note that "[f]urther guidance on use of additional resources [to

facilitate the handling and timely delivery of Election Mail] will be provided separately"; and (4)

endeavor "[t]o address any misinformation and clear up any confusion about the status of the

Postal Service's practices concerning Overtime, Hiring, Retail Hours, Collection Boxes, Late

and Extra Trips, Mail Processing, and Election Mail." Instructions at 1.

On September 24, 2020, the Postal Service issued a Stand Up Talk entitled "Ready to

Deliver Election Mail for the Nation" to be provided to all employees, reinforcing the messages

from the Instructions. *See* Declaration of Steven J. Kochevar ¶ 2; Ex. B (the "SUT"). Because the

SUT is to be given to all employees, including non-managerial employees, its language is more

streamlined and direct than the Instructions.

On September 25, 2020, the Postal Service distributed a memorandum entitled "Additional

Resources for Election Mail Beginning October 1" to its managerial staff. *See* Declaration of

Steven J. Kochevar ¶ 3; Ex. C (the "Additional Resources Memo"). Among other things, the

Additional Resources Memo instructs and authorizes District Managers, Postmasters, Division

2

Directors, and Plant Managers to use the following additional resources to "ensure that all

Election Mail is prioritized and delivered on time":  (1) expanded processing windows to

advance Election Mail entered as Marketing Mail "expeditiously to the extent feasible so that it

is generally delivered in line with First-Class Mail delivery standards"; (2) extra transportation

"to ensure that Election Mail reaches its intended destination in a timely manner"; and (3) extra

delivery and collection trips "to ensure, to the best of our ability, that completed ballots entered

on Election Day reach the appropriate election official by the state's designated deadline on

Election Day." Additional Resources Memo at 1-2. The Additional Resources Memo also states

that "[o]vertime is authorized and instructed to be used to support these additional resources and

the completion of additional work, as needed." *Id.* at 2. The Additional Resources Memo further

provides that "the use of extraordinary measures beyond our normal course of operations is

authorized and expected to be executed by local management between October 26 and

November 24, to accelerate the delivery of ballots, when the Postal Service is able to identify the

mailpiece as a ballot." *Id.*  at 2. And the Additional Resources Memo provides examples of such

extraordinary measures, including, but not limited to, "expedited handling, extra deliveries, and

special pickups as used in past elections, to connect blank ballots entered by election officials to

voters or completed ballots returned by voters entered close to or on Election Day to their

intended destinations (e.g., Priority Mail Express, Sunday deliveries, special deliveries, running

collected ballots to Board of Elections on Election Day, etc.)." *Id.*

## II.  The Present Case and Motion

On September 21, 2020, this Court granted in part plaintiffs' motion for a preliminary

injunction, directed the parties to confer and to settle an order by no later than noon on

September 25, 2020, providing plaintiffs with appropriate relief, and laid out terms that would

take effect in the event the parties were unable to settle such an order. *See* Decision and Order,

ECF No. 49 (the "PI Decision"), at 83. The parties made substantial progress towards settling an

order and yesterday submitted to the Court the provisions on which they reached agreement.

Following the parties' submission yesterday of their proposed relief, the Court entered the Order,

adopting the parties' proposed relief. The Postal Service has been making diligent efforts to

comply with the Order and the overall intent of the PI Decision, including by providing

yesterday to the Court and Plaintiffs the information required by Paragraphs 2, 5, 6(a), and 6(b)

of the Order. *See* Letter dated September 25, 2020, ECF No. 58.

The parties failed to reach agreement on appropriate terms to implement the substance

pertaining to overtime set out in Paragraph 3 of the PI Decision, and the related Paragraph 7(f) of

the PI Decision incorporating the substance of Paragraph 3 into the guidance to be issued by the

Postal Service. The Order incorporated Paragraphs 3 and 7(f) from the PI Decision, but stayed

these provisions pending resolution of the present motion. *See* Order ¶¶ 3, 7(f), 10. As

contemplated by the Order, the Government presently moves for clarification of Paragraphs 3

and 7(f) of the Order (and PI Decision) or relief from these provisions through their

modification, to the extent necessary. In the alternative, the Government requests that the Court

extend the stay of Paragraphs 3 and 7(f) currently in effect, pending a determination by the

Office of the Solicitor General of whether to appeal from the PI Decision.

