UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Mondaire Jones, Alessandra Biaggi, Chris Burdick, Stephanie Keegan, Seth Rosen, Shannon Spencer, Kathy Rothschild, Diana M. Woody, Perry Sainati, Robert Golub, Mary Winton Green, Marsie Wallach, Matthew Wallach, Mac Wallach, Carol Sussman, and Rebecca Rieckhoff, *individually, and on behalf of all others similarly situated,*

Plaintiffs,

v.

United States Postal Service, Louis DeJoy, as Postmaster General of the United States Postal Service, and Donald J. Trump, as President of the United States,

Defendants.

No 20 Civ. 6516 (VM)

**DECLARATION OF DAVID E. MILLS**

I, David E. Mills, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. § 1746, hereby declare as follows:

1. I have been employed by the United States Postal Service for approximately 33 years and 6 months. During that time, I have served in several managerial positions, including Supervisor, Distribution Operations, District Manager, Labor Relations, District Manager, Human Resources, Area Manager, Human Resources, and Manager, Corporate Outsourcing. I currently serve as the Manager, Labor Relations Policies and Programs, a position I have held since May 23, 2020. As such, my duties include managing the development and review of policies and programs to ensure compliance with collective bargaining obligations and labor relations policies,

managing the administration of collective bargaining agreements, including labor/management committees and joint programs and projects, as well as managing, administering, and participating in a series of major programs with national impact for the Postal Service.

2. This declaration is based on my personal knowledge, as well as information conveyed to me by other knowledgeable Postal Service personnel in the course of my official duties and responsibilities.

3. I am familiar with Paragraph 3 of an Order this Court issued on September 21, 2020, regarding overtime requests and usage. I submit this declaration to explain the burden the Court's Order, as currently written, would likely place on Postal Service under our collective bargaining agreements.

4. This Court's Order could be construed to require the Postal Service to "approve or pre-approve all overtime that has been or will be requested" between October 26 and November 6, 2020, with no limitation on who makes or approves such requests and without required any relationship to Election Mail processing. However, employees of the Postal Service do not request overtime, but are scheduled for it by local management in line with collectively bargained principles and business needs. Because the Order does not appear to limit who can request overtime, the Postal Service believes that the Order as written will create a severe burden whereby employees other than local management officials, in whom such decisions are currently vested, may request and work overtime hours, including on behalf of others, on the basis of the Order, even though they have no role in planning or management of operations. Implementing such a systemic change to how the Postal Service staffs

its operations on the timeline specified in the Order would be impracticable and would likely lead to widespread confusion among employees and management officials.

5. For all employees within collective bargaining units, who constitute the majority of the Postal Service's workforce eligible for overtime, their collective bargaining agreements' Articles 8, as well as several local and national memoranda of understanding, define specific entitlements to operationally-necessary overtime through a pecking order process of opting in through an "overtime desired list," and then assigning mandatory overtime, generally by juniority.

6. The Order, as written, seems to be incompatible with this process because necessary overtime hours would not be assigned to employees according to mandatory collectively bargained processes, but by whichever employee requested overtime. This situation exposes the Postal Service to liability both within its internal grievance-arbitration process and under the National Labor Relations Act ("NLRA"), given that it would entail a unilateral change to the terms and conditions of employees' employment with the Postal Service, a matter over which bargaining would be required under the NLRA as the Postal Service understands that statute.

7. Concomitantly, as the contract's grievance-arbitration provisions require multiple local management officials to meet to discuss grievances on issues such as overtime in stages and within defined deadlines, following the Order as written may divert employees' and local management officials' attention from the mail processing and delivery operations that must operate as effectively as possible to ensure that Election Mail is timely and accurately processed and delivered through the postal system.

8. For those employees represented by the National Association of Letter Carriers (*e.g.*, City Carriers, City Carrier Assistants, etc.), greater problems would arise. Employees in that bargaining unit are required each day to assess the volume of the mail they are charged with delivering and to request assistance, which management may provide through assigning other employees to assist or by authorizing overtime. For these employees, a request for assistance may easily be misconstrued as a request for overtime, and the Order makes no limitation on the amount of overtime they may request, nor does it provide for local managers to exercise reasonable discretion to determine whether and when overtime work hours are necessary for operations. This will likely also deprive City Carrier Assistant employees the opportunity to work, as they are often assigned to work providing assistance rather than giving a City Carrier overtime they may request.

9. Further, this situation would permit employees to work more hours than their collective bargaining agreement allows, or would entitle them to penalty overtime pay, differential pay, or other premium pays to which they are entitled under Postal Service regulations. As employees often lack the experience and perspective to avoid incurring these premium pay statuses that local management officials are trained to control, the risk of exposing the Postal Service to inestimable financial liabilities and excessive labor costs is very high.

10. In the case of employees represented by the National Association of Letter Carriers, the Postal Service faces the additional burden of a requirement in its collective bargaining agreement to equalize overtime. The agreement provides that the Postal Service must, on a quarterly basis, provide overtime in roughly equal measure to all

employees within an installation who have requested to be given overtime opportunities. Every quarter, any employee who was presented with fewer overtime opportunities may receive a compensatory award that would be roughly equal to an amount of wages or overtime opportunities in the following quarter to bring them in line with what their colleagues actually earned on overtime. Under the Order as written, if one employee at an installation were to request exorbitant overtime, and management could not restrict unreasonable or unnecessary requests for overtime, then the Postal Service would be exposed to liability to provide other opportunities or pay all other employees on the list additional sums following the end of the first quarter of fiscal year 2021. Consequently, there could be automatic entitlement among all other employees at the installation in that bargaining unit who had requested overtime opportunities to receive a windfall of the difference in pay. Given the high potential for one employee to bring an entire installation into this conundrum by even a good faith request for what could have been avoidable overtime, this situation could easily, and without coordination or bad faith, replicate throughout the country. This reality will result in a massive waste of the Postal Service's scarce financial resources, even if just in opposing that equalization would apply to overtime worked pursuant to the Order in the grievance-arbitration process.

11. Relatedly, the Order's language requiring the "pre-approval" of overtime could be construed to remove all discretion from Postal Service local management about how to staff and execute operations, displacing years of postal managerial experience with the unilateral judgment of any employee. Local Postal Service management officials make real-time decisions about overtime needs and use, usually as operations on a

given tour of duty begin, based on factors including mail volume, staffing availability, the behavior of private-sector business partners, customer expectations, weather, traffic, and other variables that are unforeseeable and cannot realistically be subject to national standardization. As such, the Order's requirement that the Postal Service "pre-approve" requests for overtime would require the Postal Service to fundamentally change the way it tracks and determines the need for overtime within its logistics and staffing. Implementing such a change so quickly is both impracticable and removes from local management the discretion they require to efficiently administer the postal system.

12. Finally, the Order's language implies that if any employee requests overtime during the period contemplated in the Order, no matter of what duration and no matter what position the requesting employee occupies and no matter what duties they would be performing on the overtime, the Order could be construed to allow no discretion for local management officials to exercise business judgment and discern between operationally necessary requests and those that merely have been made. This situation prevents the Postal Service from faithfully discharging its obligation to steward its resources and puts in jeopardy its core mission of efficiently delivering the mail.

I declare that the foregoing is true and correct to the best of my knowledge, information, and belief.

DAVID E. MILLS
Executed on the 25 day of September, 2020