**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| Mondaire Jones, Alessandra Biaggi, Chris Burdick, Stephanie Keegan, Seth Rosen, Shannon Spencer, Kathy Rothschild, Diana M. Woody, Perry Sainati, Robert Golub, Mary Winton Green, Marsie Wallach, Matthew Wallach, Mac Wallach, Carol Sussman, *and* Rebecca Rieckhoff, *individually, and on behalf of all others similarly situated,*<br><br>                                                    Plaintiffs,<br><br>                    v.<br><br>United States Postal Service, Louis DeJoy*, as Postmaster General of the United States Postal Service*; and Donald J. Trump, *as President of the United States*,<br><br>                                                    Defendants. |

Docket No. 20-cv-6516-VM

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO MODIFY THE INJUNCTION

---

J. Remy Green
Jonathan Wallace, *of counsel*
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
remy@femmelaw.com

Ali Najmi
**LAW OFFICE OF ALI NAJMI**
261 Madison Avenue, 12th Floor
New York, New York 10016

*Attorneys for Plaintiffs*

September 27, 2020

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT......................................................................................................1

FACTUAL AND PROCEDURAL SUMMARY.............................................................................2

ARGUMENT...................................................................................................................................7

    I.    Defendants' Recast Motion to Reargue Should be Denied. ........................................7

        A.    The Court Should Treat Defendants Motion as What it is:  A Motion to Reargue............7

        B.    The Court Should Deny Defendants' Reargument Motion. ...................................................8

    II.    The Court Should Not Grant A Stay. ......................................................................9

        A.    Defendants' Motion Is Arguably Improper and Its Timing Is Prejudicial. ........................9

        B.    Defendants Cannot Satisfy the Stay Standard. ..................................................................11

        i.    Defendants' arguments, offered for the first time on this motion, have no likelihood of success on appeal............................................................................................................12

        ii.    The harm at issue is not irreparable........................................................................14

CONCLUSION..............................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Borey v. Nat'l Union Fire Ins. Co.*,
934 F.2d 30 (2d Cir. 1991) ........................................................................................14

*Church of Scientology Int'l v. Time Warner*,
1997 U.S. Dist. LEXIS 12839 (S.D.N.Y. Aug. 27, 1997) ..........................................7

*Colorado v. DeJoy*,
2020 U.S. Dist. LEXIS 166962 (D. Colo. Sep. 12, 2020), *recons. denied, Colorado v. Dejoy*, 2020 U.S. Dist. LEXIS 167379 (D. Colo. Sep. 14, 2020) ..........................11

*Davey v. Dolan*,
496 F. Supp. 2d 387 (SDNY 2007) ..............................................................................8

*Freedom Holdings, Inc. v. Spitzer*,
408 F.3d 112 (2d Cir. 2005) ......................................................................................15

*Goldman Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
764 F.3d 210 (2d Cir. 2014) ......................................................................................13

*Hirschfeld v. Bd. of Elections*,
984 F.2d 35 (2d Cir. 1993) ........................................................................................10

*Hizam v. Clinton*,
2012 U.S. Dist. LEXIS 135104 (S.D.N.Y. Sep. 20, 2012) ..........................................9

*Nat'l Imm. Project of the Nat. Lawyers Guild v. United States Dep't of Homeland Sec.*,
842 F. Supp. 2d 720 (S.D.N.Y. 2012) ..........................................................................9

*Novella v. Westchester Cty.*,
2007 U.S. Dist. LEXIS 66235 (S.D.N.Y. Sep. 10, 2007) ............................................8

*NRDC v. United States FDA*,
884 F. Supp. 2d 108 (SDNY 2012) ......................................................................11, 12

*Olin Corp. v. Ins. Co. of N. Am.*,
966 F.2d 718 (2d Cir. 1992) ........................................................................................8

*Paese v. Hartford Life & Accident Ins. Co.*,
449 F.3d 435 (2d Cir. 2006) ......................................................................................12

*Pollis v. New Sch. for Soc. Research*,
829 F. Supp. 584 (SDNY 1993) ................................................................................14

*Rafter v. Liddle,*
    288 F. App'x 768 (2d Cir. 2008) ..........................................................................12

*Rafter v. Liddle,*
    288 Fed. App'x. 768 (2d Cir. 2008) ......................................................................8

*Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil,*
    2006 U.S. Dist. LEXIS 72704 (S.D.N.Y. Oct. 4, 2006) ......................................9

*SEC v. Johnson,*
    2006 U.S. Dist. LEXIS 63001 (S.D.N.Y. Aug. 31, 2006) ....................................9

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.,*
    2003 U.S. Dist. LEXIS 7920 (SDNY May 8, 2003) ............................................8

*Willington Bd. of Educ. v. G.W.,*
    No. 3:15-cv-00614 (MPS), 2015 U.S. Dist. LEXIS 92108 (D. Conn. June 15,
    2015) ...................................................................................................................14

