**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

―――――――――――――――――― x

Mondaire Jones, et al.,
*individually, and on behalf of all others similarly situated,*

              Plaintiffs,

v.

United States Postal Service, et al.,
              Defendants.

―――――――――――――――――― x

Docket No. 20-cv-6516-VM

**DECLARATION OF MARK JAMISON**

COUNTY OF JACKSON    )
                                 ) ss.:
STATE OF NORTH CAROLINA  )

I, MARK JAMISON, being duly sworn, depose and say:

1. I am a natural person, residing in Cullowhee, North Carolina, and I make this Declaration based on my personal knowledge and where applicable, on matters within my experience, training, and professional knowledge.

2. I write this declaration in response to the Declaration submitted by David Mills of the USPS. I also include comments in reference to the exhibits included in the Declaration of Steven J. Kochevar.

3. The Mills declaration is submitted in an attempt "to explain the burden the Court's Order, as currently written would likely place on the Postal Service under our collective bargaining agreements."

4. It fails to do this, offering no specific provisions of the collective bargaining agreements (CBAs) that would be violated by the Court's Order. Without such provisions, it is hard to evaluate the claim that somehow, a CBA problem might arise, and Mr. Mills' explanation does not suggest any real CBA issue to me.

5. The core of Mills' CBA claim seems to be that there will be an issue with people requesting "avoidable overtime", and that the USPS is viewing the overtime under the Order as being not "operationally necessary" (Mills, paragraphs 5 and 11). I think a fair reading of the Court's Order is that overtime during the 11 days this provision is in effect *is* necessary and is not avoidable (even without that reading, it's hard to see how overtime ordered by the Court would be "avoidable").

6. Any reasonable person reading the extant Order would have no cause to assume the Order interfered with any existing contractual provisions.

7. Beyond that, if Mills had an authentic concern that the Order caused CBA issues, the appropriate thing to do would be to reach out to the American Postal Workers Union (APWU), the National Association of Letter Carriers (NALC), and other stakeholders and negotiate a memorandum of understanding. The lack of any description of such efforts here is telling.

8. Moreover, the limited duration of the period where the overtime provisions of the order apply limit any remote potential for abuse. On the other side of the scale, the language in the provision USPS suggests – which incorporates by reference two memos (filed at ECF Nos. 62.1 & 62.3) that provide substantial managerial discretion in approving overtime – will inevitably result in significant abuses in *denying* overtime that would move election mail faster. As I understand it, it is exactly that "business judgment" (paragraph 12) that the Court's Order was intended to keep out of overtime decisions in the 10 days immediately surrounding the election.

9. The language in those two memos is language that provides deeply problematic discretion on a local level. For example, in ECF No. 62-1 under the heading "1. Overtime," the language is overly qualified and subject to a wide variety of local interpretations, particularly with reference to the term "earned work hours."

10. "Earned work hours" is a term the Postal Service uses as a budgeting and cost-control mechanism, which is both anticipatory and aspirational. It functions largely with reference to

overtime-per-mailpiece in the recent past, and caps overtime based on such metrics. It is exactly this kind of language that has lead to aggressive cutting of overtime -- my understanding, for example, is that this is likely the approach employed by Mr. Barrios' supervisor in San Antonio (discussed in the Court's decision at 15).

11. Given the results and determinations of these proceedings with respect to the period when Election Mail will be of the highest priority, I believe the Court's direction needs to be simple, direct, and without qualification to prevent the same kind of endemic misuse of discretion we have already seen from USPS local management -- and the management-by-plausible-deniability from USPS headquarters.

12. Similarly, in the Stand Up Talk dated September 24 (ECF No. 62-2), Defendants continue to disparage "many reports with inaccurate information [...] about Election Mail," which is unnecessarily editorial in nature, and creates unnecessary emphasis on a negative and can (and will) be interpreted to imply disagreement on the part of senior management with the current court orders. In that context, it is extremely likely that -- just as local management already did before -- local management will attempt to read between the lines and do what management *really* wants (and restrict overtime).

