```
                                        ┌─────────────────────────────┐
                                        │ USDC SDNY                   │
                                        │ DOCUMENT                    │
                                        │ ELECTRONICALLY FILED        │
                                        │ DOC #:_____        │
                                        │ DATE FILED: 9/29/2020       │
                                        └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MONDAIRE JONES, et al.,              :
                                     :
                    Plaintiffs,      :   20 Civ. 6516 (VM)
                                     :
     - against -                     :   **DECISION AND ORDER**
                                     :
UNITED STATES POSTAL SERVICE, et al.,:
                                     :
                                     :
                    Defendants.      :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

   Plaintiffs Mondaire Jones, Alessandra Biaggi, Chris Burdick, Stephanie Keegan, Seth Rosen, Shannon Spencer, Kathy Rothschild, Diana M. Woody, Perry Sainati, Robert Golub, Mary Winton Green, Marsie Wallach, Matthew Wallach, Mac Wallach, Carol Sussman, and Rebecca Rieckhoff ("Plaintiffs") filed this action against defendants United States Postal Service ("USPS" or "Postal Service"); Louis DeJoy, as Postmaster General ("DeJoy"), and Donald J. Trump, as President of the United States ("President," and together with the Postal Service and DeJoy, "Defendants" or the "Government"). Plaintiffs seek declaratory relief and a preliminary injunction mandating that the Postal Service take certain actions to ensure the timely delivery of their mailed ballots in the upcoming national election. Now before the Court is Defendants' motion for clarification or modification, or, alternatively, a stay of certain terms of the preliminary

injunction that this Court entered on September 25, 2020 (the
"Motion," Dkt. No. 59). For the reasons set forth below, the
Court grants the Motion in part.

## I.      **BACKGROUND**

A.     FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2020, Plaintiffs moved the Court for a
preliminary injunction. The Court held a hearing on September
16, 2020 and heard witness testimony and oral argument. On
September 21, 2020, the Court issued a Decision and Order
granting in part Plaintiffs' motion for a preliminary
injunction and directing the parties to settle an order
consistent with the Court's decision. See Jones v. U.S. Postal
Serv., No. 20 Civ. 6516, 2020 WL 5627002 (S.D.N.Y. Sept. 21,
2020). The September 21, 2020 Decision and Order provided
certain default preliminary injunctive terms scheduled to
take effect on September 25, 2020 in the event the parties
were unable to settle an order. Consistent with the Court's
directive, the parties submitted a joint proposed order on
September 25, 2020. The parties were able to reach agreement
on all but one issue: injunctive terms reflective of the
relief to which Plaintiffs are entitled with respect to USPS's
overtime policies and practices pursuant to the Court's
September 21, 2020 Decision and Order. The parties
accordingly agreed that the default provisions concerning

overtime set forth in the Court's September 21, 2020 Decision and Order would govern, although Defendants would move to clarify, modify, or, alternatively, stay those provisions. (See "Joint Letter Dated September 25, 2020," Dkt. No. 54.) Accordingly, on September 25, 2020, the Court entered an Order adopting the parties' proposed preliminary injunction, including the default provisions regarding overtime, but staying the effect of the default overtime provisions pending a decision on Defendants' then-forthcoming motion. (See "Preliminary Injunction," Dkt. No. 57.)

Specifically, with regard to overtime, Paragraph 3 of the Preliminary Injunction provides that "USPS shall pre-approve all overtime that has been or will be requested for the time period beginning October 26, 2020 and continuing through November 6, 2020." (Id. ¶ 3.) Paragraph 7(f) further requires USPS to explain that directive in a guidance memorandum to all staff. (Id. ¶ 7(f).)

