

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street, 3rd Floor*
*New York, New York 10007*

October 8, 2020

## BY ECF AND ELECTRONIC MAIL

Hon. Victor Marrero, United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007-1312

      Re:    *Jones* et al. *v. United States Postal Service* et al., No. 20 Civ. 6516 (VM)

Dear Judge Marrero:

      This Office represents the defendants in the above-referenced case. We write respectfully in connection with the Court's Order issued on October 5, 2020, directing the parties to meet and confer regarding their respective proposals for a Supplemental Guidance Document to be circulated to United States Postal Service ("USPS") managerial employees. ECF No. 72; *see also* ECF No. 57 ("PI Order") ¶ 7.[1] In compliance with the Order, the parties met and conferred regarding USPS's original proposal (ECF No. 70-1) and Plaintiffs' redline thereof (ECF No. 71-1) ("Plaintiffs' Redline"). As represented in Plaintiffs' letter filed earlier this evening, ECF No. 76, Government counsel did not have authority to provide a revised draft to Plaintiffs by the time Plaintiffs wished to file an update letter to the Court. As also previewed in that letter, Defendants have since obtained that authority, and provide a new version of the Supplemental Guidance Document herewith, as Exhibits A and B (clean and track changes versions, respectively), for the Court's consideration.

      As reflected in a the attached, USPS has accepted as many of Plaintiffs' suggested modifications to the Supplemental Guidance Document as USPS reasonably believes it can, without causing confusion in its workforce or a disruption of delivery operations less than a month before the November election. Among other, smaller changes it has incorporated, USPS has accepted Plaintiffs' requests to: (1) address the Guidance to EAS employees (which consists of tens of thousands of employees); (2) explain that ballots must not be detained or held for postage payment; (3) provide a specific window around Election Day when ballots may be manually separated and moved by air or according to Priority Mail Express delivery standards regardless of paid class; (4) incorporate a substantial portion of the September 25, 2020, Additional Resources Memo essentially verbatim; (5) post a copy of the Supplemental Guidance Document on the USPS intranet; (6) prepare a Stand-Up Talk for USPS employees discussing

---

[1] The information contained in this letter has been provided to this Office by the United States Postal Service, to be provided to the Court to comply with Defendants' obligations under the Court's Orders in this case.

the Supplemental Guidance Document; and (7) include the email addresses of individuals to be contacted with questions (on the version of the Supplemental Guidance Document distributed within USPS, but not the version publicly filed).[2]

However, there are still numerous differences between Defendants' revised proposal, attached, and Plaintiffs' Redline, which USPS addresses briefly herein. In short, certain elements of Plaintiffs' Redline either are inconsistent with directives that this Court has issued, or are unwarranted under those directives; refer to or are derived from other courts' orders, and would risk interference with other litigations; or baselessly seek significant injunctive relief that the Court has never ordered in this case, with no showing that such relief is warranted or practicable.

1. <u>Suggested Added Provisions that Are Unwarranted Under, or Inconsistent With, this Court's Directives.</u> Plaintiffs seek language in the Supplemental Guidance Document that is unwarranted under this Court's Order regarding overtime relief (ECF No. 66) (the "Overtime Order"), as well as the mutually negotiated PI Order, which states explicitly that the Supplemental Guidance Document will work in concert with USPS guidances previously issued on September 21 and September 25, 2020. PI Order ¶ 7; *see also* ECF Nos. 70-2 ("Clarifying Operational Instructions"), 70-3 ("Additional Resources Memo"). Plaintiffs' suggested redlines on this issue would cause significant confusion within USPS regarding recently issued guidance, which was issued in part in an effort to comply with other court orders.

