```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MONDAIRE JONES, et al.,            :
                                   :
               Plaintiffs,         :    20 Civ. 6516 (VM)
                                   :
     - against -                   :    DECISION AND ORDER
                                   :
UNITED STATES POSTAL SERVICE, et al.,:
                                   :
                                   :
               Defendants.         :
----------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/9/2020

**VICTOR MARRERO, United States District Judge.**

Plaintiffs Mondaire Jones, Alessandra Biaggi, Chris Burdick, Stephanie Keegan, Seth Rosen, Shannon Spencer, Kathy Rothschild, Diana M. Woody, Perry Sainati, Robert Golub, Mary Winton Green, Marsie Wallach, Matthew Wallach, Mac Wallach, Carol Sussman, and Rebecca Rieckhoff ("Plaintiffs") filed this action against defendants United States Postal Service ("USPS" or "Postal Service"); Louis DeJoy, as Postmaster General ("DeJoy"), and Donald J. Trump, as President of the United States ("President," and together with the Postal Service and DeJoy, "Defendants" or the "Government"). (See "Amended Complaint," Dkt. No. 36.) Plaintiffs sought declaratory relief and a preliminary injunction mandating that the Postal Service take certain actions to ensure the timely delivery of their absentee ballots in the upcoming national elections being held November 3, 2020. (See "Motion," Dkt. No. 19-1; "Notice of Motion," Dkt. No. 19.)

1

On September 2, 2020, Plaintiffs moved the Court for a preliminary injunction. On September 21, 2020, the Court issued a Decision and Order granting in part Plaintiffs' motion for a preliminary injunction and directing the parties to settle an order consistent with the Court's decision. See Jones v. U.S. Postal Serv., No. 20 Civ. 6516, 2020 WL 5627002 (S.D.N.Y. Sept. 21, 2020). Consistent with the Court's directive, the parties submitted a joint proposed order on September 25, 2020.

The Court entered an order adopting the parties' proposed terms on September 25, 2020. (See "Preliminary Injunction," Dkt. No. 57 ¶ 7.) In response to a motion by the Government for clarification, the Court issued an order on September 29, 2020 to clarify certain terms of the Preliminary Injunction. (See "Clarification Order," Dkt. No. 66.) Specifically, the Court clarified that Paragraph 3 of the Preliminary Injunction does not require USPS to approve all overtime; rather, it requires USPS to "authorize, and instruct, overtime to be used, for the time period beginning October 26, 2020 and continuing through November 6, 2020 to ensure the timely delivery of Election Mail." (Id. at 23.)

Consistent with the terms of the Preliminary Injunction, the Government submitted an update to the Court on October 2, 2020 that included data on USPS's performance from September

2

19, 2020 through September 25, 2020. (See "October 2 Update," Dkt. No. 68.)

Now before the Court are letters exchanged between the parties regarding whether, in light of the data in USPS's October 2 Update, the Court should hold a conference to discuss the need for further relief and order USPS to provide the Court with data in a more expedited manner.

In their October 6, 2020 letter (Dkt. No. 73), Plaintiffs seek relief from this Court to address the recent, drastic decline in USPS service performance as reflected by the October 2 Update. Plaintiffs indicate that they attempted to resolve the related issues with Defendants before making the present motion, but Defendants disagreed on the scope of their court-ordered obligations and the practicality and appropriateness of the relief requested. Plaintiffs point out that the national on-time score for First Class mail dropped nearly 5 points, and highlight even greater drops in particular areas of the country, including the Mid-Carolinas, Philadelphia, Michigan, and Florida, among others. Plaintiffs argue that these significant dips in service call into question Defendants' compliance with the Preliminary Injunction, which directed them to undertake a good faith effort to restore their service scores to the highest levels previously achieved in 2020. (See Dkt. No. 57 ¶ 4.) Plaintiffs

3

insist that it is within this Court's authority to order any relief necessary to enforce its prior order, and they request that the Court consider further relief here, in light of the dramatic dips in service which, in Plaintiffs' view, raise constitutional concerns. As examples, Plaintiffs suggest the Court direct Defendants to use overtime for nonelection mail or appoint an independent monitor to oversee USPS's compliance with the Preliminary Injunction. Plaintiffs also request that the Court order Defendants to produce data closer to real time. They lastly propose a conference before the Court to address these issues.