## ARGUMENT

### I.   THE COURT SHOULD CLARIFY PARAGRAPHS 3 AND 7(f) OF THE ORDER OR, TO THE EXTENT NECESSARY, MODIFY THEM.

#### A.   Legal Standards

A district court has discretion to clarify the scope of an injunction, which must "state

its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or

required." Fed. R. Civ. P. 65(d)(1); *see N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736

F.2d 854, 858 (2d Cir. 1984); *Paramount Pictures Corp. v. Carol Publ'g Group, Inc.*, 25 F.

Supp. 2d 372, 374 (S.D.N.Y. 1998) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15

(1945)). By clarifying the scope of a previously issued injunction, a court "add[s] certainty to

an implicated party's effort to comply with the order and provide[s] fair warning as to what

future conduct may be found contemptuous." *N.A. Sales*, 736 F.2d at 858.

   The Government views its present request as seeking clarification—in other words,

the Government wishes to make sure that its ongoing efforts to comply with the Order are

adequate and that its reading of the Order is correct.  However and in the alternative, to the

extent the Court believes this application's requested clarifications would constitute

modification, rather than clarification, of the injunction, the Government also moves for

relief from the Order pursuant to Fed. R. Civ. P. 60(b). Under Rule 60(b)(6), a district court

may "relieve a party from . . . a[n] . . . order . . . for . . . any . . . reason that justifies relief."

Rule 60(b)(6)  is "properly invoked when there are extraordinary circumstances . . . or where

the judgment may work an extreme and undue hardship . . . ." *Matter of Emergency Beacon*

*Corp.*, 666 F.2d 754, 759 (2d Cir. 1981) (citations omitted).

   **B.    The Court Should Clarify Paragraphs 3 and 7(f) of the Order.**

   Paragraph 3 of the Order currently states that "USPS shall pre-approve all overtime

that has been or will be requested for the time period beginning October 26, 2020 and

continuing through November 6, 2020." Order ¶ 3. Paragraph 7(f) of the Order requires the

Government to include an explanation of this language in guidance to be issued by the Postal

Service. *See id.* ¶ 7(f).

   The Government requests that Paragraph 3 be clarified as requiring the following:

"Overtime is authorized and instructed to be used to facilitate the timely delivery of Election

Mail, consistent with the September 21 USPS Instructions and the September 25 Additional Resources Memorandum."

The Government also requests that Paragraph 7(f) be clarified as requiring the following: "Explain that overtime is authorized and instructed to be used as described in Paragraph 3 of this Order."

The Government reads Paragraph 3 of the Order as primarily intending to ensure that there is no uncertainty among Postal Service employees that any overtime needed to facilitate the expeditious delivery of Election Mail may, and indeed should, be used and approved. The Postal Service shares that intent, as reflected in, for example, the recent guidance it has issued. *See* Instructions at 1, SUT at 1, Additional Resources Memo at 2. The requested clarifications are necessary because, if broadly read, the PI Decision may be interpreted as requiring the Postal Service to pre-approve (or communicate the pre-approval of) unlimited amounts of overtime for all employees who ask for overtime, regardless of the nature of their work, its connection to the delivery of Election Mail, or the reasonableness of the requested overtime. Specifically, the PI Decision could be read to require the Postal Service to pre-approve any amount of overtime for any employee from October 26, 2020, through November 6, 2020, even if that employee's role or overtime request has no bearing on the delivery of Election Mail, and even in the instance that the overtime request is facially inappropriate or unreasonable. The Postal Service employs more than 630,000 employees. *See* Declaration of Rebecca S. Tinio ¶ 3 & Ex. 1 (United States Postal Service FY2019 Annual Report to Congress) at 2, ECF No. 24-1. Without clarification, the PI Decision could be construed to require the pre-approval of overtime on a scale that could be financially disastrous and create confusion and impracticable administrative problems within the Postal

6

Service—and that would include overtime that has no particular connection to the issues of this case (specifically, Election Mail). *See* Declaration of David E. Mills (the "Mills Declaration") ¶¶ 4, 9-12. The Government's proposed clarification addresses these concerns while attempting to capture the primary intent of the Court's direction by ensuring overtime is authorized and instructed to be used to support the delivery of Election Mail.