*Wiltshire v. Williams,*
    2012 U.S. Dist. LEXIS 36119 (SDNY Mar. 15, 2012) ........................................8

*Winter v. NRDC,*
    555 U.S. 7 (2008) ...............................................................................................11

**Other Authorities**

Aaron Sorkin and Rob Reiner, A Few Good Men (1992)....................................................14

Fed. R. Civ. P. 54(b) ...........................................................................................................7

Fed. R. Civ. P. 62 ...........................................................................................................9, 10

Local Civil Rule 6.3...........................................................................................................4, 8

National Ass'n of Letter Carriers, <u>Reporting requirements and PS Form 3996</u> (Jan.
    2018)....................................................................................................................4

## PRELIMINARY STATEMENT

Defendants' motion borders on dishonest.  It is, essentially, an attempt to shoehorn in broad discretion as to what overtime is "necessary" in the days immediately surrounding Election Day – when the purpose of the applicable provision was to take *away* discretion.  That is, in granting relief, the Court aimed to prevent the recurrence of the "multiple managerial failures [that] have undermined the postal employees' ability to fulfill their vital mission."  September 21, 2020 Decision and Order ("Decision") at 83.  Put simply, though Defendants cast the motion as one to "clarify," their real issue with the Court's Order is that it is perfectly clear:  after extensive testimony, the Court *did* "remove all discretion from Postal Service local management about" overtime decisions in the 10 days immediately surrounding Election Day.  Mills Dec. ¶ 11.

The Court's decision to do so was supported by extensive factual findings and related conclusions.  *See generally,* Decision at 8-29.  Among other things, Defendants' own "purported rollback" of the policies that lead local managers to ban overtime was "either incompletely implemented, inadequately communicated throughout the organization, or unreliable."  Decision at 67-8.  Defendants now seek to assure the Court that, despite their previous failures, they – and low-level managers Defendants have already stated are "exercising poor judgment" (Curtis Dec. ¶ 29) – should be trusted to make vital judgments about what overtime to approve.  But the trustworthiness of that assurance is already the heart of the Court's existing Decision.

In sum, in seeking to relitigate these issues,[1] Defendants have provided no persuasive reason for the Court to reverse its findings that, among other things, USPS has "given no persuasive assurances that the 'practices' it touts to ensure the delivery of Election Mail will be uniformly

---

[1] To this end, Defendants reiterate arguments that the Court has already soundly rejected – and at the heart of their motion is a refusal to see that there are constitutional injuries at stake here.  *See, e.g.*, Def. Memo at 10 n. 1 ("the Government respectfully maintains its position that plaintiffs have not demonstrated sufficient injury to support standing in this matter"); *but see* Decision at 31-38 (rejecting Defendants' position and observing that "it is disingenuous for USPS to claim that the injury is not sufficiently imminent") (alteration adopted).

applied." *Id.* at 55.  For exactly the same reasons that the Court granted relief in the first place, the

Court should not revisit its Decision.

## FACTUAL AND PROCEDURAL SUMMARY

Plaintiffs' assume the Court's familiarity with proceedings to date, and only recount those

events not within the Court's direct knowledge.

In the lead up to this motion, the parties negotiated extensively about the Order.  In those

negotiations, Defendants requested the following language replace the Court's paragraph 3:

> "Overtime is authorized and instructed to be used **as necessary** to facilitate the
> timely delivery of Election Mail, as described in the September 21 USPS Instructions
> and in forthcoming further guidance on the use of additional resources in aid of the
> November 2020 Election."

Green Dec. ¶ 4 (emphasis added).  However, Defendants now obscure the "as necessary" qualifier.

The words "as necessary" do not appear in the language Defendants now seek directly:

> Overtime is authorized and instructed to be used to facilitate the timely delivery of
> Election Mail, consistent with the September 21 USPS Instructions and the
> September 25 Additional Resources Memorandum

Def. Memo at 5-6.  Instead, that qualifier is hidden within the "consistent with" language.[2]  The

September 21 USPS Instructions ("instructions") suggest supervisors – who are directed to, among

other things, "address problems" relating to "work not being performed within expected work hours

or managed inefficiently" – should only approve "use of overtime **necessary** to expeditiously move

Election Mail."  ECF 62-1 at 1.  Similarly, the September 25 Additional Resources Memorandum

("Memorandum") cabins approval of overtime with the phrase "as needed."  ECF No. 62-3 at 2.  In

short, the proposed amendment seeks to return discretion to the hands of local managers, who –

according to Defendants' own witnesses – have already been "exercising poor judgment" on these

matters.  *See, e.g.*, Curtis Dec. ¶ 29.  The message this modification of the Decision will send to local

---

[2] Given Defendants' complaints about unclear guidance, this incorporation of two other documents in what *should* be a clear, direct instruction is – at the least – inconsistent.

managers is clear:  cost-cutting is still the priority, even in the days around the election.  This remains particularly true given, as the Court observed, that this guidance is already exactly what Postmaster DeJoy stated he would do.  *See* Decision at 16.