13. Without reviewing the full record again, I note that I discussed this kind of wink-and-nod management culture at USPS in my Reply Declaration (ECF No. 38-1, at paragraph 15, "if a particular District Manager interprets that directive to reduce costs as something that will please the bosses up the chain, she may decide to make the reductions more dramatic (X+%) to please them").

14. The notion that the Order would give rise to confusion (paragraph 4) is also, frankly, silly. A reasonable person can read the Order and understand exactly what it means: all overtime requests in a fixed, 10-day period will be approved.

15. In paragraph 4 Mills states, "However, employees of the Postal Service do not request overtime, but are scheduled for it by local management in line with collectively bargained principles and business needs." This is not entirely accurate. Among city carriers, craft employees complete a Form 3996 notifying their supervisor that the existing mail exceeds eight hours and request overtime (Mills, paragraph 4).[1] The salient point however is that local managers have final approval over overtime assignments. Nothing in the order changes this nor suggests that local managers or approving authorities should violate existing contract provisions regarding how overtime is assigned and to whom overtime opportunities are offered. It only takes away local manager's discretion for 10 days in their ability to *deny* overtime.

16. Similarly, the claim that there are any issues with "premium pay" levels under Postal Service regulations is also wrongheaded. Just like any other overtime during the relevant period, such overtime can simply be paid. There is no legal bar to such work – only an increase in what must be paid.

17. Mills claims the Order requires a systemic change. It does not.

18. Much of the balance of Mills' declaration appears to be an argument about why the USPS would prefer not to follow contractual provisions related to the assignment of overtime including requirements to pay premium or differential pay when certain circumstances dictate it. Mills also claims that a multitude of grievances will arise from the Court's Order, but the fact is that in my experience, which included a period as an APWU Steward, the Postal Service regularly violated contractual provisions related to the administration of overtime desired lists and assignment of overtime. The problem is not with the Court's Order but with the Postal Service's inability to consistently follow contract provisions, none of which the Court amends or abrogates. The fact is that it is much more likely that local managers will, based on the ingrained culture of the Postal

---

[1] Available at: https://www.nalc.org/news/the-postal-record/2018/january-2018/document/2018-01_evp.pdf

Service, attempt to limit overtime or flaunt the Court's Order in an attempt to please what that junior manager or supervisor might perceive as a senior manager's true intent. Additionally, since the Postal Service is using several untrained craft employees as temporary supervisors (204Bs) it is likely those employees would be less likely to approve overtime – which *is* a huge problem that risks the right to vote.

19. Mills' claims are empty and specious – and completely speculative. They speak less to a burden imposed by the Court's Order than to a concern about the Postal Service's ability to manage its resources in a way that will result in successfully completing its mission to deliver Election Mail in a timely manner.

20. Mills' claim that the Court's Order as written will result in "a massive waste of the Postal Service's scarce financial resources" is almost laughable given the ten-day limitation of the order.

21. In my experience, while there are (of course), occasionally folks who will abuse any system, the workers in the Postal Service are aware of the national importance of their work and conduct their work with the utmost professionalism. The notion that some significant number of people will abusively request overtime pay is over is unrealistic (particularly when they have to continue to work under the same bosses after the 11-day period).

22. However, after consultation with an APWU friend familiar with day-to-day contract administration and being solicitous in addressing the USPS concerns, I believe the minor issues Mr. Mills raises could also be completely addressed by adjusting the language at issue to read:

> In compliance with applicable collective bargaining agreements, the USPS shall approve all overtime needed for the timely processing and delivery of election mail during the time period beginning October 26, 2020 and continuing through November 6, 2020.

23. And, as I suggested above, it could also be addressed if the Court make an explicit factual finding that, because of the nature of the election and USPS's managerial failures to date, "all

overtime by any USPS employee between the dates of October 26, 2020 and November 6, 2020 is necessary for Post Office operations."

As permitted in 28 U.S.C § 1746, I, Mark Jamison, declare that, under penalty of perjury that the foregoing is true and correct.

Executed On: September 27, 2020

*Mark A. Jamison*
_____
Mark Jamison