Defendants filed the present Motion on September 26, 2020. In support of the Motion, Defendants submitted additional declarations. (See "Mills Decl.," Dkt. No. 61; "Kochevar Decl.," Dkt. No. 62.) Attached as exhibits to the Kochevar Declaration are recent guidance documents that USPS issued: a September 21, 2020 guidance memorandum sent to managerial staff titled "Clarifying Operational Instructions"

3

("September 21 USPS Instructions," Dkt. No. 62-1); a
September 24, 2020 Stand Up Talk titled "Ready to Deliver
Election Mail for the Nation" ("September 24 Stand Up Talk,"
Dkt. No. 62-2); and a September 25, 2020 guidance memorandum
sent to managerial staff titled "Additional Resources for
Election Mail Beginning October 1" ("September 25 Additional
Resources Memorandum," Dkt No. 62-3). The two guidance
memoranda were previously provided to the Court as part of
the Defendants' September 25, 2020 weekly update.

Plaintiffs filed an Opposition to the Motion on
September 27, 2020, along with additional declarations in
support. (See "Green Decl.," Dkt. No. 63-1; "Jamison Decl.,"
Dkt. No. 63-4.)

## II.  **THE PARTIES' ARGUMENTS**

Defendants' primary objection to Paragraphs 3 and 7(f)
of the Preliminary Injunction is that their terms could be
read as requiring USPS to pre-approve any overtime requested
as to any employee, even if the overtime relating to that
employee would have no bearing on the delivery of Election
Mail. Such a broad reading could, Defendants argue, lead to
financial disaster and administrative and legal difficulties.
Relying on the Mills Declaration, Defendants assert that USPS
does not have an organization-wide request-based system for
approving overtime. Rather, they contend that local

supervisors and managers decide, in real time, whether overtime is necessary and then assign it to employees consistent with mandatory collectively bargained processes.

Defendants submit that the Court did not intend Paragraphs 3 and 7(f) to be interpreted so broadly. According to Defendants' own interpretation, Paragraphs 3 and 7(f) are intended to confirm to USPS employees "that any overtime needed to facilitate the expeditious delivery of Election Mail may, and indeed should, be used and approved." ("Defendants' Memorandum," Dkt. No. 60, at 6.) Defendants maintain that, by asking the Court to confirm their understanding of Paragraphs 3 and 7(f), they are simply requesting a clarification of the scope and interpretation of those terms. They assert that the Court's authority to provide such a clarification is well-established.

Defendants claim that the September 21 USPS Instructions and September 25 Additional Resources Memorandum are consistent with the narrower interpretation of Paragraphs 3 and 7(f). The September 21 USPS Instructions purport to "address any misinformation and clear up any confusion about the status of the Postal Service's practices concerning Overtime" and various other issues. The memorandum begins by stating that "[t]he number one priority for Postmaster General DeJoy and the Postal Service between now and Election

Day is the secure and on-time delivery of the nation's election mail." (September 21 USPS Instructions at 1.) Regarding overtime, the memorandum states:

> Postal Service Headquarters has not imposed, and will not impose, any nationwide changes that ban or newly restrict overtime prior to Election Day. Overtime use has not been banned, nor have any caps been placed on overtime hours. Front-line supervisors and managers will continue to schedule employees' work hours and oversee employee overtime, including planning for any needed prescheduled overtime, directing unscheduled overtime, and approving employee requests for overtime work based on the workload. Supervisors will continue to set schedules with the goal of matching the expected earned work hours with the appropriate staffing. Management will continue to monitor the use of work hours and overtime so that it can identify and address problems that may be the cause of work not being performed within expected work hours or managed inefficiently.
>
> The Postal Service's consistent practice in the past is to use justified and approved overtime hours where needed to deliver the mail on time, and that practice will continue. Overtime has been, and will continue to be, utilized as necessary to fulfill our mission. As will be discussed in more detail in the forthcoming guidance regarding the use of additional resources starting on October 1, use of overtime necessary to expeditiously move Election Mail should be approved.

(Id.)