Specifically, Plaintiffs request language "rescinding" the portions of those two documents that discuss overtime, on the theory that any reference to overtime that is "needed" or "necessary" is contrary to the Overtime Order. *See, e.g.*, Plaintiffs' Redline at 4. This assertion is incorrect. USPS's proposed Supplemental Guidance Document language regarding overtime, including its references to the Clarifying Operational Instructions and the Additional Resources Memo, is consistent with the Overtime Order, in which this Court provided a clarification that "calls for USPS to approve overtime that will ensure the timely delivery of Election Mail." Overtime Order at 20. This is entirely consistent with USPS's prior instructions that personnel should approve "overtime necessary to expeditiously move Election Mail" (Clarifying Operating Instructions at 1), and that "[o]vertime is authorized and instructed to be used to support" USPS's additional Election resources "as needed" (Additional Resources Memo at 2); and with USPS's suggested Supplemental Guidance language that "[o]vertime, including penalty overtime, is authorized and instructed to be used to facilitate the timely delivery of Election Mail." *See* Ex. A at 4.

On the other hand, piecemeal rescission of portions of the two recent guidance documents is not only unnecessary, but would also sow significant confusion among managers and the

---

[2] In addition, in response to Plaintiffs' concerns regarding the reporting of violations of Election Mail policies and practices, USPS has an existing reporting path along which violations that are not resolved locally would be escalated, potentially to the Headquarters level if necessary. Defendants do not believe this reporting "tree" needs to be directly reproduced in the Supplemental Guidance Document, but Government counsel can discuss it with Plaintiffs' counsel or the Court.

workforce they are responsible for overseeing.[3]  Plaintiffs have been aware of the Clarifying Operational Instructions and the Additional Resources Memorandum since they were issued weeks ago, and have never directly challenged them; indeed, as already mentioned, the PI Order expressly contemplates their continuing force as governing USPS policy documents.  *See* PI Order ¶ 7.  Moreover, the Clarifying Operational Instructions were issued in part to assist the field in carrying out the directives of the preliminary injunction order in *Washington v. Trump*, No. 1:20-CV-03127-SAB (E.D. Wash.) (ECF No. 81), and yet another court has explicitly *ordered* USPS to "comply with the 'Clarifying Operational Instructions' issued September 21, 2020."  *See Pennsylvania v. DeJoy*, No. 20-4096 (E.D.Pa.) (ECF No. 63) ("*Pennsylvania* Order") ¶ 3.  Plaintiffs' proposal thus threatens to subject USPS to inconsistent, incompatible court-imposed obligations less than four weeks before Election Day.

Further relating to overtime, Plaintiffs ask for new language and guidance regarding overtime for which[4] Plaintiffs have never previously advocated, and that Plaintiffs did not request during litigation of Defendants' motion for clarification.  *See* Plaintiffs' Redline at 4-5 (seeking, *e.g.*, to expand the Overtime Order to include "overtime for . . . facially non-Election Mail related purpose[s]" if it "would free other resources that would accelerate delivery of Election Mail," and overtime "to achieve ordered service standards"[5]).  The Court considered Plaintiffs' arguments in opposition to clarification, and Plaintiffs have waived any argument that they did not raise at the appropriate time.  Moreover, even setting waiver aside, Defendants' proposed Supplemental Guidance Document appropriately incorporates the language ordered by the Court in the Overtime Order, *see* Ex. A at 4, and—as explicitly contemplated by the PI Order—refers back to the Clarifying Operational Instructions and the Additional Resources Memo to ensure that the field understands how all of those documents work together to set forth USPS policy.

---

[3] For example, Plaintiffs suggest the following mandatory yet virtually incomprehensible and unimplementable management "guidance" language, which would inevitably risk creating substantial uncertainty within the USPS workforce about their marching orders for the November election: "To the extent any prior direction – for example, in the [Clarifying Operational Instructions] or the [Additional Resources Memo] – is inconsistent with this memorandum, you should disregard the prior instructions.  However, to the extent those instructions are not contradicted by anything in this document, they remain in effect."  Plaintiffs' Redline at 1.

[4] The Court also should not accept Plaintiffs' suggested insertion regarding "targeted reductions in workhours," which is unrelated to any element of the PI Order in this case, but seems to relate to a component of the *Pennsylvania* Order that addresses "work hours reduction targets" and a number of overtime issues.  *See Pennsylvania* Order ¶ 4(d).  That portion of the *Pennsylvania* Order, among others, is the subject of a pending motion for clarification.  *See Pennsylvania v. DeJoy*, ECF No. 66.