In their response letter dated October 8, 2020 (Dkt. No. 78), Defendants argue that they have complied and continue to comply with the Preliminary Injunction. Defendants contend that the Preliminary Injunction does not require them to achieve any particular on-time overall performance score, and instead focuses on Election Mail. Thus, they argue, any order regarding overall scores would be inappropriate. Defendants maintain that they have made good faith efforts to implement the steps necessary to improve on-time scores as directed, but numerous challenges have undermined these efforts, including the pandemic, natural disasters, and the Labor Day holiday, as examples. According to Defendants, USPS's responses to these obstacles are not related exclusively to

4

Election Mail and should not, therefore, be the subject of any further order from this Court. Defendants explain that the next weekly update will reflect increased service performance levels, further rendering any Court intervention unnecessary at this stage. Regarding Plaintiffs' proposed relief, Defendants argue that the Court has expressly declined to require USPS to authorize overtime unrelated to Election Mail, and appointing an independent monitor would be impracticable given the proximity to the November elections. Regarding the request for more recent data, Defendants explain that providing data any sooner would burden USPS during a critical time and would result in inaccurate data that has not been comprehensively collected and compiled.

Upon review of the parties' submissions and the information provided by the Government, the Court does not find that a conference or further action is warranted at this time. With respect to USPS's service performance levels, the Preliminary Injunction does not require that USPS meet or maintain certain performance scores; it requires that the Government "submit a list of steps necessary to restore First-Class Mail and Marketing Mail on-time delivery scores to . . . 93.88 percent for First-Class Mail and 93.69 percent for Marketing Mail, and [] thereafter make a good faith effort to fully implement the listed steps." (Dkt. No. 57 ¶ 4.) The

Court is not persuaded that the Government has failed to abide by this obligation to make a good faith effort, particularly in light of the variety of issues -- such as the COVID-19 pandemic, wildfires on the west coast, and inclement weather -- which contribute to the delays and are outside of USPS's control. Under these circumstances, and with the November 3 election mere weeks away, the Court is not persuaded that imposing an independent monitor would be helpful, let alone practicable.

As to the use of overtime, the Court is not inclined to order USPS to authorize overtime for nonelection mail. Overtime is a limited resource. As the Court noted in its Clarification Order, the Court's express intent in issuing the Preliminary Injunction was to craft default terms focused on improving USPS's handling of Election Mail. As such, the Court finds it appropriate to focus use of the limited resource of overtime on ensuring the timely delivery of Election Mail, as distinct from all mail. The Court further notes that, to the extent a facility has an overflow of nonelection mail impeding its ability to deliver Election Mail, use of overtime to resolve this issue would be authorized under the operative terms of the Preliminary Injunction, as explained in the Clarification Order. (See Dkt. No. 66, at 19 ("Accordingly, the Court clarifies that

6

Paragraph 3 of the Preliminary Injunction provides that USPS shall authorize, and instruct, overtime to be used to ensure the timely delivery of Election Mail.").) As such, any further order regarding overtime is unnecessary.

Finally, the Court declines to order the Government to provide data in a more expeditious manner at this time. One witness at the Preliminary Injunction hearing suggested that the Government has more recent data in its possession. However, the Court is persuaded by the Government's representations regarding the complexity and arduousness of its data collection and compilation processes.

For the reasons stated above, and in light of the imminence of the November elections and the numerous nationwide injunctions to which USPS is currently subject, the Court declines to add another obligation at this time. The Court notes, however, that it continues to expect the Government to comply fully with its obligations under the Preliminary Injunction -- including its obligation to make a good faith effort with respect to improving service performance scores for First Class and Marketing mail -- which, as the Court has previously held, are required to avoid constitutional violations.

Accordingly, it is hereby

**ORDERED** that Plaintiffs' motion (Dkt. No. 73) for a conference and the expedited production of data is **DENIED.**

**SO ORDERED.**

Dated:   New York, New York
         9 October 2020

                                                    _____
                                                    Victor Marrero
                                                    U.S.D.J.