One particular reason the requested clarification is necessary is that Paragraphs 3 and 7(f) appear to contemplate that Postal Service employees would request overtime, or is at least unclear in that respect. However, in practice, "employees of the Postal Service do not request overtime, but are scheduled for it by local management in line with collectively bargained principles and business needs." *Id.* ¶ 4. Local Postal Service supervisors and managers "make real-time decisions about overtime needs and use, usually as operations on a given tour of duty begin, based on" a variety of local factors, such as the weather. *Id.* ¶ 11. Thus, implementing Paragraphs 3 and 7(f) of the Order as currently written would involve large-scale and fundamental changes in how overtime is administered within the Postal Service, including the fact that "pre-approval" may be read as overriding the "real-time" nature of overtime decision-making that is part of the Postal Service's operations. *See id.* ¶¶ 4, 11. Implementing such changes in the next month "would be impracticable and would likely lead to widespread confusion among employees and management officials." *Id.* ¶ 4.

As described in greater detail in the Mills Declaration, Paragraphs 3 and 7(f) of the Order, as currently written and without clarification, also implicate labor law issues arising from the Postal Service's collective bargaining agreements ("CBAs") reached with Postal Service employee labor unions. *See id.* ¶¶ 4-10. Specifically, these CBAs "define specific entitlements to operationally-necessary overtime . . . assigned to employees according to

mandatory collectively bargained processes," which Paragraphs 3 and 7(f) of the Order do

not take into account. *Id.* ¶¶ 5-6. As such, implementing Paragraphs 3 and 7(f) of the Order as

currently written could expose the Postal Service to liability both within its internal

grievance-arbitration process and possibly under the National Labor Relations Act

("NLRA"). *See id.* ¶ 6. In addition, for employees represented by the National Association of

Letter Carriers, "equalization" provisions of the relevant CBA could also expose the Postal

Service to additional severe financial liabilities. *See id.* ¶ 10. The clarifications proposed by

the Government will allow local managers to continue to abide by applicable labor laws

while also complying with the Additional Resources Memo which *authorizes and instructs*

them to use overtime to accomplish the expeditious delivery of Election Mail.

> C. **To the Extent the Court Determines That the Above Requests Seek Relief That Extends Beyond Clarification, the Court Should Modify the Order Because Extraordinary Circumstances Exist and the Order May Cause Extreme and Undue Hardships.**

The Government understands its requests detailed above to call for clarification of

Paragraphs 3 and 7(f), rather than their modification. However, to the extent the Court concludes

that the Government's requests go beyond clarification, the Government respectfully requests

that the Court modify the Order pursuant to Rule 60(b)(6). The "extraordinary circumstances"

and possibility of "extreme and undue hardships" necessary to invoke Rule 60(b)(6) exist here.

The extraordinary circumstance is that a national election is less than six weeks away, with

voting already underway in some states. Paragraphs 3 and 7(f) of the Order bear directly on the

Postal Service's operations and have the potential to create substantial confusion during this

critical time. That alone is sufficient for the Court to exercise its discretion under Rule 60(b)(6).

In addition to this extraordinary circumstance, as explained in the foregoing section,

Paragraphs 3 and 7(f) of the Order as currently written could be construed to impose

impracticable administrative burdens on the Postal Service by requiring it to fundamentally

change how it administers overtime in a very short timeframe and potentially to expose the

Postal Service to financially disastrous liabilities, without any required nexus to the timely

delivery of Election Mail. Accordingly, to the extent the Court views the Government's

proposals as going beyond clarification of Paragraphs 3 and 7(f), the Government respectfully

requests that the Court modify Paragraphs 3 and 7(f) to avoid imposing such extreme and undue

hardships on the Postal Service.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD EXTEND THE STAY OF PARAGRAPHS 3 AND 7(F) OF THE ORDER, PENDING A DETERMINATION BY THE OFFICE OF THE SOLICITOR GENERAL OF WHETHER TO FILE AN APPEAL.

### A.  Legal Standards

Courts consider four factors when determining whether to grant a stay: "(1) whether the

stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether

the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public

interest lies." *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007)

(footnote omitted). "[T]he degree to which a factor must be present varies with the strength of

the other factors"; "more of one factor excuses less of the other." *Id.* (quotation marks and

brackets omitted). Moreover, "when a serious legal question is involved," the "movant need only

present a substantial case on the merits . . . and show that the balance of the equities weighs

heavily in favor of granting the stay." *LaRouche v. Kezer*, 20 F.3d 68, 72-73 (2d Cir. 1994).

### B.  If It Does Not Clarify or Modify Them, the Court Should Extend the Stay of Paragraphs 3 and 7(f) of the Order

If the Court does not clarify or modify the Order as requested in the foregoing

sections, the Government, in the alternative, requests that the Court extend the stay of

Paragraphs 3 and 7(f) of the Order, pending a determination by the Solicitor General of

whether to file an appeal before the Second Circuit.