If permitted to incorporate the language they seek, Defendants will once again introduce the "wide variety of local interpretations" that the Court already found problematic.  Jamison Declaration on Defendants' Motion to Clarify/Reconsider/Stay ("Jamison Rec. Dec.") ¶¶ 8-12; *see also,* Decision at 64 (discussing the "stunning lack of uniformity and a high level of confusion at various points in the USPS hierarchy regarding the standards to be followed by USPS employees on the ground").  Defendants' limitations on the Order "will inevitably result in significant abuses in denying overtime that would move election mail faster."  Jamison Rec. Dec. ¶ 8.  This is because all of the language introduced is "exactly th[e] kind of language that … lead to aggressive cutting of overtime" over the summer.  *Id.* ¶ 10.  *See also*, *id.* ¶¶ 12-13 (noting that Defendants' new memorandums continue to send signals the managers will "attempt to read between the lines" and "restrict overtime"), *citing* ECF No. 38-1 ¶ 15.  In other words, when weighed against the potential for abusive overtime requests, "it is much more likely that local managers will, based on the ingrained culture of the Postal Service, attempt to limit overtime or flaunt the Court's Order in an attempt to please what that junior manager or supervisor might perceive as a senior manager's true intent."  Jamison Rec. Dec. ¶ 18.  Further, "since the Postal Service is using several untrained craft employees as temporary supervisors (204Bs)[,] it is likely those employees would be less likely to approve overtime," which may present significant issues with differential treatment of mail.  *Id.*

The American Postal Workers Union's general counsel similarly explains that the contents of the Instructions and Memorandum "to use overtime to handle Election Mail 'where needed' and 'as necessary' are very discretionary."  Green Ex. 2 at 1.  For the Order incorporating those documents to be effective, it would "require the Court to have confidence that thousands of managers will

evaluate the need and necessity of overtime the same way and with the same urgency." *Id., but see* Decision at 64 (finding "a stunning lack of uniformity … regarding the standards to be followed by USPS employees on the ground"). This "general commitment to use overtime only at the discretion of an unknown level of management fails to provide measurable standards to managers, employees, the litigants, or the Court." Green Ex. 2 at 2. Similarly, by referencing "expected earned work hours" (ECF No. 62-1 at 1), USPS "refer[s] to a theory and system on which the Postal Service bases staffing, a theory the Union has successfully challenged in its grievance-arbitration procedure" and that is "of questionable applicability" here. Green Ex. 2 at 2 ("The Court is encouraged *not* to defer to management concepts like 'earned hours'") (emphasis in original). In short, the terms used to limit overtime commitments in the Instructions and Memorandum "do not have a common defined meaning" (*id.* at 1) and will lead to exactly the same "stunning lack of uniformity" the Court already found unconstitutional. Decision at 64. Also notable, apparently "the Postal Service did not discuss or negotiate this guidance with the APWU." Green Ex. 2 at 1.

Defendants' new witness,[3] David Mills wrongly asserts "employees of the Postal Service do not request overtime." Mills Dec. ¶ 4. While that may be true for some employees, letter carriers routinely do so. *See* Jamison Rec. Dec. ¶ 15. Specifically, letter carriers fill out a particular form that notifies supervisors that existing mail requires time beyond 8 hours to deliver, and supervisors then either approve overtime or assistance, or deny the request. *Id., citing* National Ass'n of Letter Carriers, Reporting requirements and PS Form 3996 (Jan. 2018) (discussing the formal process for letter carriers requesting overtime and the challenges it presents).[4]

---

[3] As discussed below, because Defendants' motion is an artfully recast motion to reargue, it is subject to Local Rule 6.3. Relevantly here, Local Rule 6.3 provides that "[n]o affidavits shall be filed by any party unless directed by the Court" and the moving party must direct the court to the "matters or controlling decisions which counsel believes the Court has overlooked." Because Defendants have filed affidavits, Plaintiffs have filed affidavits rebutting them. That said, the Court could properly overlook *all* affidavits on this motion – and limit consideration to the record properly developed on Plaintiffs' motion.

[4] *Available at* https://www.nalc.org/news/the-postal-record/2018/january-2018/document/2018-01_evp.pdf.