The September 25 Additional Resources Memorandum similarly begins by stating that "the Postmaster General has reiterated that [USPS's] number one priority is the proper handling and timely delivery of all Election Mail, especially ballots." (September 25 Additional Resources Memorandum at 1.) The memorandum provides information concerning

"additional resources" that "are being made available for District Managers, Postmasters, Division Directors, and Plant Managers to utilize, as they determine, to support the timely and expeditious handling of the increased volume of Election Mail." (Id.) It provides that personnel are "authorized and instructed to use these additional resources to ensure that all Election Mail is prioritized and delivered on time." (Id.) The memorandum authorizes additional processing resources (e.g., advancement of Election Mail entered as Marketing Mail and expanded processing windows on letter and flat sorting equipment), transportation resources (e.g., extra trips from all points of processing and delivery), and extra delivery and collection trips. (Id. at 1-2.) Regarding overtime, the Additional Resources Guidance instructs that "[o]vertime is authorized and instructed to be used to support these additional resources and the completion of the additional work, as needed." (Id. at 2.) The memorandum further provides that "consistent with our practices in past election cycles, the use of extraordinary measures beyond our normal course of operations" -- such as "expedited handling, extra deliveries, and special pickups" to deliver blank and completed ballots -- are "authorized and expected to be executed by local management between October 26 and November 24, to accelerate

the delivery of ballots, when the Postal Service is able to identify the mailpiece as a ballot." (Id.)

To resolve the ambiguity surrounding the scope and meaning of the Preliminary Injunction's overtime requirements, Defendants propose that the Court clarify Paragraph 3 of the Preliminary Injunction as providing that:

> Overtime is authorized and instructed to be used to facilitate the timely delivery of Election Mail, consistent with the September 21 USPS Instructions and the September 25 Additional Resources Memorandum.

(Defendants' Memorandum at 5-6.) Defendants similarly request that the Court clarify that Paragraph 7(f) requires USPS to "[e]xplain that overtime is authorized and instructed to be used as described in Paragraph 3 of this Order." (Id. at 6.)

The Government further argues that, if the Court construes its request as seeking something more than a clarification, then Federal Rule of Civil Procedure 60(b) ("Rule 60(b)") applies and entitles the Government to a modification. Defendants observe that Rule 60(b) authorizes the Court to modify a preliminary injunction where extraordinary circumstances exist or where the injunction would cause an extreme and unwarranted hardship. The Government contends that the upcoming election is an extraordinary circumstance and that the financial,

administrative, and legal problems described above constitute
an extreme and undue hardship.

In the event the Court declines to clarify or modify the
Preliminary Injunction, Defendants ask the Court to stay
those provisions until the Solicitor General determines
whether to appeal. Defendants contend that an argument that
Paragraphs 3 and 7(f) of the Preliminary Injunction are
overbroad would likely succeed on appeal. In light of the
financial, administrative, and legal issues described above,
the Government additionally asserts that it can demonstrate
irreparable harm. Further, according to Defendants, any stay
would not substantially injure Plaintiffs. Finally, the
Government argues that, by preventing administrative and
legal confusion and difficulties, a stay would benefit the
public interest.

In response, Plaintiffs assert that Defendants' motion
should be denied in its entirety. Incorporating the September
21 USPS Instructions and the September 25 Additional
Resources Memorandum into the terms of the Preliminary
Injunction would be, in Plaintiffs' view, inconsistent with
the Court's September 21, 2020 Decision and Order. Plaintiffs
explain that the September 21 USPS Instructions and the
September 25 Additional Resources Memorandum leave local
managers with substantial discretion to determine when

overtime is necessary and, consequently, authorized. Plaintiffs argue that, in light of the organizational confusion the Court previously recognized and Defendants' admissions that certain local managers had exercised poor judgment, such an approach will not result in the uniform treatment of Election Mail that the Constitution requires.[1] Plaintiffs further contend that incorporating the September 21 USPS Instructions and the September 25 Additional Resources Memorandum into the terms of the Preliminary Injunction would introduce unmanageable standards and undefined terms into the Preliminary Injunction.