[5] Plaintiffs mischaracterize this provision of the PI Order, which did not, contrary to Plaintiffs' assertion, "order[] the Postal Service to achieve an on-time score of 93.88%."  Plaintiffs' Redline at 5.  The Court did not issue that directive; and Defendants have complied with the relevant PI Order provision.  *See* PI Order ¶ 4; ECF No. 67.  USPS's service performance is the subject of a separate dispute in this case.  *See* ECF Nos. 73-74.

  2. <u>Suggested Added Provisions Relating to Late and Extra Trips that Risk Interference with Other Court Orders and Ongoing Litigation</u>.  In addition to Plaintiffs' proposed modifications to USPS's guidance discussed above, Plaintiffs suggest other language derived not from any development in this case, but rather seemingly aimed at enshrining different portions of the *Pennsylvania* Order relating to late and extra trips and to pertinent guidelines that USPS Vice President Robert Cintron issued in July 2014.  *See* Plaintiffs' Redline at 4 (purporting to introduce new guidelines for when late and extra trips may be taken, and suggesting "rescission" of, among other things, the Cintron guidelines); *Pennsylvania* Order ¶¶ 4(b), (c); ECF No. 33-2 (Cintron guidelines).  Those portions of the *Pennsylvania* Order are among the subjects of the Government's pending motion for clarification (and additional supplemental declarations from Robert Cintron) in the *Pennsylvania* case.  *See Pennsylvania v. DeJoy*, ECF Nos. 66, 66-5, 66-5.  As the Government argues in that case, "the act of issuing *any* further guidance [relating to late and extra trips] at this juncture may create confusion given all of the new guidance being distributed."  *Pennsylvania v. DeJoy*, ECF No. 66 at 11.  The Court should not interfere with the *Pennsylvania* court's consideration of the Cintron guidelines, and most importantly, should avoid risking further confusion regarding late and extra trips.

  3. <u>Suggested Added Provisions Seeking New Injunctive Relief, Without Any Showing That the Relief Is Warranted or Practicable</u>.  Lastly, Plaintiffs attempt to import entirely new, significant injunctive relief into this case.  For example, Plaintiffs ask the Court to install an "independent monitor" with the authority to, among other things, "give local USPS managers orders" (Plaintiffs' Redline at 5); create a new, unelaborated yet strict "violation" policy relating to the use of extraordinary measures to facilitate the delivery of Election Mail, when the Additional Resources Memo makes clear that the appropriate and most effective deployment of such measures is to be determined according to the judgment and discretion of local managers (*id.* at 2; Additional Resources Memo at 1); change dates already imposed by the PI Order, and/or set new entirely dates (*e.g.*, Plaintiffs' Redline at 4, altering paragraph 7(c) of the PI Order; *id.* at 2 (creating new time frames relating to late and extra trips, including the vague phrase "and through the state-appropriate number of days after Election Day")); and impose new obligations on USPS International Service Centers, which have not previously been a subject of this litigation (*id*. at 2).

  This is neither the appropriate time, nor is a *Supplemental* Guidance Document the appropriate mechanism, to seek these entirely new, significant injunctions.  USPS's focus now is and must be on service and on the expeditious handling of Election Mail, and Defendants respectfully submit that no further, novel relief should be ordered at this late time.  Doing so would create uncertainty in the field and could risk disrupting USPS's operations at a critical time.

* * *

  We thank the Court for its consideration of these matters.

        Respectfully,

        AUDREY STRAUSS
        Acting United States Attorney for the
        Southern District of New York
        *Attorney for Defendants*

By:  /s/ Rebecca S. Tinio_____
      REBECCA S. TINIO
      STEVEN J. KOCHEVAR
      Assistant United States Attorneys
      86 Chambers Street, Third Floor
      New York, New York 10007
      Tel.: (212) 637-2774/2715
      E-mail: rebecca.tinio@usdoj.gov
              steven.kochevar@usdoj.gov