Each of the stay factors weigh in favor of extending the stay with respect to

Paragraphs 3 and 7(f) of the PI Decision, as these provisions are currently written. First, the

Government has made a strong showing that it is likely to succeed on the merits of any

appellate proceedings on these provisions. In its briefing opposing plaintiffs' preliminary

injunction motion, the Government argued that "[a] plaintiff's remedy must be tailored to

redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018); *see*

*id.* at 1933 ("The Court's constitutionally prescribed role is to vindicate the individual rights

of the people appearing before it."). Through the record before the Court, including the

present submission and the declarations submitted herewith, the Government has made a

strong showing that Paragraphs 3 and 7(f), as currently written, are not tailored to redress

plaintiffs' particular injuries.[1] Without the clarifications proposed above, Paragraphs 3 and

7(f) of the Order could be construed to require the pre-approval of overtime that bears no

connection to the delivery of Election Mail. Moreover, attempting to implement the

administrative changes necessitated by Paragraphs 3 and 7(f) "would likely lead to

widespread confusion among employees and management officials." Mills Declaration ¶ 4.

Thus, the sweeping changes to overtime imposed by Paragraphs 3 and 7(f) are not tailored to

ensuring that plaintiffs' ballots or Election Mail are delivered on time, and the first factor

therefore weighs in favor of extending the stay of these provisions.

---

[1] More broadly, the Government respectfully maintains its position that plaintiffs have
not demonstrated sufficient injury to support standing in this matter and, in particular,
insufficient injury to support a nationwide injunction.

Second, the Postal Service will be irreparably harmed absent a continuation of the

stay. Attempting to implement the administrative changes required by Paragraphs 3 and 7(f)

"would likely lead to widespread confusion among employees and management officials." *Id.*

In addition, as a result of the labor law issues discussed above, "following the Order as

written may divert employees' and local management officials' attention from the mail

processing and delivery operations that must operate as effectively as possible to ensure that

Election Mail is timely and accurately processed and delivered . . . ." *Id.*¶ 7. Particularly in

the period prior to the upcoming national election, such confusion or diversion would amount

to irreparable harm. In addition, the potentially ruinous financial consequences of unlimited

overtime availability for all of the Postal Service's hundreds of thousands of employees for a

twelve-day period could amount, in practice, to irreparable harm.

Third, the extension of the stay of Paragraphs 3 and 7(f) would not substantially

injure plaintiffs. The Postal Service has already stated that "use of overtime necessary to

expeditiously move Election Mail should be approved." Instructions at 1. The proposed

clarifications or modifications are aimed at avoiding operational confusion and overbroad

requirements that will have impacts unrelated specifically to Election Mail. Accordingly,

plaintiffs cannot demonstrate that they will be injured in any substantial or particularized way

if Paragraphs 3 and 7(f) remain stayed.

Fourth, the public interest weighs in favor of extending the stay. If the Court does not

clarify or modify the terms of Paragraphs 3 and 7(f), there is a real risk that the Order will

create confusion within the Postal Service's operations at a critical time. In light of the efforts

that the Postal Service has already undertaken and will continue to undertake to authorize

overtime to expeditiously move Election Mail, if clarification or modification is denied,

extending the stay of Paragraphs 3 and 7(f) is the best way to accomplish the goal that all

parties and the Court want here—the timely delivery of the Election Mail—without

unintended and possibly deleterious consequences.

Because each of the stay factors weigh in the Government's favor, if the Court does

not clarify or modify Paragraphs 3 and 7(f) as this application requests, the Court should

extend the stay of these provisions until the Solicitor General determines whether to appeal

from the Order.

## CONCLUSION

The Court should grant the Government's motion to clarify or, to the extent necessary,

modify Paragraphs 3 and 7(f) of the Order or, in the alternative, extend the stay of Paragraphs 3

and 7(f) of the Order until the Office of the Solicitor General decides whether to appeal.

Dated:   New York, New York
         September 26, 2020

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for
the Southern District of New York,
Attorney for the United States

By:      /s/ Steven J. Kochevar

REBECCA S. TINIO
STEVEN J. KOCHEVAR
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.    (212) 637-2774/2715
Email: rebecca.tinio@usdoj.gov
       steven.kochevar@usdoj.gov