As Plaintiffs' expert explains, the harms Defendants forecast are speculative.  Jamison Rec. Dec. ¶¶ 19-21.  That is, "while there are (of course), occasionally folks who will abuse any system, the workers in the Postal Service are aware of the national importance of their work and conduct their work with the utmost professionalism.  The notion that some significant number of people will abusively request overtime pay is over is unrealistic (particularly when they have to continue to work under the same bosses after the 11-day period)."  Jamison Rec. Dec. ¶ 21.  Mr. Jamison ultimately concludes that "Mills' claim that the Court's Order as written will result in 'a massive waste of the Postal Service's scarce financial resources' is almost laughable given the ten-day limitation of the order."  *Id.* ¶ 21.  *See also, id.* ¶ 18 (noting that, in Mr. Jamison's long experience, the "Postal Service regularly violated contractual provisions related to the administration of overtime desired lists and assignment of overtime.  The problem is not with the Court's Order but with the Postal Service's inability to consistently follow contract provisions, none of which the Court amends or abrogates.").

Defendants also seek to rely on guidance that was drafted and distributed *since the Court issued the injunction*, in arguing that inconsistent guidance might cause confusion – and that they have some obligation to "comply[]" with their own guidance issued this week.  *See, e.g.*, Def. Memo at 11 ("The clarifications proposed by the Government will allow local managers to continue to abide by applicable labor laws while also complying with the [Memorandum]").  But any such confusion is of Defendants' own making:  both the Memorandum and the Instructions were issued after the Court issued the injunction.  Beyond that, there is no reason to believe that a clear direction will confuse employees *more* than the incorporation of two wishy-washy memos in an instruction.

Finally, a brief note about the trustworthiness of the testimony Defendants have presented is in order, given a – frankly – shocking document that has surfaced.  As the Court already observed, Defendants "have not provided trusted assurance and comfort that citizens will be able to cast ballots with full confidence that their votes would be timely collected and counted."  Decision at 8-

9.  At the hearing, Cintron and Curtis "insisted that the statements made regarding late and extra trips at [a] July 10, 2020 meeting did not amount to a 'ban,' but they did indicate that the 'aspiration' was 'not to have either one of those.'"  Decision at 13, citing Tr. 50:17-25; Tr. 75:5-8.  Thus, Cintron and Curtis explained, the problem leading to the "ban" was that some employees "received a different message" from the talk, and *that* led to signs, memos, and talks proclaiming "NO LATE TRIPS" and "NO EXTRA TRIPS."  *Id.*  In all events, USPS and the government "disclaim[ed] responsibility for certain of the policy announcements (i.e., relating to overtime, parking restrictions, **and prohibitions on late and extra trips**), explaining that they were communicated by 'local managers' without approval from headquarters."  Decision at 31 (alterations adopted, emphasis added).

Since then, the headquarters presentation given during the July 10, 2020 meeting has been made public.  It turns out that the "different message" was in all caps on an official headquarters slide – leaving little mystery *why* employees "received [that] message":



Green Ex. 1 at 9.[5]

---

[5] Because Defendants have opened the door to the Court "modifying" some portion of its Decision, it would be appropriate for the Court to evaluate adding explicit credibility findings to its Decision about Curtis and Cintron's

To uncritically accept the very "assurances" the Court has already found were "unreliable" and not "persuasive," particularly in the face of proof the assurances were not *even* as reliable as the Court assumed, would be a mistake.  Decision at 67-8.  Yet such assurances that local managers will make reliable and consistent decisions on overtime are all Defendants have on offer.

## ARGUMENT

### I.   Defendants' Recast Motion to Reargue Should be Denied.

#### A.   The Court Should Treat Defendants Motion as What it is:  A Motion to Reargue.

Defendants' motion seeks to "clarify" a very clear command:  all overtime, no matter what, is approved for the 10 days immediately surrounding Election Day.  As Defendants' declarations make clear, they are *very* much clear on what the Decision requires.  *See, e.g.*, Mills Dec. ¶ 9 (objecting that the Order might "permit employees to work" hours that would "entitle them to penalty overtime pay").  And on the motion proper, Defendants were on notice exactly what relief was at stake (*see* ECF No. 19 ¶ 1(d)) and raised no objection to the overtime-related relief.  As the Court explained in the Decision, it considered at length "the question [of] what the scope of that relief should be," and has already "limit[ed] the scope of relief" to exclude issues "outside the scope of this case."  Decision at 79-80.  Thus, Defendants – without ever saying as much – seek to have the Court reconsider its decision.[6]

Such an "artfully drafted motion" should be treated as what it is:  "a motion for reargument."  *Church of Scientology Int'l v. Time Warner*, 1997 U.S. Dist. LEXIS 12839, at *11-12

---

testimony, given that both Curtis and Cintron professed surprise and confusion about the language in various Stand Up Talks, memos, and banners that the Court can now see were copied verbatim from this slide.