According to Plaintiffs, Paragraphs 3 and 7(f) of the Preliminary Injunction are not lacking in clarity. In their view, the Court has clearly directed that all overtime is approved for a 10-day period surrounding Election Day. Plaintiffs further contend that Defendants' objection to the language of Paragraph 3 is untimely because Plaintiffs proposed this language in their September 2, 2020 Notice of Motion for Injunctive Relief, giving Defendants the opportunity to raise specific objections concerning the

---

[1] Relatedly, Plaintiffs suggest that, by reaffirming USPS's commitment to certain cost-cutting efforts, the September 21 USPS Instructions and the September 25 Additional Resources Memorandum will discourage local managers from deeming overtime necessary to the timely delivery of Election Mail.

language prior to the issuance of the September 21, 2020
Decision and Order.

Plaintiffs argue that Defendants' motion, though couched
as a motion for clarification or modification, is, in effect,
a motion for reargument and should be assessed under the
standards for such motions, including Local Rule 6.3, which
prohibits the filing of affidavits unless directed by the
Court and requires the movant to identify matters or
controlling law the Court overlooked. Plaintiffs argue that
Defendants do not meet this standard because their motion
relies on newly introduced facts and arguments, rather than
matters previously raised that the Court overlooked.

Plaintiffs also contend that the financial,
administrative, and legal harms that Defendants claim they
may suffer are purely speculative. Plaintiffs insist that
Defendants' theory of harm rests on an unlikely series of
events -- that employees will abusively request overtime over
the 11-day period, that this will trigger automatic
entitlement to overtime among other employees based on union
contracts, and that the cost of this overtime will financially
ruin USPS. Thus, because Defendants have not shown that they
will likely suffer undue harm, Plaintiffs submit that they
are not entitled to a modification under Rule 60(b) or a stay
of the contested provisions of the Preliminary Injunction.

Plaintiffs offer additional reasons Defendants are not entitled to a stay. For one, Plaintiffs contend that, given the impending Election, any delay -- in particular, the delayed issuance of the Guidance Memorandum contemplated in the Preliminary Injunction, which is intended to cure non-uniformity among local practices -- would cause Plaintiffs to suffer prejudice. Next, Plaintiffs argue that Defendants cannot demonstrate a likelihood of success on appeal because their arguments regarding the language of Paragraph 3 were not raised in their Opposition to Plaintiffs' motion for a preliminary injunction and are not in the record. Additionally, Plaintiffs observe that the Government does not explain how the Court erred in making the findings of fact regarding USPS's non-uniform practices and mismanagement, which led the Court to issue an order that divested local managers of discretion.

Also of note, Plaintiffs introduce a slide from a presentation given at the July 10, 2020 teleconference with DeJoy that states, "NO EXTRA TRANSPORTATION" and "NO LATE TRANSPORTATION." ("Green Decl. Ex. 1," Dkt. No. 63-2, at 9.) Plaintiffs contend that this document undermines the testimony of witnesses at this Court's preliminary injunction hearing who testified that at the July 10 teleconference,

USPS headquarters had not communicated a ban on late and extra trips.

### III. <u>DISCUSSION</u>

The parties dispute whether the Court should deem Defendants' request a motion for clarification, modification, or reconsideration. For the reasons discussed below, the Court construes the motion as seeking a clarification and in part grants the requested relief.