[6] As Defendants' own authority suggests, a district court "has discretion to clarify the scope of an injunction" where the order does not "provide fair warning as to what future conduct may be found contemptuous."  Def. Memo at 4-5 (collecting cases, alteration rejected).  Defendants cannot seriously believe that permitting local managers to reject overtime they viewed as not "necessary" is a reasonable "effort[] to comply with the Order" and a reasonable "reading of the Order."  Def. Memo at 5.  Rather, Defendants object that the Order *is* clear in providing "fair warning" that local managers do not – for 11 days – can "exercise business judgment" to reject or limit overtime.  Mills Dec. ¶ 12.

(S.D.N.Y. Aug. 27, 1997) ("though denominated a 'Motion to Modify' pursuant to Rule 54(b) and the Court's inherent authority, plaintiff's motion is, in substance, a motion for reargument. Thus, where a party raises an "argument for the first time in a 'motion for modification,'" a "district court correctly treat[s] [the] motion" when it evaluates it "as a motion for reargument" – and properly denies the motion (assuming nothing was overlooked on the first motion). *Olin Corp. v. Ins. Co. of N. Am.*, 966 F.2d 718, 722 (2d Cir. 1992). Courts evaluating motions like Defendants' consistently reach this result. *Novella v. Westchester Cty.*, 2007 U.S. Dist. LEXIS 66235, at *6 (S.D.N.Y. Sep. 10, 2007) ("The moving party may not avoid the requirements of Local Civil Rule 6.3 by styling its motion as something other than a motion for reargument because a court may properly treat an artfully drafted motion as a motion for reargument") (quotation marks omitted); *see also, Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 2003 U.S. Dist. LEXIS 7920, at *2 n.2 (SDNY May 8, 2003) ("Although Q&S's does not style its letter as a motion for reconsideration, it requests that the Court 'modify' its prior decision … Accordingly, Q&S's request is treated as a motion for reconsideration.").

> B.    The Court Should Deny Defendants' Reargument Motion.

A party seeking reconsideration must identify something was "overlooked" in the decision it seeks to revisit. *Wiltshire v. Williams*, 2012 U.S. Dist. LEXIS 36119, at *6-7 (SDNY Mar. 15, 2012). That is, "[a] motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *Davey v. Dolan*, 496 F. Supp. 2d 387, 389 (SDNY 2007). Because motions for reconsideration "are not vehicles for taking a second bite at the apple," the Court generally should "not consider facts not in the record to be facts that the [C]ourt overlooked." *Rafter v. Liddle*, 288 Fed. App'x. 768, 769 (2d Cir. 2008). Thus, the Second Circuit has found it is not proper to consider "an affidavit [filed with a] reconsideration motion that contain[s] … facts not in the original record." *Id.*

Defendants here do not argue (because they cannot) that the "facts" they present now exist in the record. That is, every fact that Defendants implicitly suggest the Court "overlooked" is a fact[7] newly introduced on this record. When that is true, reconsideration is generally improper – and Defendants do not suggest, for example, that anything *prevented* them from offering the present evidence in response to the motion. For that reason alone, Defendants' misnamed motion to reconsider should be denied. Beyond that, for the reasons outlined in the fact section above (and in the discussion below), Defendants are simply wrong: the remedy the Court elected to use here fits the chaotic and unreliable management structure shown during the hearing. Anything less would place potential administrative cost-savings at a premium above the right to vote. Finally, in the interest of Defendants arguments on "extreme and undue hardships" are – in the interest of space and time – addressed under the stay rubric below.

## II.    The Court Should Not Grant A Stay.

### A.    Defendants' Motion Is Arguably Improper and Its Timing Is Prejudicial.

Defendants seek to have the Court grant a stay, not so that they can appeal, but so that they can make a determination whether to appeal in the first instance. Courts disagree about whether such applications are proper at all. *Compare, e.g.*, *Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil*, 2006 U.S. Dist. LEXIS 72704, at *5-7 (S.D.N.Y. Oct. 4, 2006) ("Rapture, however, has not yet filed a notice of appeal, nor has it posted bond. As a result, Rapture's motion is untimely, and the Court has no power to grant a stay under Rule 62(d)"); *and SEC v. Johnson*, 2006 U.S. Dist. LEXIS 63001, at *4 (S.D.N.Y. Aug. 31, 2006) (same); *with Hizam v. Clinton*, 2012 U.S. Dist. LEXIS 135104, at *5-7 (S.D.N.Y. Sep. 20, 2012) (entertaining motion to stay without a notice of appeal); *and Nat'l Imm. Project of the Nat. Lawyers Guild v. United States Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 731,

---

[7] Given the credibility issues here, at a minimum, the Court should permit Plaintiffs to cross-examine Defendants' declarants on these subjects (allowing the Court to make credibility determinations), as Plaintiffs would have if Defendants presented this testimony at the appropriate time.

733 (S.D.N.Y. 2012) (granting government's motion for 60-day stay while it considered whether to appeal).