A.   <u>APPLICABLE LEGAL STANDARD</u>

It is "undoubtedly" within the district court's power to "issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent unwitting contempt." <u>IGT v. High 5 Games, LLC</u>, No. 17 Civ. 9792, 2018 WL 2939032, at *3 (S.D.N.Y. Apr. 17, 2018) (quoting <u>One11 Imports Inc. v. NuOp LLC</u>, No. 16 Civ. 7197, 2016 WL 7338422, at *1 (S.D.N.Y. Dec. 19, 2016)) (internal quotation marks omitted) (issuing clarification order to resolve "differing interpretations" of the court's preliminary injunction); <u>see also</u> <u>Regal Knitwear Co. v. NLRB</u>, 324 U.S. 9, 15 (1945) (explaining defendants "may petition the court granting [an injunction] for a modification or construction of the order" and "such relief would be in the sound discretion of the court"). Clarifications of previously issued orders "add certainty to an implicated party's efforts

to comply with the order and provide fair warning as to what future conduct may be found contemptuous," and "may be obtained on motion or made <u>sua</u> <u>sponte</u> by the court." <u>N.A. Sales Co. v. Chapman Indus. Corp.</u>, 736 F.2d 854, 858 (2d Cir. 1984).

In seeking relief on the basis that Paragraphs 3 and 7(f) could be construed as requiring USPS to approve requests for overtime that have no bearing on the timely delivery of Election Mail, Defendants essentially seek confirmation of the scope and meaning of the Preliminary Injunction's terms. Courts routinely treat requests of this type as motions for clarification. For example, in <u>A.V. by Versace, Inc. v. Gianni Versace, S.p.A.</u>, the court construed a similar motion, though brought as a motion for modification under Rule 60(a), as a request for clarification. <u>See</u> 126 F. Supp. 2d 328, 334-35 (S.D.N.Y. 2001). There, plaintiff sought confirmation that a provision in a preliminary injunction applied extraterritorially, although the provision at issue included the limiting phrase "in the United States of America". <u>Id.</u> at 332-34. Plaintiff argued that the inclusion of the phrase "in the United States of America" in paragraph 8 was "a typographical error" and moved for modification under Rule 60(a). <u>Id.</u> at 333-34. The court determined that defendant was "essentially seeking clarification of the injunction's

extraterritorial scope," and, after considering the other provisions of the preliminary injunction and comments the court had made on the record that were indicative of the injunction's purpose, the court clarified that the injunction *did* apply extraterritorially. Id. at 335-36. In reaching this conclusion, the court determined that this "appropriate guidance" rendered a ruling pursuant to Rule 60(a) "unnecessary." Id. at 334.

Likewise, in One11 Imports, the court issued a clarification order where the "parties disagree[d] about the scope of the Court's preliminary injunction." 2016 WL 7338422, at *1. Specifically, the plaintiff had been instructing nonparties that they were subject to the preliminary injunction, and the defendant sought confirmation that the injunction did not actually bind nonparties. Id. at *1-3. The defendant also sought the court's confirmation of whether the injunction permitted it to continue using a particular mark. Id. at *1. Under those circumstances, the court applied the legal standard for clarification motions to assess the defendants' requests. Id. The court ultimately clarified that the injunction did not apply to nonparties, enjoined the plaintiff from representing otherwise, and confirmed that the defendant could not use a particular mark. Id. at *3.

That the relief Defendants seek is appropriately characterized as a clarification is further confirmed by its similarity to relief courts have granted during the pendency of preliminary injunction appeals. In that context, a district court's power is limited to maintaining the status quo. See Broker Genius, Inc. v. Seat Scouts LLC, No. 17 Civ. 08627, 2019 WL 5203474, at *3 (S.D.N.Y. Sept. 23, 2019). Even with such limited authority, district courts often clarify the intended breadth of their injunctions. For instance, in Eli Lilly & Co. v. Arla Foods Inc., the district court agreed with the defendant that a preliminary injunction was overly broad. No. 17 Civ. 703, 2017 WL 5244681, at *2 (E.D. Wis. July 18, 2017), aff'd, 893 F.3d 375, 384 (7th Cir. 2018). The injunction's purpose was to restrain defendant from making false or misleading statements about a particular product. Id. However, the injunction effectively prohibited the defendant from "using all portions of the [] advertisements [attached to the complaint], including those that ha[d] nothing to do with its statements about [the product]." Id. Accordingly, despite the limitations on its jurisdiction, the district court "clarif[ied] the scope of the injunction." Id.