The Court should, given the nature of this case, err on the side of not permitting the motion without a notice of appeal. While in cases moving at an ordinary speed, some delay while a party considers whether to appeal is appropriate, it is not appropriate in a case of this nature. The relief Defendants object to requires the parties to have produced and traded comments on a full Guidance Memorandum to be distributed, essentially, on October 8 (or, by the time the Court is reading this, in about 10 days).[8] Since they have yet to file a notice of appeal, Defendants have already used up 7 days during which they have, apparently, been unable to make a decision. And, of course, the Guidance Memorandum must go out with at least *some* weeks left before the October 26 start of the guaranteed overtime period. That is, Defendants have already consumed something like half of the period during which an appeal would even be relevant.

In election cases in particular, such delays are fatal to appeals. *See, for example, Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 37 (2d Cir. 1993) (sanctioning Board of Elections for filing an appeal of a September 30 judgment on October 28). While, of course, the delay has not reached the point in *Hirschfeld* yet, Defendants have already consumed a significant portion of any time available for an appeal – and any appeal would need to be resolved in a period *shorter* than what Defendants have already consumed. That delay suggests both that Defendants may ultimately face an insurmountable procedural hurdle on their appeal (*see Hirschfeld*) and also that the stricter reading of Rule 62 is apt here. And because Plaintiffs made their positions on this issue clear (essentially: we cannot agree to allowing local discretion on overtime), there is no reason Defendants could not have made this

---

[8] The Court has directed Plaintiffs to submit comments on the Guidance Memorandum "[n]o later than October 1," with certifications due from USPS managerial staff that they've reviewed the Guidance Memorandum "[w]ithin 7 days of the date of an Order of this Court approving" the memo. Decision at 87. In essence, the heart of the relief happens somewhere around October 8, then.

motion as early as September 22.

At the earliest, then, assuming the Court grants a stay, and assuming Defendants use *some* of the time granted to "consider" whether to appeal and the Second Circuit immediately grants a motion to expedite the appeal, the issue will be fully briefed at the Second Circuit around October 8 – long after the Guidance Memorandum should already be settled between the parties. And – as Defendants note – multiple communications around overtime issues *will* create confusion. If they appeal, because of their delay, Defendants will be introducing *more* confusion by further separating communication on overtime. Given that, the prejudice caused by any stay that gives Defendants time to *consider* an appeal at this point – taking the form of (among other things) further voter and USPS staff confusion, and the negative results that confusion will sow[9] – is significant. Indeed, it is more of the same harm the Court already found irreparable and severe in granting the injunction – and the same harm USPS appears to be causing across different election arenas. *Cf. Colorado v. DeJoy*, 2020 U.S. Dist. LEXIS 166962, at *6 (D. Colo. Sep. 12, 2020) (finding a notice sent by USPS, "if distributed, will sow confusion amongst voters by delivering a contradictory message" and noting that "the Court is deeply troubled by the challenged conduct intentionally undertaken by" USPS), *recons. denied, Colorado v. Dejoy*, 2020 U.S. Dist. LEXIS 167379 (D. Colo. Sep. 14, 2020).

B.       Defendants Cannot Satisfy the Stay Standard.

Reaching the merits of Defendants' stay request, the request should be denied – largely for the same reasons the Court granted Plaintiffs' motion in the first place. Indeed, "the test for a stay is essentially the same as the test for a preliminary injunction." *NRDC v. United States FDA*, 884 F.

---

[9] *See, e.g.*, Decision at 8 (noting that USPS's actions "to directives that tend to generate uncertainty as to who is in charge of policies that ultimately could affect the reliability of absentee ballots, thus potentially discouraging voting by mail" and that "[c]onflicting, vague, and ambivalent managerial signals could also sow substantial doubt about whether the USPS is up to the task"); 15 (noting "evidence of conflicting signals or confusion"); and 64 (noting a "stunning lack of uniformity and a high level of confusion at various points in the USPS hierarchy regarding the standards to be followed by USPS employees on the ground"); 68 (concluding "institutional confusion in Postal Service communications, operations, and practices that Plaintiffs have identified can serve no legitimate purpose").

Supp. 2d 108, 122 n.12 (SDNY 2012) (quotation marks omitted).  Thus, under *Winter*, "even if a party makes a robust showing that it is likely to succeed on appeal, it still must also show that irreparable injury is likely."  *Id.* at 122, *citing Winter v. NRDC*, 555 U.S. 7, 22 (2008).

The party seeking a stay bears a "heavy burden" in making their showing, which consists of "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *NRDC*, 884 F. Supp. 2d at 121-122.  And, of the factors, "[t]he first two factors are the most critical."  *Id.* (alteration adopted), *citing Nken v. Holder*, 556 U.S. 418, 433, (2009).

Since the factors are the same factors considered on a preliminary injunction, the Court's finding that "Plaintiffs have made a strong showing of irreparable harm and demonstrated a clear and substantial likelihood of success on the merits" applies with just as much force here as it did in granting the motion.  Decision at 78-9.  That said, Plaintiffs address the two "critical" factors in more detail here.