Although Plaintiffs argue that the Court cannot consider Defendants' new affidavits on a motion for reargument,

Plaintiffs do not explicitly argue that consideration of such materials is inappropriate on a motion to clarify a preliminary injunction. Cf., e.g., IGT, 2018 WL 2939032, at *1 (considering newly submitted materials in clarification order); Harris v. Fairweather, No. 11 Civ. 2152, 2011 WL 4538436, at *1 (S.D.N.Y. Sept. 29, 2011) (same). Nonetheless, the Court declines to consider the newly submitted evidence in this case, as it is not necessary to and would not alter the Court's ultimate decision to clarify its preliminary injunction.

B.   APPLICATION

Relying on the facts presented on the record of Plaintiffs' motion for preliminary injunction, and without reference to the newly introduced facts, the Court agrees with Defendants that the language of Paragraphs 3 and 7(f) warrants clarification. Federal Rule of Civil Procedure 65(d)(1) ("Rule 65(d)(1)") requires that "[e]very order granting an injunction and every restraining order must: . . . (B) state its terms specifically; and (C) describe in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required." Rule 65(d)(1).

Plaintiffs' claims and the Court's September 21, 2020 Decision and Order focused not on the Postal Service's

policies and operations generally but on the extent to which USPS practices bear on its handling of Election Mail. Plaintiffs had asserted that USPS's practices infringed their First and Fifth Amendment rights to vote and have their votes counted equally. The Court found that multiple managerial failures yielded substantial delays and unwarranted disparities in local postal practices with respect to the processing and delivery of Election Mail. Based on those factual findings, the Court concluded that Plaintiffs demonstrated a clear and substantial likelihood of success on the merits of their First and Fifth Amendment claims. Nonetheless, the Court agreed with Defendants that many of the injunctive terms Plaintiffs proposed were overbroad. See Jones, 2020 WL 5627002, at *27.

Accordingly, the default terms that the Court provided in its September 21, 2020 Decision and Order were significantly narrower and more targeted than those Plaintiffs proposed in their September 2, 2020 Notice of Motion for Injunctive Relief. Even a cursory comparison of Plaintiffs' proposed terms with the default terms the Court prescribed makes clear that the Court devoted substantial effort to crafting default terms that precisely tracked the constitutional injuries at issue in this case -- terms designed to remedy defects in USPS's handling of Election

Mail, and not conditions relating to Postal Service operations more generally. In this context, the default overtime provision, which called for USPS to approve all overtime and not simply overtime that facilitated the delivery of Election Mail, stands out, prompting reasonable questions and ambiguities concerning what the Court's injunctive relief order requires for USPS compliance.

By providing that USPS shall pre-approve "all overtime that has been or will be requested for the time period beginning October 26, 2020 and continuing through November 6, 2020," the Order does not state its terms with sufficient specificity and detail to convey the Court's intent to narrow the scope of the injunctive relief. See Rule 65(d)(1). The Court agrees with the Government's argument that, as now written, this provision could be construed to require USPS to approve all overtime requests, regardless of whether the overtime would relate to ensuring the delivery of Election Mail. Consequently, such an interpretation would be at odds with the Court's express intent to craft default terms focused on improving USPS's handling of Election Mail, as distinct from all mail.

Accordingly, the Court clarifies that Paragraph 3 of the Preliminary Injunction provides that USPS shall authorize, and instruct, overtime to be used to ensure the timely

delivery of Election Mail. The Court further clarifies that Paragraph 7(f) requires USPS, in its forthcoming proposed guidance memorandum, to explain that overtime is authorized and instructed to be used as described in Paragraph 3 of the Preliminary Injunction as clarified herein.