> i. *Defendants' arguments, offered for the first time on this motion, have no likelihood of success on appeal.*

Defendants' stay request appears to only contemplate an appeal regarding paragraphs 3 and 7(f) of the Order.  *See* Def. Memo at 10 (only discussing likelihood of success on an appeal over those paragraphs).  On appeal, however, Defendants' newly presented evidence and arguments are not even *in* the record[10] – and thus do not influence the probability of success on the merits.  Indeed, because Defendants did not even *argue* that the portion of the order at issue was not

---

[10] Defendants' newly submitted evidence would only form part of the record if Defendants appeal denial of this motion (rather than the grant of the preliminary injunction motion).  Even then, because this motion is a reconsideration motion, the Second Circuit would be unlikely to consider the "affidavit[s] attached to [the] reconsideration motion that contained certain facts not in the original record" to be properly part of the record on *either* motion.  *Rafter v. Liddle*, 288 F. App'x 768, 769 (2d Cir. 2008).

narrowly tailored, the argument is not preserved for appeal.  *See, e.g., Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 446-47 (2d Cir. 2006) ("because this issue … was not raised before the district court, and involves some factual determinations and not merely questions of law, we deem it waived").  In other words, in even convincing the Second Circuit to reach the merits of their new arguments on appeal, Defendants will have a tough row to hoe.   Indeed, even absent fact-finding, the Court's ultimate determination to issue a preliminary injunction is *also* entitled to abuse of discretion review.  *Goldman Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 214 (2d Cir. 2014).

What Defendants really object to is that the Court (correctly) found that it needed to use a clear, unambiguous command to address the confusion already sown by managerial chaos.  *See, e.g.*, Mills Dec. ¶¶ 8 (objecting that the Order does not "provide for local managers to exercise reasonable discretion to determine whether and when overtime work hours are necessary for operations") and 11 (objecting that the Order "could be construed to remove all discretion from Postal Service local management").  But Defendants do not explain how the Court was wrong in its finding that local managers have – to use Defendants' own words – "exercis[ed] poor judgment." Curtis Dec. ¶ 29; *see* Decision at 31 ("Government further disclaims responsibility for certain … communicat[ions] by local managers") (alteration adopted); *see also*, note 9 (noting related findings). Since the Court's decision to limit or eliminate 11 days of overtime "discretion from Postal Service local management" (Mills Dec. ¶ 11) flows naturally from fact-finding, Defendants' challenge to that fact-finding will be reviewed with deference to this Court's determination.  That is, the chaos and confusion caused by USPS's managerial failures throughout the summer – along with the "poor judgment" demonstrated by local managers – call for a remedy that takes away any discretion in the sensitive time immediately surrounding the election.

Anything less than a clear command, with no room for wrangling over what overtime is

"operationally necessary," is insufficient to cure the injuries at stake – and does not provide voters with "confidence that their votes would be timely collected and counted." Decision at 8. As the Court explained, "[t]he right to vote is too vital a value in our democracy to be left in a state of suspense in the minds of voters weeks before a presidential election, raising doubts as to whether their votes will ultimately be counted." *Id.* The clear command the Court issued leaves no doubts. The language Defendants seek to replace it with leaves many. Thus, because Defendants do not explain how the Court erred in its fact-finding – and choosing remedies the flowed from that fact-finding – there can be no likelihood of success on the merits of an appeal.

Beyond that, in identifying the arguments they believe will prevail on appeal Defendants merely state that they "respectfully maintain[]" the standing argument that the Court already found "disingenuous." Def. Memo at 10; Decision at 36. Since Defendants do not even make an attempt at identifying any error in the Court's analysis, Plaintiffs will leave the point alone largely alone. *Cf.* Aaron Sorkin and Rob Reiner, A FEW GOOD MEN (1992) ("'I strenuously object?' Is that how it works? … 'Objection.' 'Overruled.' 'Oh, no, no, no. No, I *strenuously* object.' 'Oh. Well, if you strenuously object then I should take some time to reconsider'").

## ii. The harm at issue is not irreparable.

Defendants cannot identify any harm that is irreparable. "Monetary loss alone will generally not amount to irreparable harm." *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).[11] "[I]n essence the [party asserting irreparable harm] must quite literally find herself being forced into the streets or facing the specter of bankruptcy before a court can enter a finding of irreparable harm" for purely financial harm. *Pollis v. New Sch. for Soc. Research*, 829 F. Supp. 584, 591 (SDNY

---

[11] When a party cannot be made whole by judgment – for example, where (as here) the Court cannot order the financial harm repaired as part of judgment – "at least one court has recognized this reality as a basis for finding irreparable harm." *Willington Bd. of Educ. v. G.W.*, No. 3:15-cv-00614 (MPS), 2015 U.S. Dist. LEXIS 92108, at *39-40 (D. Conn. June 15, 2015). Even then, however, financial harms are often outweighed by other factors. *Id.* (finding compliance costs that constituted a significant portion of a government entity's budget were outweighed by other factors in the stay analysis).