Plaintiffs are correct that the Court's September 21, 2020 Decision and default terms focused on preventing injuries arising from problematic disparities in local practices, including by limiting the discretion of local management. The clarification provided herein calls for USPS to approve overtime that will ensure the timely delivery of Election Mail pursuant to uniform nationwide standards that minimize local discretion concerning whether to authorize overtime.

The Court cannot adopt the exact language of Defendants' proposed clarification, which would incorporate by reference into the Preliminary Injunction the September 21 USPS Instructions and September 25 Additional Resources Memorandum. Even assuming that these documents are perfectly clear and consistent with the Court's September 21, 2020 Decision and Order, incorporating them by reference into the Preliminary Injunction would violate Rule 65(d)(1). See Rule 65(d)(1) (requiring that "[e]very order granting an injunction and every restraining order must: . . . describe

20

in reasonable detail -- and not by referring to the complaint or other document -- the act or acts restrained or required"); City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 146 (2d Cir. 2011) (relying on Rule 65(d)(1)(C) to vacate an injunction that "prohibit[ed] certain conduct by reference to [an] amended complaint"); Eyewonder, Inc. v. Abraham, 293 F. App'x 818, 820 (2d Cir. 2008) (rejecting the argument that incorporation of an external document was harmless because the referenced document was "clear" and "easily understood" and explaining that the court is not "flexible" about applying Rule 65(d)(1)).

Because the Court determines that the clarification standard applies and concludes, upon its application, that Paragraphs 3 and 7(f) of the Preliminary Injunction warrant clarification, the Court need not address Defendants' alternative requests for a modification or stay, or Plaintiffs' arguments regarding reconsideration.[2] See, A.V. by Versace, Inc., 126 F. Supp. 2d at 330 (dismissing Rule 60(a) motion for modification of a preliminary injunction order as "moot" where court instead clarified unclear and ambiguous language in the order).

---

[2] The Court is not persuaded that Defendants' request is nothing but a disguised motion for reconsideration. Notably, the cases Plaintiffs cite for this proposition do not concern preliminary injunctions. (See Plaintiffs' Opposition at 7-8.)

The Court notes, however, that construing Defendants' request as a motion for modification would yield the same result. As an initial matter, although Defendants seek modification of this Court's order under Rule 60(b), the Court would have to consider Defendants' motion pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"). A preliminary injunction is not a final judgment, and therefore, Rule 60(b) is inapplicable; rather, a motion to modify a preliminary injunction order is properly made pursuant to Rule 59(e), which allows for alterations of appealable judgments. See Am. ORT, Inc. v. ORT Israel, No. 07 Civ. 2332, 2009 WL 233950, at *3 n.2 (S.D.N.Y. Jan. 22, 2009).

Under Rule 59(e), modification is appropriate in certain situations, including when the movant has demonstrated "the need to correct a clear error." Id. at *3 (internal quotation marks and citation omitted) (alterations in original). Here, had the Court focused more sharply on the unnecessary breadth of the overtime provisions of its preliminary injunction, the Court would undoubtedly have concluded that, for the reasons provided above those provisions were not appropriately tailored to remedy the harm shown. Accordingly, modification would be warranted under Rule 59(e).

## IV.   ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that Defendants' motion (Dkt. No. 59) for clarification or modification, or, alternatively, a stay of certain terms of the Preliminary Injunction (Dkt. No. 57) is **GRANTED** in part; and it is further

**ORDERED** that Paragraph 3 of the Preliminary Injunction is hereby clarified as requiring that USPS shall authorize, and instruct, overtime to be used for the time period beginning October 26, 2020 and continuing through November 6, 2020 to ensure the timely delivery of Election Mail; and it is further

**ORDERED** that Paragraph 7(f) of the Preliminary Injunction is hereby clarified as requiring that USPS explain that overtime is authorized and instructed to be used as described in Paragraph 3 of the Preliminary Injunction and as clarified herein.

**SO ORDERED.**

Dated:     New York, New York
           29 September 2020

                              Victor Marrero
                                U.S.D.J.