1993), *citing Williams v. State University of New York*, 635 F. Supp. 1243, 1249 (EDNY 1986).

Defendants do not make that showing – and if they claimed they did, it would be wildly implausible.

At stake here is merely 11 days of pre-approved overtime (the 10 days around Election Day and

Election Day itself).  On the scale of USPS overtime generally, even 11 days of abusive overtime

requests are simply not a blip.  *Cf.* ECF No. 22 at 3 ("even if every registered voter in the United

States used a mail-in ballot in the 2020 Election, those ballots would represent only a fraction of the

total mailpieces that the USPS processes each day, on average").  In sum, Defendants' imagined

overtime abuses and CBA claims are just that:  Imagined.  *See, e.g.*, Jamison Rec. Dec. ¶¶ 5-6; 19-20.

　　　　To that end, Defendants' arguments rely on a series of wild speculations.  The chain begins

with the speculative notion that significant numbers of the dedicated workers at the Postal Service

will, essentially, engage in mass fraud.  *See* Mills Dec. ¶ 10, *but see* Jamison Rec. Dec. ¶ 21 ("The

notion that some significant number of people will abusively request overtime pay is over is

unrealistic").  Past there, Defendants speculate that other employees will grieve the fact that workers

who were available to do overtime in the 10 days around the election received overtime that was

somehow not "necessary."  *See* Mills Dec. ¶ 6, *but see* Jamison Rec. Dec. ¶¶ 4-5.  And then,

Defendants speculate, those grievances "could [create] automatic entitlement among all other

employees at the installation in that bargaining unit who had requested overtime opportunities to

receive a windfall of the difference in pay" because the grievance process end in a finding that –

even with the Court's Order requiring overtime – overtime was somehow "avoidable overtime."

Mills ¶ 10, *but see* Jamison Rec. Dec. ¶¶ 5, 22-23.[12]  A finding of irreparable harm requires a showing

of an irreparable injury that is "neither remote nor speculative, but actual and imminent."  *Freedom*

*Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005).  Yet Defendants offer nothing beyond Mr.

---

[12] And, in order to be "incompatible" with union contracts (Mills Dec. ¶ 6), Defendants would *then* have to not pay some incidental amount of additional overtime.

Mills' speculation that there will be rampant abuse of the 11 days of overtime the Court has ordered,[13] and that such abuse will *then* lead to a bizarre result in the grievance process.  That is not enough.

Protection of constitutional rights always costs *something*.  As the Court already explained, "vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them."  Decision at 75, *citing Watson v. City of Memphis*, 373 U.S. 526, 537 (1963).  The "irreparable harm" identified here is no different from the arguments Defendants already made – and that the Court already rejected – that *any* relief would cause catastrophic consequences for USPS.  *See, e.g.*, ECF No. 22 at 40 ("There is a real risk that entering the requested injunction could counterproductively divert USPS resources and attention to plaintiffs' preferred activities").  The ultimate source of the need for an injunction is Defendants' own acts.  If not for the "multiple managerial failures" (Decision at 83) that led to, among other things, an operations manager telling employees that the Postmaster General's expectation was that "[o]vertime will be eliminated" and that if "you cannot get mail out without OT it will remain for the next day," the Court would not have had to act.  ECF No. 47-1 at 1.  While it would be a better world where USPS management (local and headquarters alike) could be trusted not to unduly curtail overtime around the election, as the Court observed, Defendants "have not provided trusted assurance and comfort that citizens will be able to cast ballots with full confidence that their votes would be timely collected and counted."  Decision at 7-8.  In that context, the fact that the Court's Order erred on the side of caution – rather than trusting Defendants' discretion in applying vague and unsettled standards – can hardly be said to be irreparable harm or an abuse of discretion.

---

[13] It is unclear how Mr. Mills can conclude there will be rampant abuse of 11 days of automatically available overtime, while not acknowledging the possibility that managerial discretion might *also* be abused.

## **CONCLUSION**

For the reasons above, and already stated in the Court's Decision, the Court should deny the motion.

Respectfully submitted,

/s/

_____

J. Remy Green
Jonathan Wallace, *of counsel*
**COHEN&GREEN P.L.L.C.**
1639 Centre Street, Suite 216
Ridgewood, New York 11385
(929) 888.9480 (telephone)
(929) 888.9457 (facsimile)
remy@femmelaw.com

Ali Najmi
**LAW OFFICE OF ALI NAJMI**
261 Madison Avenue, 12th Floor
New York, New York 10016
T: (212) 401-6222
F: (888) 370-2397
ali@najmilaw.com